Friday, January 29, 2021

Chief Judge Colleen McMahon
Daniel Patrick Moynihan U.S. Courthouse
40 Foley Square
New York, New York 10007

Re:   _People of the State of New York, v. City of New York_, No. 21-cv-322 (CM)
      (GWG) (S.D.N.Y.)

Chief Judge McMahon,

I'm submitting this letter to you for the following entirely valid reasons about the case referenced above:

1.  Although the statements that you made in the order that you issued on 1/25/21 in this case (Dkt. 22) confirms that you're aware of your legal duty to grant maximum access to the general public to the upcoming proceeding in this case that your 1/25/21 order concerns, you made it clear that your decision not to conduct that proceeding in-person inside of the Daniel Patrick Moynihan ("DPM") or Thurgood Marshall ("TM") federal courthouse is due to the threat of transmission of Covid-19. However, the U.S. Marshals Service ("USMS") and federal court security officers ("CSOs") continue to engage in patently illegal acts and omissions in the DPM and TM courthouses that firmly establish that they have no regard whatsoever for the threat of transmission of Covid-19 in them. I'm referring to the fact that CSOs continue to illegally stalk me wherever I go in them (except for restrooms where they belong in toilets to allow me to defecate, urinate, and puke on them prior to flushing away the entirety of that waste that make Nazis and the recent raiders of the U.S. Congress building look quite fantastic by comparison) that includes inside of relatively small elevators while they are less than 6 feet from me in

flagrant violation of applicable standards that apply to social-distancing. I was most recently stalked in the DPM courthouse on 1/26/21 between roughly 1:15 pm and 2:15 pm as I lawfully attempted to enforce my right to engage in social-distancing away from my stalkers who were CSOs as that was likely recorded on video by video recordings that were recorded by video security cameras that are installed in the DPM courthouse and controlled by the USMS' criminal mob. This is entirely true and accurate after U.S. Magistrate Judge Steven Tiscione issued the dismissal order on 10/21/19 in _USA v. Komatsu_, No. 18-cr-651(ST)(E.D.N.Y. Oct. 21, 2019) that is shown next. That dismissal order clearly confirms that I legally kicked the asses of the USMS and CSOs as a result of that case's outcome.

> **U.S. District Court**
>
> **Eastern District of New York**
>
> **Notice of Electronic Filing**
>
> The following transaction was entered on 10/21/2019 at 11:00 AM EDT and filed on 10/21/2019
>
> Case Name:          USA v. Komatsu
> Case Number:        1:18-cr-00651-ST
> Filer:
> Document Number:    No document attached
>
> **Docket Text**:
>
> ORDER finding as moot [16] Motion in Limine as to Towaki Komatsu (1); granting [20] Motion to Dismiss as to Towaki Komatsu (1). **<span style="color:red">The Government's motion to dismiss all charges against the Defendant is granted.</span>** The trial scheduled to begin October 22nd is canceled and this case is closed. So Ordered by Magistrate Judge Steven Tiscione on 10/21/2019. (Vasquez, Lea)
>
> (red font color and boldface formatting added for emphasis)

2. By paying really close attention to detail, I caught the terrorist named Ralph Morales

lying about how I conducted myself on 9/21/18 at roughly 3:09 pm inside of the DPM

courthouse while he illegally violated standing order number M10-468 that is available

on the Internet at https://www.nysd.uscourts.gov/sites/default/files/pdf/standing-order-

electronic-devices.pdf. U.S. District Judge Loretta Preska issued that standing order on

2/27/14 while she was your predecessor as the U.S. Chief Judge. Mr. Morales violated

paragraph "(k)" that appears on page 2 in that standing order on 9/21/18 by illegally

recording a video recording at roughly 3:08 pm that contained both audio and video of

me, a female visitor to the DPM courthouse, 2 CSOs, and areas inside of the DPM

courthouse that may possibly contain confidential and otherwise sensitive security

information as he used an Apple iWatch personal electronics device that he wore on his

left wrist to record that video while he was in an area in that courthouse where visitors

drop-off their electronics equipment to CSOs for safekeeping upon completing a security

screening by CSOs after entering that courthouse prior to proceeding to other areas in that

courthouse. A copy of that video recording is available on the Internet at

https://drive.google.com/file/d/1wb8tH2TWH69kYS_J27vgCUALjZOr6Urg/view?usp=s

haring. It confirms that Mr. Morales **a)** cheated on his wife as he recorded a female with

blonde hair as she also then visited that courthouse and **b)** recorded me and 2 CSOs as

well. A video recording that was recorded at the same time and of that same area in that

courthouse as Mr. Morales illegally recorded his video with his iWatch is available on the

Internet at https://drive.google.com/file/d/1eMENnLdKGPut1YjPO6PqqKAUlU-

JsvwA/view. However, that second video recording was legally recorded by a video

security camera that the USMS controls and doesn't include any audio in it in contrast to

the video recording that Mr. Morales illegally recorded. I received both of those video

recordings as a result of _USA v. Komatsu._

3.   The first exhibit that appears with the annexed **Exhibit A** consists of relevant excerpts from pages 2 thru 7 in the 9/24/20 submission (Dkt. 426 that I filed in _Komatsu v. City of New York_, No. 18-cv-3698 (LGS)(GWG)(S.D.N.Y.) that is hereinafter referred to as "K1" in which I'm the plaintiff and to which U.S. Magistrate Judge Gabriel Gorenstein remains assigned as a plague that is quite like Covid-19 following my efforts in that case to rid myself of that cancer and con artist to begin to have a chance of having a fair trial in that case in accordance with my legal rights. I addressed that 9/24/20 submission in K1 to both you and Judge Gorenstein. That first exhibit contains detailed information against Mr. Morales in regards to lies that he expressed about my interactions with him on 9/21/18 inside of the DPM courthouse. His lies about me then caused hindsight and the totality of the circumstances to overwhelmingly make it objectively reasonable to infer that he and other CSOs and members of the USMS also lied about me and otherwise fraudulently omitted material matters of fact that were incriminating against them as they proximately and illegally caused **a)** _USA v. Komatsu_ to illegally be commenced against me as an abuse of process in furtherance of an illegal vendetta against me in retaliation for entirely valid and factual complaints that I reported against them since February of 2018 and **b)** me to be stalked by CSOs inside of the DPM and TM courthouses in flagrant violation of my Fourteenth Amendment rights that apply to selective-enforcement, discrimination, abuse of process, and due process as well as my First Amendment right of access to the courts as the USMS illegally destroyed and withheld video recording evidence from me in response to timely Freedom of Information Act ("FOIA") demands that I submitted to it for video recordings that were recorded by video security cameras it

controls inside and in the immediate vicinity of the DPM and TM courthouses.

4. _USA v. Komatsu_ was dismissed right before I was about to truthfully testify in detail and at length in that case against many CSOs, the USMS, and federal court judges that partly included you, U.S. Magistrate Judge Gabriel Gorenstein, U.S. District Judge Lorna Schofield with respect to the irrefutable fact that all of you flagrantly violated 42 U.S.C. §1986 as all of you violated your Fourteenth Amendment affirmative legal duty as law-enforcement personnel in your capacities as judges to have intervened on my behalf against abusive CSOs and members of the USMS in response to timely letters that I submitted to all of you since March of 2018 in which I clearly made such requests for all of you to intervene on my behalf and clearly provided sufficient grounds to have then be immediately granted that relief. Two such letters were letters that I addressed to you and submitted in March of 2018 to the Pro Se Intake Unit of the U.S. District Court for the Southern District of New York. The legal duty that judges have to which I just referred is reinforced by controlling findings in _US v. Smith_, 426 F.3d 567 (2d Cir. 2005) about the duty that judges have pursuant to 28 U.S.C. §566(a) to exercise proper control over all aspects of how courthouses operate and how courthouse personnel that include security personnel conduct themselves inside of courthouses.

5. Given the fact that Mr. Morales illegally recorded me, a female member of the public with blonde hair, 2 CSOs that included CSO Ken Taylor, a third man that I believe was also then a CSO, and the following inside of DPM on 9/21/18 in the video recording that he recorded at roughly 3:08 pm, it stands to reason that findings in _Hansen v. Harris_, 619 F.2d 942 (2d Cir. 1980) that are about the government being equitably estopped from enforcing rules on account of the conduct of its agents prohibit all federal judges in this

circuit from behaving as hypocrites by prohibiting the public from making electronic recordings of public legal proceedings that federal judges in this circuit conduct remotely. The vagueness doctrine and selective-enforcement also certainly apply to this. Thanks to the illegal video recording that Mr. Morales recorded of me on 9/21/18 in that courthouse, nothing would presently stop me from informing supporters of those who raided the U.S. Congress building recently how things appeared on 9/21/18 in the immediate vicinity of where Mr. Morales was as he recorded that video. For example, the illegal video recording that Mr. Morales recorded of me on 9/21/18 inside of the DPM includes an image that looks partly like the screenshot that appears next at the elapsed time of 19 seconds in it. I have superimposed photos of Mr. Morales over an area from that point in that video in this screenshot to hide what then appeared on the screen of a tablet computer that was located near where Mr. Morales was as he illegally recorded that video. If I hadn't superimposed that there, people would be able to see the image of someone who may have been on a USMS watchlist that that tablet likely was being used for while that person whose image was on that tablet screen may have been entirely innocent and also illegally subjected to a vendetta by CSOs and the USMS. Black Lives Matters fans and Mr. Morales will hopefully get the point from this screenshot after he made remarks on social media in which he defended Eric Garner's NYPD murderer.



The next screenshot shows what appears in that illegal video recording at the elapsed time of 32 seconds as Mr. Morales illegally recorded a Black CSO who seemed to have known that he was illegally recording that video as he likely compromised security levels for everyone in DPM by recording where information that was shown on wall and likely about security matters in the area in which he worked that could allow someone to thereafter to tamper with, take, or destroy that information without authorization simply by knowing from that video where it was located.



6.  The annexed **<u>Exhibit A</u>** is also comprised of 4 additional sets of exhibits about Mr.
Morales and Judge Gorenstein that bolster my point about the fact that though no
objectively valid grounds exist to justify the fact that I'm illegally stalked and harassed
every single damn time that I visit federal courthouses in New York City in flagrant
violation of my right to conduct court business in them while limiting my exposure to
people who may possibly be infected with Covid-19. As I stated earlier, the fact that I'm
still stalked in them while those who stalk me are in close proximity to me utterly
destroys your claim that valid grounds exist to not conduct legal proceedings in the DPM
and TM courthouses in-person. Moreover, the fact that I Mr. Morales remained a CSO on
6/2/20 while he was assigned to the TM courthouse as I recorded him on video while he
stood outside of its main entrance during a large demonstration partly against the NYPD
and phony other law-enforcement agencies and personnel is utterly indefensible on
account of the fact that he lied in statements that he made in official reports to federal
law-enforcement personnel about me concerning my interactions with him in the DPM

courthouse on both **a)** 8/8/18 that caused _USA v. Komatsu_ to be commenced and **b)** 9/21/18. In fact, information in **<u>Exhibit A</u>**'s third exhibit about Judge Gorenstein should be sufficient to terminate his assignment from all federal court litigation to which he is assigned and commence proceedings to have him fired as a judge due to outrageous prejudice and bias that proximately enabled me to immediately thereafter experience substantial and irreparable harm by being criminally assaulted on 8/8/18 by Mr. Morales and thereafter fraudulently fall victim to _USA v. Komatsu_ as an insult to injury after Mr. Morales was recorded on video on 8/7/18 as he illegally stuck one of his fingers in my face in the DPM courthouse in the immediate presence of another CSO who illegally didn't try to intervene on my behalf against him by arresting him for harassment and otherwise forcing him to get away from me.

7. The entire public has a clear Fourteenth Amendment equal and due process right as well as a First Amendment right with respect to every member of the press that include despicable whistleblower news censors in journalism that are far too commonplace in New York City to access public court proceedings irrespective of where and how they're conducted. This is confirmed by the excerpts listed below that are from applicable and mostly controlling court decisions that I expect you would attempt to impermissibly violate during the week of February 16, 2021 in this case if I didn't submit this letter as I expect that you would further cement a flagrant disregard for fundamental constitutional rights that visitors to federal courthouses in New York City have that you, other federal judges in New York City, CSOs, and the USMS continue to reprehensibly maintain largely insofar as I'm concerned.

8. On 3/2/19, former Second Circuit Judge Christopher Droney and Barrington Parker were

among the judges who conducted an oral arguments hearing inside of the TM courthouse

in _Knight First Amendment Inst. Columbia v. Trump_, 928 F.3d 226 (2d Cir. 2019) while

that hearing was recorded on video by the C-Span cable network. That video recording is

available on the Internet at https://www.c-span.org/video/?459092-1/circuit-hears-oral-

argument-presidents-twitter-account-case. The next four screenshots are from that video

and show Judge Droney, an attorney for the U.S. Department of Justice as she

represented Donald Trump in that case, fine attorneys for the Knight Columbia First

Amendment Institute that include someone I've previously met, and a CSO who has

always been respectful towards me. These screenshots are shown in sequential order as

Judge Droney made remarks about the First Amendment and the public's right pursuant

to it to access public forums. Also, these screenshots show the closed-captioning that was

available from that video and that case was about the public's right to access public

forums that are partly conducted by government personnel. You probably have a fine idea

about where I'm headed with this controlling and dominating set of facts and argument.









STREET, THAT VIOLATES THE FIRST AMENDMENT.

9.  The preceding discussion about the 3/26/19 oral arguments hearing in *Knight First Amendment Inst. Columbia v. Trump*, 928 F.3d 226 (2d Cir. 2019) confirms that a legal precedent was clearly established on 3/26/19 by virtue of the fact that that oral arguments hearing was recorded on video and broadcast over the Internet. That fact repudiates claims that federal judges have made in this district in which they have contended that such recording of federal court legal proceedings in this district is prohibited. Pro se litigants, other litigants, legal researchers, law students, journalists, and others have just as much of a right pursuant to the First Amendment and Fourteenth Amendment as C-Span to electronically record and broadcast such legal proceedings.

10. When people attend court proceedings in-person, part of that experience is about having the opportunity to lawfully exercise an individual's First Amendment right to pay close attention to the body language that everyone who attends them exhibits and otherwise doesn't partly to determine the extent to which people pay attention to matters that are discussed and are otherwise shown during such proceedings.  A lot can be learned from body language that people exhibit. Things that can be ascertained from body language

that is exhibited in legal proceedings partly include indications of mendacity, prejudice, bias, other impropriety, agreement, disagreement, frustration, hostility, anger, sadness, boredom, fatigue, intemperance, and collusion. Concerning this point, no objectively valid reason exists to deprive the public of the ability to view the faces and hands of every single person in real time on video who participates in and otherwise accesses legal proceedings that are conducted remotely as they're conducted. This is particularly relevant for people who have hearing disabilities because the Zoom platform for conducting meetings online includes a closed-captioning feature to provide them and others with a reasonable accommodation. For example, when an attorney cites a court decision during a court hearing, it's likely a journalist and a legal researcher may need to ask that attorney after that hearing ends to clarify the spelling of the court decision that he or she cited during that hearing to let them thereafter conduct research about that court decision. Closed-captioning in video recordings would mitigate the fact that there is no way for people to ask attorneys who participate in legal proceedings that are conducted online immediately after they end for such clarification. Also, it's relevant to point out that U.S. District Judge Valerie Caproni ordered New York State Governor Cuomo on 5/12/20 in _Martinez v. Cuomo_, No. 20-cv-3338 (VEC)(S.D.N.Y. May 12, 2020) to use sign-language interpreters during press conferences that he conducts.

11. Given the fact that Judge Gorenstein is assigned to litigation that I have commenced against the NYPD and Bill de Blasio about illegal acts and omissions that they and others have committed against me in public areas that are closely related to the what this case is about, it stands to reason that I have a greater interest and right to have access to all of the proceedings in this case to pay close attention to how they're conducted partly to

determine the extent to which they continue to be conducted in a manner that violates my Fourteenth Amendment equal protection and due process rights as well as my First Amendment rights with respect to litigation that I have commenced to which Judge Gorenstein is assigned to quite likely promptly raise that matter to the Second Circuit through an interlocutory appeal pursuant to the collateral order doctrine. Additionally, I wouldn't have so many entirely valid claims and defendants in that litigation that I have commenced if Letitia James hadn't stonewalled me on 10/26/17 in Brooklyn at the site of the Mayor's town hall meeting on that date as I apprised her that I was then being illegally barred from that public forum. She told me then that she would look into that, but lied to my face then instead. I thereafter had additional face-to-face conversations with her about civil rights crimes that NYPD Inspector Howard Redmond committed against me in regards to such public forums and the fact that she told me that she would look into that on 3/18/18 in Foley Square and 5/16/18 near what was then her office as New York City's Public Advocate. I recorded those conversations on audio and video. In short, those conversations prove that Letitia James is useless and lies about looking after the civil rights of New Yorkers when they're violated in public areas in New York City by members of the NYPD's criminal mob that include the head of the Mayor's NYPD security detail. After she became New York State's Attorney General, I filed an entirely valid complaint shortly after 3/18/19 in her office on Liberty Street in Manhattan about the fact that a member of the Mayor's NYPD security detail illegally assaulted me on 3/18/19 as he illegally seized in the Mayor's presence in the Blue Room in New York City Hall as I lawfully engaged in a brief debate with the Mayor about my First Amendment right to testify without obstruction at his expense in a public hearing that

was recorded on video. The next screenshot shows the illegal seizure that I experienced on 3/18/19 by a Black male member of the Mayor's NYPD security detail who previously illegally put one of his hands on me on 7/18/17 during the public resource fair meeting that the Mayor conducted in Kew Gardens in Queens as that Black male illegally and totally unnecessarily pushed me from behind at the end of my conversation with the Mayor right after I leaned away from the Mayor as he suddenly tried to touch me near my right shoulder for no reason. I have no reason to believe that Letitia James took appropriate corrective action in response to any of the complaints that I reported directly to her and those who worked for her to the extent that they were about illegal acts and omissions that were committed against me by NYPD personnel. That 3/18/19 illegal seizure occurred as I held my laptop to lawfully use it to playback audio and video recordings of prior face-to-face conversations that I had with the Mayor in conjunction with my testimony on 3/18/19 against the Mayor and his administration for the public's benefit.



12. The next 3 screenshots are from the video recording that the Mayor's Office arranged to be recorded of the public resource fair meeting that was partly conducted by the Mayor in Kew Gardens in Queens on 7/18/17.  Those screenshots are shown in sequential order with respect to how they appeared in that video. The Black male who appears in those screenshots proved by his actions against me then and thereafter that not every Black life matters because his certainly doesn't.







13. When I talked with the Mayor on 7/18/17 during that public resource fair meeting, I did

    so directly in front of the whistleblower news censors in journalism that included the

    following people whose censorship of me then and thereafter with many other such

    trashy censors in journalism materially facilitated the NYPD's criminal mob to continue

    to engage in terrorism that gave rise to the claims in this case:

| # | Name | Employer on 7/18/17 | Employer Now |
|---|------|---------------------|--------------|
| 1 | Michael Gartland | New York Post | New York Daily News |
| 2 | Gloria Pazmino | Politico New York | Spectrum News |
| 3 | Jillian Jorgensen | New York Daily News | Spectrum News |

14. The Mayor's Office illegally concealed that video that is a public record from the public

    in 2017 while Bill de Blasio and other New York City government personnel ran for re-

    election and used such public resource fair meetings, public town hall meetings, and

    public hearings as campaign events to attract publicity and support from voters and

    others. I temporarily was given access by the Mayor's Office to the video recording that

    it arranged to be recorded of that 7/18/17 public resource fair meeting in response to a

    FOIL demand that I submitted to the Mayor's Office. I then recorded a short video clip

    from that video recording of the period during which I talked with the Mayor during that

    public forum that was subject to New York State's Open Meetings Law and other laws.

    That video clip is available on the Internet at https://drive.google.com/file/d/1-

    ZUN22r8q4qARLEbMk8FVg4KuLqfTtcc/view?usp=sharing. After I recorded that video

    clip, the Mayor's Office illegally revoked my access to the video recording that it

    recorded of that 7/18/17 public resource fair meeting and/or otherwise removed that

    video recording from the Internet. The video clip that I recorded from it is relevant in this

    case largely because it confirms that I told the Mayor at the end of my conversation with

him then that Mr. Redmond illegally prevented me from attending the 4/27/17 town hall

meeting in Long Island City in Queens that was partly conducted by the Mayor during

which he announced the rollout of the NYPD's body-camera program as I also pointed

out to the Mayor during that 7/18/17 chat that Mr. Redmond was then the defendant in a

civil rights lawsuit as I was referring to *Sherrard v. City of New York*, No. 15-cv-7318

(MB) (S.D.N.Y. Jun. 13, 2018) in which Mr. Redmond committed perjury in a sworn

deposition on 5/19/17 and at trial in June of 2018 about material matters of fact that I can

clearly prove. The Mayor made it clear to me on 7/18/17 that he wouldn't intervene on

my behalf against Mr. Redmond before Mr. Redmond continued to violate my

constitutional rights and those of others at additional public forums.


**Excerpts from applicable court decisions:**

    a.  Excerpt from *Dresner v. Tallahassee*, 375 U.S. 136, 84 S. Ct. 235, 11 L. Ed. 2d

       208 (1963):

> "It is fundamental that our constitutions accord to the citizen of the United
> States the right of freedom of speech and of assembly and to peaceably petition
> for a redress of grievances. Such freedoms are jealously guarded and when
> exercised in good faith and in good order may not be lawfully interfered with by
> governmental action."

    b.  Excerpt from *Robar v. Village of Potsdam Board of Trustees*, No. 8: 20-CV-0972

      (LEK/DJS) (N.D.N.Y. Sept. 21, 2020):

> ""Violations of the First Amendment are presumed irreparable." Tunick v. Safir,
> 209 F.3d 67, 70 (2d Cir. 2000). The Supreme Court has declared that "the loss
> of First Amendment freedoms, for even minimal periods of time, constitutes
> irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976); see also Bery, 97
> F.3d at 693 ("Violations of First Amendment rights are commonly considered
> irreparable injuries for the purposes of a preliminary injunction."); Mitchell v.
> Cuomo, 748 F.2d 804, 806 (2d Cir. 1984) (noting that "[w]hen an alleged

deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary," and collecting cases)."

c. Excerpts from *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 S. Ct. (U.S. 2020):

    i. "And while those who are shut out may in some instances be able to watch services on television, such **remote viewing is not the same as personal attendance**"

       (boldface formatting added for emphasis)

    ii. "Government is not free to disregard the First Amendment in times of crisis."

    iii. "judicial deference in an emergency or a crisis does not mean wholesale judicial abdication, especially when important questions of religious discrimination, racial discrimination, free speech, or the like are raised."

    iv. "Even if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical."

    v. "we may not shelter in place when the Constitution is under attack. Things never go well when we do."

    vi. "In far too many places, for far too long, our first freedom has fallen on deaf ears."

d. Excerpt from *Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603 (U.S. 2020):

    "respecting some First Amendment rights is not a shield for violating others."

e. Excerpt from *Agudath Israel of America v. Cuomo*, No. 20-3572 (2d Cir. Dec. 28, 2020):

    "No public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal."

f. Excerpt from *Houchins v. KQED, Inc.*, 438 U.S. 1, 98 S. Ct. 2588, 57 L. Ed. 2d 553 (1978):

"the Constitution provides the press with no greater right of access to information than that possessed by the public at large"

g.  Excerpt from *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978):

"The First Amendment generally grants the press no right to information about a trial superior to that of the general public. "Once beyond the confines of the courthouse, a news-gathering agency may publicize, within wide limits, what its representatives have heard and seen in the courtroom. But the line is drawn at the courthouse door; and within, a reporter's constitutional rights are no greater than those of any other member of the public."

h.  Excerpt from *Hopper v. City of Pasco*, 241 F.3d 1067 (9th Cir. 2001):

"Courts have also been reluctant to accept policies based on subjective or overly general criteria. "`[S]tandards for inclusion and exclusion' in a limited public forum `must be unambiguous and definite' if the `concept of a designated public forum is to retain any vitality whatever.'" *Christ's Bride,* 148 F.3d at 251 (quoting *Gregoire v. Centennial Sch. Distr.,* 907 F.2d 1366, 1375 (3d Cir.1990)). Absent objective standards, government officials may use their discretion to interpret the policy as a pretext for censorship. *See Board of Educ. v. Mergens,* 496 U.S. 226, 244-45, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990) (generalized definition of permissible content poses risk of arbitrary application); *Putnam Pit, Inc. v. City of Cookeville,* 221 F.3d 834, 845-46 (6th Cir.2000) ("broad discretion [given] to city officials [raises] possibility of discriminatory application of the policy based on viewpoint"); *Cinevision Corp. v. City of Burbank,* 745 F.2d at 560 (9th Cir.1984) (vague standard has "potential for abuse"); *Gregoire,* 907 F.2d at 1374-75 ("virtually unlimited discretion" granted to city officials raises danger of arbitrary application); *see also City of Lakewood v. Plain Dealer Publ. Co.,* 486 U.S. 750, 758-59, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (absence of express standards in licensing context raises dual threat of biased administration of policy and self-censorship by licensees). Therefore, "the more subjective the standard used, the more likely that the category will not meet the requirements of the first amendment." *Cinevision,* 745 F.2d at 575; *see also Christ's Bride,* 148 F.3d at 251 (suppression of speech under defective standard requires closer scrutiny)."

i.  Excerpt from *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976):

"Secrecy of judicial action can only breed ignorance and distrust of courts and suspicion concerning the competence and impartiality of judges; free and

robust reporting, criticism, and debate can contribute to public understanding of the rule of law and to comprehension of the functioning of the entire criminal justice system, as well as improve the quality of that system by subjecting it to the cleansing effects of exposure and public accountability. See, *e. g., In re Oliver, supra,* at 270-271; L. Brandeis, Other People's Money 62 (1933) ("Sunlight is said to be the best of disinfectants; electric light the most efficient policeman")."

j. *Excerpt from Craig v. Harney*, 331 U.S. 367, 67 S. Ct. 1249, 91 L. Ed. 1546

(1947):

"What transpires in the court room is public property. If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt. And we can see no difference though the conduct of the attorneys, of the jury, or even of the judge himself, may have reflected on the court. Those who see and hear what transpired can report it with impunity. There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it."


If there is anything that you need me to further explain, please let me know. I also am working

on finishing a related motion to intervene in this case pursuant to FRCP Rule 24.


From,

Towaki Komatsu

s_/Towaki Komatsu

*Plaintiff, Pro Se*

802 Fairmount Pl., Apt. 4B
Bronx, NY  10460

Tel: 347-872-1205
E-mail: Towaki_Komatsu@yahoo.com

# Exhibit A

**Contents**                                                                                                                 **Page**

1.    A relevant excerpt that is from pages 2 thru 7 in my 9/24/20 submission (Dkt.
      426) in _Komatsu v. City of New York_, No. 18-cv-3698 (LGS)(GWG)(S.D.N.Y.)
      that is hereinafter referred to as "K1" that I addressed to U.S. Magistrate Judge
      Gabriel Gorenstein and U.S. Chief Judge Colleen McMahon that confirms that
      federal court security terrorist Ralph Morales **a)** blatantly lied in an official
      federal government report to law-enforcement personnel about how I conducted
      myself on 9/21/18 inside of the Daniel Patrick Moynihan federal courthouse and
      **b)** violated paragraph "(k)" on page 2 in standing order number M10-468 that
      Loretta Preska issued on 2/27/14 while she was the U.S. Chief Judge for the
      Southern District of New York by recording me and others in a video recording
      that he recorded in that courthouse by using an Apple iWatch electronic device
      that recorded both audio and video of us inside of that courthouse ..............A1

2.    Screenshots of Ralph Morales' social media and other Internet postings prior to
      8/8/18 that are deeply offensive particularly to Black people and sufficiently
      confirm that he should never have been allowed to be a CSO for obvious reasons.............A6

3.    Screenshots of **a)** page 2 of Judge Gorenstein's 8/6/18 order (Dkt. 28) in K1 and
      **b)** an image of how Mr. Morales treated me on 8/7/18 on the first floor of the
      Daniel Patrick Moynihan federal courthouse that is from a video recording from a
      video security camera that the U.S. Marshals Service controls near where visitors
      drop-off their electronics to federal court security officers for safekeeping upon
      entering that courthouse....................................................................................A10

4.    Screenshots of Mr. Morales from video recordings that I recorded of him on
      6/2/20 as he stood in front of the main entrance to the Thurgood Marshall federal
      courthouse while he was wearing the uniform of a federal court security officer
      during a demonstration that was largely about the Black Lives Matter movement...........A12

5.    A list of complaints that were reported against Mr. Morales to the largely useless
      New York City Civilian Complaint Review Board that illegally covers-up and
      condones illegal acts by members of the NYPD while he was a member of the
      NYPD's criminal mob as he may have illegally intimidated the complainants to
      end their cooperation with the CCRB or otherwise reached legal settlements for
      that purpose: ...........................................................................................................A16

Secondly, I recently discovered that I have clear, compelling, and incontrovertible evidence that confirms that a member of the Pro Se office and the terrorist and con man who is federal court security officer ("CSO") Ralph Morales committed illegal acts against me after Mr. Morales criminally assaulted me on 8/8/18 on the first floor of the Daniel Patrick Moynihan ("DPM") federal courthouse that I previously apprised you about. I apprised you about his 8/8/18 assault against me after both you and Judge Schofield illegally shirked the legal duties pursuant to 42 USC §1986 and the Fourteenth Amendment that both of you have as law-enforcement officials in your capacities as judges to have intervened on my behalf to uphold my constitutional rights in that courthouse in response to my 7/20/18 filing in this case. In that filing, I clearly apprised Judge Schofield about the fact that I was then illegally being subjected to abuse by CSOs. She thereafter illegally opted to do nothing about that other than to delegate a response to that to you before you made remarks to me on 10/31/19 in which you claimed that you didn't have any legal authority to issue an order against the USMS and CSOs that 28 U.S.C. §566(a) and *US v. Smith*, 426 F.3d 567 (2d Cir. 2005) strongly suggest you then lied to me about.

On 9/27/18, an unknown Supervisory Deputy U.S. Marshal ("DUSM") signed a report that was prepared by the USMS about me. The following is a screenshot from that report that refers to CSO Morales as "Officer 12":

On the same date, while CSO Officer 12 was posted at the electronic device retrieval area at the DPM Courthouse, CSO Officer 12 reported that he used his Iphone Watch to record video of KOMATSU retrieving his cell phone. In the video, KOMATSU says that he doesn't trust CSO Officer 12 and requested that another CSO assist him.

On September 26, 2018, the S/NY Pro Se Office notified the Protective Intelligence Unit (PIU) that KOMATSU filed a 23 page document to case 18cv5213(WHP), requesting to intervene in the referenced matter. In the 23 page filing to case USA v. New York City Housing Authority, KOMATSU requests that he be permitted to bring his laptop to the court hearing scheduled for 9/26/18, so that he could show video recordings of conversations he had with New York City officials. KOMATSU describes these conversations, references encounters with the NYPD where he alleges that they violated his rights, and makes allegations of corruption by

The following facts are entirely true and accurate about the information shown in that screenshot:

a. Mr. Morales lied in that report by claiming that he used his "Iphone Watch to record video of" me as he claimed that he did so as I was retrieving a cell phone of mine. He blatantly lied about that because I was then visiting the DPM courthouse instead of leaving it as I encountered Mr. Morales in the area of that courthouse located just past its security screening area on its first floor in an area where visitors drop-off their electronic devices to CSOs upon completing the security screening process upon entering that courthouse. Neither the woman with blonde hair nor Mr. Morales' criminal accomplice who is the Black male asshole who happened to then be a CSO who was on-duty are me in the following screenshot that is from the video that Mr. Morales criminally recorded on 9/21/18 with his Iphone Watch that recorded both audio and video. Absolutely no valid legal justification exists for Mr. Morales having recorded that woman on video in that courthouse with his Iphone Watch.



The next screenshot from that same video clearly shows me as I was then dropping-off my laptop while it was in a laptop bag to Mr. Morales before abandoning him like the

total piece of trash that he is and lawfully proceeding to other areas in that courthouse while escorted by a male CSO as Mr. Morales continued to illegally record that video recording with a personal electronics device that flagrantly violated the ban that exists that prohibits recording video recordings in federal courthouses with personal electronics devices. Mr. Morales had absolutely no legal justification to have recorded me nor that female with blonde hair on video inside of that courthouse. However, he clearly did so while the criminal accomplice of his who is shown on the right side of the preceding screenshot was aware that Mr. Morales was recording us on video.



The next screenshot is from a video recording that I received from the USMS that was recorded by a video security camera it controls that recorded video on 9/21/18 of my arrival to the area where I encountered Mr. Morales in the DPM courthouse that correspond to the screenshot above. This next screenshot clearly confirms that I was dropping off both my laptop and cell phone to Mr. Morales instead of retrieving any electronics device from him.



In the next screenshot from that same video, Mr. Morales' right hand is clearly on top of my cell phone as he was in the process of storing it and my laptop away for later retrieval by me. The preceding facts and evidence isn't trivial whatsoever. Instead, they further establish that Mr. Morales is a con artist who routinely violates applicable laws in the DPM courthouse that you, Judge Schofield, Chief Judge McMahon, his CSO colleagues, and the USMS illegally and unconscionably condone cover-up even as his abuse and criminal acts intensify enormously. The excerpt from the report that the USMS prepared that confirmed that Mr. Morales that is shown at the top of page 3 of this letter confirms that I told Mr. Morales' CSO colleague in Mr. Morales' immediate presence that I didn't trust Mr. Morales. What I have discussed and clearly substantiated about him in this letter confirms that I was entirely right on 9/21/18 about the fact that ample reason then existed to not trust him because he was lying about me and still committing further patently illegal acts against me and other visitors to that courthouse in flagrant violation of our

Fourteenth Amendment due process and equal protection rights as well as our rights against discrimination, selective-enforcement, and abuse of process that illegally recording us on video certainly was. I have no way currently of knowing how he may have shared my image and voice from the video recording that he then recorded of me with his Iphone Watch. It is entirely possible that he may have uploaded that video without my authorization to various web sites and otherwise distributed copies of it via e-mail that are entirely unrelated to his job as a CSO. Such acts would certainly be illegal and further violate my privacy rights.



**Screenshots of Ralph Morales' social media and other Internet postings prior to 8/8/18 that are deeply offensive particularly to Black people and sufficiently confirm that he should never have been allowed to be a CSO for obvious reasons**

1. The following posting that Mr. Morales posted on his Facebook account on 7/10/16 shows a Black male who appears to have been murdered and tortured that Mr. Morales stated he supported:



2. The following tweet that was posted on Twitter on 12/5/14 **a)** addressed support that Mr. Morales expressed for the member of the NYPD who murdered Eric Garner and **b)** confirms that Mr. Morales referred to himself with the inherently offensive alias of "JEWBOY7":



3. The next screenshot shows a posting that Mr. Morales posted on a web site that is operated by Pix11news on 7/20/14 in which he expressed support for the actions that were taken by Eric Garner's NYPD murderer that caused Mr. Garner's death:



4. The next screenshot shows a tweet that was posted on Twitter on 12/5/14 about Mr. Morales having expressed profanity towards protesters while he was in a NYPD vehicle.



5. The next screenshot shows a posting that Mr. Morales posted to his Facebook account on 6/9/16 in which he expressed his hatred of former President Barack Obama that should cause President Biden to immediately have Mr. Morales and those who have supported him as a CSO to be fired as federal court security personnel.



Screenshots of **a)** page 2 of Judge Gorenstein's 8/6/18 order (Dkt. 28) in K1 and **b)** an image of how Mr. Morales treated me on 8/7/18 on the first floor of the Daniel Patrick Moynihan federal courthouse that is from a video recording from a video security camera that the U.S. Marshals Service controls near where visitors drop-off their electronics to federal court security officers for safekeeping upon entering that courthouse:

1. This next screenshot shows patently biased and prejudicial remarks that Judge Gorenstein made on 8/6/18 on page 2 of his order in K2 as a despicable and obsequious cat's paw of the U.S. Marshals Service and federal court security officers as he made baseless claims to my detriment in flagrant violation of his legal duty to intervene on my behalf before his remarks were immediately thereafter proven to be totally erroneous, an abuse of discretion, and plain stupid.

Finally, the Court is also in receipt of a letter from plaintiff, dated July 20, 2018 (Docket # 20). Insofar as it makes claims regarding courthouse staff and his treatment at the courthouse, the U.S. Marshal Service is aware of the letter. The Court is confident that Court Security Officers will behave appropriately in their treatment of plaintiff and that no additional steps need be taken at this time.

SO ORDERED.

Dated: August 6, 2018
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

2. This next screenshot shows Mr. Morales as he illegally harassed me on 8/7/18 at roughly 2:25 pm on the first floor of the Daniel Patrick Moynihan federal courthouse by sticking his a finger on his right hand in extremely close proximity to my face in a very threatening manner while my hands were lowered that constituted simple assault by him against me as he was then off-duty as a federal court security officer. He and I were then in the immediate presence of a federal court security officer whose last name is Foley who illegally didn't try to intervene against Mr. Morales on my behalf in response to his harassment. This screenshot is from a video that was recorded by a video security camera that the U.S. Marshals Service controls. At least 3 other people witnessed Mr. Morales' illegal behavior against me then and made no attempt to intervene on my behalf. At around the time or shortly before that point in that video, Mr. Morales made remarks to me in which he urged me to go outside with him to engage in a physical fight. I didn't agree to do so then partly because I believed that a member of the U.S. Marshals Service would shoot me while I would be in the process of kicking Mr. Morales' ass outside of that courthouse. This screenshot is from the elapsed

time of 2 minutes and 37 seconds in the video recording that is available on the Internet at
https://drive.google.com/open?id=1BgLZ-tyKhQt7cTxQmWv2G3kko-6jR4u9



**Screenshots of Mr. Morales from video recordings that I recorded of him on 6/2/20 as he stood in front of the main entrance to the Thurgood Marshall federal courthouse while he was wearing the uniform of a federal court security officer during a demonstration that was largely about the Black Lives Matter movement:**

1. The next screenshot shows Mr. Morales on the left and a friend of his named Steve Bobker in the center at the elapsed time of 21 seconds in the video recording that I recorded with my cell phone at 7:26 pm on 6/2/20 that is available on the Internet at https://drive.google.com/file/d/1LAHtOVHf47q6_LfpXUGCu8OW5KCb3Zle/view?usp=sharing as I had fun at his expense to legally reciprocate against him in response to the numerous times that he illegally called me a "faggot" inside of the Daniel Patrick Moynihan and Thurgood Marshall federal courthouses between March of 2018 and August of 2018 while he was on-duty as a federal court security officer. As I recorded that video of him, I ordered him to give me a blowjob to show him up in front of the demonstrators nearby around the same time that I apprised them that he made remarks in which he defended Eric Garner's NYPD murderer and pointed him out to them to let them have a conversation with him about that if they chose to do so. I also told them that he had referred to himself as "JewBoy7".



2.  The next screenshot corresponds to the elapsed time of 1 minute and 20 seconds in the same video that the preceding screenshot is from and shows Mr. Morales as he demonstrated that he knew that it was likely best for him to take refuge inside of the Thurgood Marshall federal courthouse after I engaged in whistleblowing at his expense by telling demonstrators near me he made remarks in support of Eric Garner's NYPD murderer and referred to himself as "JewBoy7" as I suggested to them that they could have a conversation with him about that. I didn't however express anything to incite any illegal behavior.



3.  The next screenshot shows Mr. Morales on the left near the main entrance to the Thurgood Marshall courthouse at the elapsed time of 21 seconds in the video recording that I recorded with my cell phone at 7:29 pm on 6/2/20 that is available on the Internet at https://drive.google.com/file/d/17DSVD_phBJQna3HmgNudQ6EWEmrVX-I0/view?usp=sharing as I enjoyed engaging in whistleblowing against Mr. Morales by telling people near me who were demonstrating against the NYPD that roughly 18 complaints against Mr. Morales were reported to the New York City Civilian Complaint Review Board while he was a member of the NYPD's criminal mob.



4. The next screenshot shows Mr. Morales on the left as he stood directly in front of the main entrance to the Thurgood Marshall courthouse at the elapsed time of 9 seconds in the video recording that I recorded with my cell phone at 7:31 pm on 6/2/20 that is available on the Internet at https://drive.google.com/file/d/12n2G7nXqGH5Li8amMdkMeex_AbVMHJNm/view?usp=sharing



**A list of complaints that were reported against Mr. Morales to the largely useless New York City Civilian Complaint Review Board that illegally covers-up and condones illegal acts by members of the NYPD while he was a member of the NYPD's criminal mob as he may have illegally intimidated the complainants to end their cooperation with the CCRB or otherwise reached legal settlements for that purpose:**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Officer Name:** | | Morales, Rafael | | | | | |
| **Tax ID:** | | 905477 | | **Sex:** | M | | |
| **Shield:** | | 06413 | | **Race:** | Hispanic | | |
| **Rank:** | | DT3 | | **Command:** | 556 | | |
| **DOB:** | | 06/30/1967 | | **Appt Date:** | | | |
| **Age:** | | 52 | | **Tenure:** | | | |

| CCRB # | Report Date | Incident Date | Allegation | Disposition | NYPD Disposition | NYPD Penalty | Command |
|---|---|---|---|---|---|---|---|
| 9402297 | 07/03/1994 | 37/01/1994 | Force - Punch/Kick | Unsubstantiated | | | 90 |
| | 07/03/1994 | 37/01/1994 | Abuse - Gun Drawn | Exonerated | | | 90 |
| | 07/03/1994 | 37/01/1994 | Discourtesy - Curse | Unsubstantiated | | | 90 |
| 9404072 | 10/27/1994 | 10/26/1994 | Abuse - Threat of Arrest | Unsubstantiated | | | 83 |
| 9404216 | 11/03/1994 | 10/21/1994 | Force - Push/Shove | Unsubstantiated | | | 83 |
| | 11/03/1994 | 10/21/1994 | Abuse - Person Searched | Unsubstantiated | | | 83 |
| | 11/03/1994 | 10/21/1994 | Discourtesy - Curse | Unsubstantiated | | | 83 |
| | 11/03/1994 | 10/21/1994 | Offensive Lang. - Hispanic | Unsubstantiated | | | 83 |
| 9500788 | 02/22/1995 | 32/21/1995 | Force - Gun Pointed | Administratively Closed | | | 83 |
| | 02/22/1995 | 32/21/1995 | Abuse - Threat of force | Administratively Closed | | | 83 |
| 9501042 | 03/14/1995 | 33/13/1995 | Force - Punch/Kick | Unsubstantiated | | | 83 |
| | 03/14/1995 | 33/13/1995 | Force - Push/Shove | Unsubstantiated | | | 83 |
| | 03/14/1995 | 33/13/1995 | Abuse - Person Searched | Unsubstantiated | | | 83 |
| | 03/14/1995 | 33/13/1995 | Abuse - Property Damaged | Unsubstantiated | | | 83 |
| | 03/14/1995 | 33/13/1995 | Abuse - Threat of Arrest | Unsubstantiated | | | 83 |
| | 03/14/1995 | 33/13/1995 | Discourtesy - Curse | Unsubstantiated | | | 83 |
| | 03/14/1995 | 33/13/1995 | Offensive Lang. - Black | Unsubstantiated | | | 83 |
| 9501667 | 04/19/1995 | 34/18/1995 | Force - Push/Shove | Administratively Closed | | | 83 |
| 9503409 | 08/08/1995 | 36/02/1995 | Force - Slap | Unsubstantiated | | | 83 |
| | 08/08/1995 | 36/02/1995 | Abuse - Threat of force | Unsubstantiated | | | 83 |
| | 08/08/1995 | 36/02/1995 | Offensive Lang. - Other - Ethnic Slur | Unsubstantiated | | | 83 |
| 9700101 | 01/09/1997 | 31/07/1997 | Force - Punch/Kick | Administratively Closed | | | 83 |

| CCRB # | Report Date | Incident Date | Allegation | Disposition | NYPD Disposition | NYPD Penalty | Command |
|---|---|---|---|---|---|---|---|
| 9701151 | 03/31/1997 | 03/29/1997 | Abuse - Other - Abuse | Unsubstantiated | | | 83 |
| | 03/31/1997 | 03/29/1997 | Abuse - Premise Searched | Unsubstantiated | | | 83 |
| | 03/31/1997 | 03/29/1997 | Abuse - Threat of force | Unsubstantiated | | | 83 |
| 9800814 | 02/19/1998 | 02/16/1998 | Force - Beat | Complainant Unavailable | | | 83 |
| 9903204 | 07/14/1999 | 06/07/1999 | Abuse - Threat of arrest | Unsubstantiated | | | 83 |
| | 07/14/1999 | 06/07/1999 | Abuse - Threat to Property | Exonerated | | | 83 |
| | 07/14/1999 | 06/07/1999 | Discourtesy - Word | Unsubstantiated | | | 83 |
| 200004767 | 07/12/2000 | 07/07/2000 | Force - Physical force | Complaint Withdrawn | | | 83 |
| | 07/12/2000 | 07/07/2000 | Abuse - Threat of arrest | Complaint Withdrawn | | | 83 |
| 200006353 | 09/11/2000 | 09/11/2000 | Discourtesy - Word | Unfounded | | | 083 |
| 200208283 | 12/11/2002 | 12/06/2002 | Force - Physical force | Exonerated | | | 580 |
| | 12/11/2002 | 12/06/2002 | Discourtesy - Word | Unsubstantiated | | | 580 |
| 200301896 | 03/14/2003 | 03/11/2003 | Abuse - Gun Drawn | Exonerated | | | 580 |
| | 03/14/2003 | 03/11/2003 | Abuse - Threat of force (verbal or physical) | Unsubstantiated | | | 580 |
| | 03/14/2003 | 03/11/2003 | Discourtesy - Word | Unsubstantiated | | | 580 |
| 200506125 | 06/01/2005 | 05/21/2005 | Force - Physical force | Alleged Victim Uncooperative | | | 580 |
| | 06/01/2005 | 05/21/2005 | Abuse - Refusal to provide name/shield number | Complainant Unavailable | | | 580 |
| | 06/01/2005 | 05/21/2005 | Discourtesy - Word | Complainant Unavailable | | | 580 |
| 200506300 | 06/06/2005 | 06/05/2005 | Force - Gun fired | Alleged Victim Uncooperative | | | 580 |
| | 06/06/2005 | 06/05/2005 | Force - Physical force | Alleged Victim Uncooperative | | | 580 |
| 200514323 | 11/29/2005 | 11/26/2005 | Force - Physical force | Exonerated | | | 580 |