UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

In Re: New York City Policing                                   No. 20 Civ. 8924 (CM) (GWG)
During Summer 2020 Demonstrations
_____x

This filing is related to                                             No. 21 Civ. 322 (CM) (GWG)
*People v. City of New York et al.*
_____x


### MEMORANDUM OF LAW IN SUPPORT OF MOTION
### BY SERGEANTS BENEVOLENT ASSOCIATION
### <u>TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................... 1

BACKGROUND ...................................................................................................... 3

ARGUMENT ............................................................................................................ 4

I.   The SBA is entitled to intervention of right under Rule 24(a). ............................... 4

    A.   The SBA has direct protectable interests at stake which will be impaired
        if intervention is not granted. ................................................................. 5

        1.   Interest in court findings and declarations that will affect
             disciplinary, civil, or criminal proceedings of individual officers ......... 5

        2.   Interest in remedies that may affect officer safety and job performance ............... 9

        3.   Interest in protecting collective bargaining rights ................................. 10

    B.   The SBA's interests are not adequately represented in this action. ............................ 12

II.   The SBA should be granted permissive intervention under Rule 24(b) ............................. 15

CONCLUSION .......................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brennan v. N.Y.C. Bd. of Educ.*,
   260 F.3d 123 (2d Cir. 2001) ................................................................................5, 13, 14, 15

*Bridgeport Guardians, Inc. v. Delmonte*,
   602 F.3d 469 (2d Cir. 2010) .................................................................................................4, 5

*CBS, Inc. v. Snyder*,
   798 F. Supp. 1019 (S.D.N.Y. 1992) ........................................................................................11

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
   No. 18 CIV. 11657 (ER), 2020 WL 1432213 (S.D.N.Y. Mar. 24, 2020) ...............................14

*Citizens Against Casino Gambling in Erie Cnty. v. Hogen*,
   417 F. App'x 49 (2d Cir. 2011) ..............................................................................................16

*EEOC v. AT&T*,
   506 F.2d 735 (3d Cir. 1974) ...................................................................................................12

*Floyd v. City of New York*,
   302 F.R.D. 69 (S.D.N.Y. 2014) .......................................................................................7, 8, 14

*Floyd v. City of New York*,
   770 F.3d 1051 (2d Cir. 2014) .......................................................................................6, 7, 10, 14

*Friends of the E. Hampton Airport, Inc. v. Fed. Aviation Admin.*,
   No. 15-CV-0441(JS)(ARL), 2016 WL 792411 (E.D.N.Y. Feb. 29, 2016) ............................16

*H.L. Hayden Co. of N.Y. v. Siemens Med. Sys.*,
   797 F.2d 85 (2d Cir. 1986) .....................................................................................................16

*In re Holocaust Victim Assets Litig.*,
   225 F.3d 191 (2d Cir. 2000) ...................................................................................................16

*Honeywell Int'l Inc. v. United States*,
   71 Fed. Cl. 759 (2006) ..............................................................................................................9

*Miller v. Silbermann*,
   832 F. Supp. 663 (S.D.N.Y. 1993) ..........................................................................................16

*N.Y. Pub. Interest Rsch. Grp. v. Regents*,
   516 F.2d 350 (2d Cir. 1975) ...................................................................................................13

*Nat. Res. Def. Council v. Costle*,
   561 F.2d 904 (D.C. Cir. 1977) ...............................................................................13

*New York v. U.S. Dep't of Health & Human Servs.*,
   No. 19 CIV. 4676 (PAE), 2019 WL 3531960 (S.D.N.Y. Aug. 2, 2019) ...........................16, 17

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) ...............................................................................13

*U.S. Postal Serv. v. Brennan*,
   579 F.2d 188 (2d Cir. 1978) ...............................................................................16

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ........................................................................ *passim*

*United States v. N.Y.C. Hous. Auth.*,
   326 F.R.D. 411 (S.D.N.Y. 2018) ...............................................................................15

*Vulcan Soc'y of Westchester Cnty., Inc. v. Fire Dep't of White Plains*,
   79 F.R.D. 437 (S.D.N.Y. 1978) ...............................................................................12, 15

*Yang v. Kellner*,
   No. 20 CIV. 3325 (AT), 2020 WL 2115412 (S.D.N.Y. May 3, 2020) ...................................16

**Statutes & Rules**

42 U.S.C. § 1983 ...............................................................................8, 9

Fed. R. Civ. P. 24(a) ...............................................................................4, 5, 13

Fed. R. Civ. P. 24(a)(2) ...............................................................................5, 17

Fed. R. Civ. P. 24(b) ...............................................................................15, 16, 17

Fed. R. Civ. P. 24(b)(2) ...............................................................................16

N.Y. City Admin. Code § 12-307(b) ...............................................................................11

Proposed Intervenor Sergeants Benevolent Association submits this Memorandum of Law in Support of its Motion to Intervene Under Federal Rule of Civil Procedure 24.

## INTRODUCTION

The Sergeants Benevolent Association ("SBA"), which represents more than 13,000 current and retired police sergeants in the New York City Police Department ("NYPD"), has the right to intervene because the interests of its members will be directly and fundamentally affected by the findings and orders of this Court on particular allegations in the complaints that allege unlawful violations of constitutional rights by identifiable police officers, including police officers who are not named in the complaints but who were performing their duties in accordance with their training in the specific protest demonstrations described in the complaints. The City cannot properly or fairly represent the SBA interests because of actual and potential conflicts of interest. Those conflicts include the City's incentive to excuse management and to blame officers in current and potential NYPD disciplinary proceedings. In brief:

*First*, the SBA is entitled to intervene to defend against court findings and orders on the particular allegations in *People v. City of New York* (the "*People*" case) that fill some 40 pages of the complaint with alleged details of violent and unconstitutional conduct by identifiable police officers, including officers identifiable in photographs. Findings and rulings on each one of those specific allegations can have devastating, direct consequences for <u>NYPD discipline</u>, <u>civil liability</u>, and <u>loss of indemnification rights</u> for individual police officers. This Court must ensure that those officer interests are properly, fully, and fairly represented in *People* and the cases consolidated with *People*. The City cannot represent those officer interests in this litigation, because at this very time it is pursuing and investigating many complaints against individual officers for NYPD disciplinary proceedings for sanctions against officers involved in the protest

demonstrations.  The City and NYPD management have incentives to excuse management and blame officers for alleged misconduct.  The City's interests are in immediate actual conflict, and in extensive potential conflict, with interests of SBA members.

*Second*, the SBA is entitled to intervene to defend against <u>potential remedies that will impair police officer safety</u> and the ability of officers to fulfill their duty to protect the public.  Crowd control situations pose particular dangers to the public and also to police officers who are trying to lawfully prevent injury to persons and property.  The Attorney General seeks extensive injunctive relief, including the extraordinary remedy of judicial "monitoring," that covers details of police tactics, training, and equipment.  This is likely to concern crowd containment techniques, pepper spray, baton use, and other measures, all of which are matters of intense public debate where there is no uncontroversial consensus.  Many proposed changes in training, tactics, and equipment can directly affect the personal physical safety of sergeants and their ability to effectively protect the public in crowd control and demonstration situations.  Proper training for policing is central to the interests of the SBA and its members.  The City cannot represent the SBA interests because there is no general public agreement on what specifically is necessary for police tactics, training, and equipment.  The SBA needs to intervene to protect police officer interests on highly controversial subjects where the City's leadership has different or changing views.

*Third*, the SBA is entitled to intervene to defend against potential remedies that can infringe on <u>collective bargaining rights</u>.  The City cannot represent the SBA or other police unions on issues that impact, or potentially impact, collective bargaining.  The City cannot represent the SBA in arguments over what potential remedies may or may not impact collective

bargaining rights.  The Court must hear directly from the SBA on the impact of potential remedies.  Intervention is the proper way to do this.

The Attorney General's complaint in *People* seeks to transform policing in New York. The conduct, safety, training, and effectiveness of SBA members is near the center of most of what is at issue.  It is difficult to understand how it could be fair or consistent with the law on intervention to exclude the SBA from explaining directly to the court its interests, evidence, concerns, recommendations, challenges, and contributions to proper policing that affect police discipline, liability, indemnification, personal safety of officers, and collective bargaining rights. This Court should not narrow the voices it hears in proceedings that can transform, hobble, or improve policing in New York.  The Court should welcome the views of the SBA.  The SBA is a proper and necessary party, with highly important interests at stake and constructive, essential contributions to make to a fair and just resolution of these cases.

## BACKGROUND

The SBA is an independent municipal police union whose membership consists of approximately 13,000 active and retired sergeants of the NYPD.  (Declaration of Sgt. Edward D. Mullins at ¶ 2 (annexed as Exhibit A) ("Mullins Decl.").)  NYPD police sergeants are line supervisors responsible for, among other things, supervising patrol officers and other subordinate officers and implementing policies of the NYPD on the street level.  (*Id.* ¶ 8.)  A sergeant is required to train, instruct, monitor, and advise subordinates in their duties, and is held directly responsible for the performance of those subordinates.  (*Id.*)  Failure to carry out any of the above responsibilities can result in the imposition of disciplinary sanctions against the sergeant, who is the front-line supervisor responsible for carrying out the mission of the NYPD during of street-level encounters.  (*Id.*)  This includes crowd control conduct that is at issue in this

litigation.  (*Id*. ¶¶ 9-11.)  In addition to supervisory responsibilities, a sergeant also routinely performs field police work, which typically consists of relatively complex law enforcement activities with which only sergeants are entrusted.  (*Id*. ¶ 9.)

The SBA's central mission is to advocate for and protect the interests of NYPD police sergeants.  (*Id*. ¶ 3.)  The SBA serves as the exclusive collective bargaining representative for sergeants in their contract negotiations with the City.  (*Id*. ¶ 2.)  In this capacity, the SBA is entitled to negotiate changes to the terms and conditions of employment with the City.  (*Id*.)

## ARGUMENT

## I.   The SBA is entitled to intervention of right under Rule 24(a).

A party has the right to intervene under Rule 24(a) when (a) the motion to intervene is timely filed, (b) the putative intervenor has an interest in the existing litigation, (c) the intervenor's interest would be impaired by the outcome of the litigation, and (d) the intervenor's interest will not be adequately represented by the existing parties.  *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010).

This motion is timely because (a) the SBA moved quickly to ensure its interests are adequately protected from the outset of the case, (b) no party can claim prejudice when discovery has not yet commenced and no defendant has answered or otherwise responded to the complaints, (c) the SBA would be severely prejudiced by denial because it will have no opportunity to participate in discovery, protect the interests of unnamed but identifiable officers, and, ultimately, participate in the remedies stage, and (d) it complies with the Court's scheduling order, (Doc. 40).[1]  As explained below, the SBA satisfies all remaining requirements.

---

[1] All docket references in this brief relate to the lowest-numbered case, No. 20-cv-8924, in this consolidated action.

**A.     The SBA has direct protectable interests at stake which will be impaired if intervention is not granted.**

An intervenor must have an interest in the action that is "direct, substantial, and legally protectable." *Bridgeport Guardians*, 602 F.3d at 473 (citation omitted). Although Rule 24(a)(2) addresses claims of interest "relating to the property or transaction which is the subject of the action," the rule "'does not require that the intervenor prove a property right, whether in the constitutional or any other sense.'" *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 130 (2d Cir. 2001) (citation omitted). Rule 24(a)'s requirement that there be a potential for impairment of such interests is satisfied where "the disposition of the action may as a practical matter impair or impede the [putative intervenor's] ability to protect that interest." *Id.* at 128 n.3 (quoting Fed. R. Civ. P. 24(a)).

The SBA has three principal interests at stake that will be impaired if it is not permitted to participate in this litigation:

**1.     Interest in court findings and declarations that will affect disciplinary, civil, or criminal proceedings of individual officers**

The SBA is entitled to intervene to protect the interests of its members in findings and declarations that may have immediate consequences in individual disciplinary, civil, or criminal proceedings. The Second Circuit has recognized in dicta that a police union may have a "direct and substantial" interest meriting intervention in a case against a police department that includes allegations of unconstitutional conduct by officers, which may lead to individual liability or discipline. *See Floyd v. City of New York*, 770 F.3d 1051, 1061 n.33 (2d Cir. 2014) (citing *United States v. City of Los Angeles*, 288 F.3d 391, 399 (9th Cir. 2002)). This is just such a case.

The Attorney General seeks broad policing reforms based not just on NYPD's customs and practices but also specific unconstitutional acts by individual officers. The complaint in

*People* includes dozens of paragraphs that allege with particularity how specific police officers acted without provocation or justification in violently injuring demonstrators and violating their constitutional rights.  For example, the Attorney General alleges:

- "Without provocation or justification, an NYPD Officer hit Delfin's face with a baton held horizontally, causing her to bleed profusely from her forehead and into her facemask."  (*People* Compl. ¶ 96.)

- "Without warning, provocation, or justification, NYPD Officers in riot gear charged towards Benoit, pushed him back towards a nearby subway station entrance, and hit him with batons on the right side of his face and elsewhere on his body."  (*People* Compl. ¶ 111.)

- "Without further warning, and without provocation or justification, the NYPD Officer reached his arm out, tore down Smith's facemask, and dispersed pepper spray directly into Smith's face."  (*People* Compl. ¶ 144.)

- "On May 31, on the F.D.R. Drive in Manhattan, an NYPD Officer without provocation or justification twice indiscriminately discharged pepper spray into Carlos Polanco and a group of peaceful protesters who posed no threat and were separated from him by a concrete barrier."  (*People* Compl. ¶ 166, with photo.)

- "As Painter and Calzadilla-Pacio walked, as directed, on Dekalb Avenue, an NYPD Officer yelled out that officers should 'rip apart' a megaphone attached to Painter's wrist.  Several NYPD Officers started to pull the megaphone away from Painter and, without provocation or justification, forcefully shoved her and Calzadilla-Palacio to the ground.  An NYPD Officer then kicked Painter several times and struck Calzadilla-Palacio on the back of his head with a baton . . . " (*People* Compl. ¶ 181.)

The conduct of individual officers is central to the *People* Complaint and is detailed in some forty pages.  (*People* Compl. ¶¶ 76-340.)  Some of these officers are identifiable based on photographs and details in the *People* complaint, and others are likely to be identified as the case proceeds.  The other complaints both identify officers by name and shield number and make allegations against as yet unnamed "Doe" officers.

This Court's rulings on these allegations and others like them will directly affect police discipline, civil liability, and indemnification.  Courts have recognized that police unions have a

legally protectable interest in department-wide civil rights cases that may have collateral consequences for individual officers.  In *United States v. City of Los Angeles*, a federal civil rights action concerning the practices of the anti-gang unit of the Los Angeles Police Department, the Ninth Circuit held that a police union had a "protectable interest in the merits" based on "factual allegations that its member officers committed unconstitutional acts in the line of duty."  288 F.3d 391, 399 (9th Cir. 2002).  In *Floyd*, the Second Circuit examined *City of Los Angeles* and explained that the police union in that case had a "direct and substantial" interest in intervention because "a proposed consent decree had not yet been entered, and the police officers were still subject to individual liability on allegations of 'misconduct and corruption.'"  *Floyd*, 770 F.3d at 1061 n.33 (quoting *City of Los Angeles*, 288 F.3d at 396).  Or, as the district court in *Floyd* stated, the Los Angeles "police union had a right to intervene in the merits on behalf of its members where members had been accused of misconduct, they could still face liability based on that misconduct, and the existing municipal defendant had no interest in defending the conduct." *Floyd v. City of New York*, 302 F.R.D. 69, 107 (S.D.N.Y.), *aff'd in part*, 770 F.3d 1051 (2d Cir. 2014).

The same interest in defending against alleged misconduct is present here and requires intervention.  As in *City of Los Angeles*, individual officers currently face individual liability and adverse employment actions based on conduct that is described with particularity in the complaints.  This Court will examine and rule on the incidents and police conduct described in the *People* complaint.  To determine declaratory and injunctive relief, the Court will weigh evidence and make findings of fact and legal conclusions about specific conduct by identifiable police officers.  Civil suits based on these allegations may arise, as they did in Los Angeles, where the court recognized that allegations of misconduct against officers could subject the

identified officers to individual liability.  *City of Los Angeles*, 288 F.3d at 399; *Floyd*, 302 F.R.D. at 107 n.20 ("In all likelihood, many officers did face subsequent criminal or civil liability in connection with the underlying behavior covered by" the allegations in *City of Los Angeles*). Sergeants may be held civilly liable for failing to intervene to stop police officers from committing unconstitutional acts.  The SBA's members have an immediate interest in avoiding impairment and prejudice to their rights.

Findings and conclusions in this court action also could affect disciplinary proceedings against individual officers.  Some of the alleged incidents are the subject of ongoing disciplinary proceedings by NYPD and the Civilian Complaint Review Board (CCRB).  According to the City, five of the plaintiffs in *Payne* are complainants in disciplinary proceedings.  (No. 1:21-cv-00533-CM, Doc. 33, at 2.)  Additional complaints, investigations, and proceedings are expected, as scores of officers are being investigated by the City in connection with alleged misconduct at issue in this case.  (Mullins Decl. ¶¶ 1, 3, 15-16.)  Officers cannot rely on the City to defend or justify their actions because the City, by the police commissioner, is responsible for making disciplinary decisions, and a finding in this case could foreclose a defense in a disciplinary proceeding.

This action will also affect indemnification decisions by the City.  The City can decline to indemnify officers who are defendants in civil litigation, such as private lawsuits under 42 U.S.C. § 1983, regarding the alleged misconduct.  This decision turns on whether the officer was acting within the scope of employment.  When the City declines to indemnify a sergeant in a Section 1983 case, it passes the costs and burdens associated with defending these suits to the SBA.  (*Id.* ¶ 17.)  The SBA has a concrete interest not only in avoiding the costs of defending these lawsuits but in ensuring any findings regarding officer conduct in this case do not prejudice

officers in other proceedings where the SBA is responsible for paying settlements and judgments.  *See Honeywell Int'l Inc. v. United States*, 71 Fed. Cl. 759, 764-65 (2006) (finding the putative intervenor's potential indemnification obligation sufficient to satisfy the Court of Federal Claims rule regarding intervention of right, which is identical to Federal Rule of Civil Procedure 24(a)).  Additionally, the City routinely requires individual sergeants to financially contribute to any global settlement when named as a defendant in a civil rights case.  If the sergeant refuses, the City reserves the option to settle the case without him, leaving the sergeant potentially responsible for an additional substantial judgment.

### 2.  Interest in remedies that may affect officer safety and job performance

The requested injunctive relief has the potential to transform NYPD's approach to handling demonstrations and large gatherings as well as day-to-day policing.  The SBA and its members have a substantial interest in not being subject to remedies that would compromise their ability to perform their jobs safely and effectively.

The SBA's members use specific tactics, some of which are described in the complaints, to control crowds that present dangerous conditions, involve illegal activity, or both.  (*See, e.g.*, *People* Compl. ¶ 63; *see also* Mullins Decl. ¶ 10.)  Sergeants rely on certain equipment in these scenarios, such as shields, tear gas, helmets, and batons, to keep themselves safe while lawfully protecting the public.  (Mullins Decl. ¶ 10.)  They also rely on the use of mounted officers and crowd containment techniques when managing and dispersing large crowds.  (*Id.*)  Sergeants facing violent crowds would be placed in greater personal danger if stripped of these tools in certain circumstances.  With fewer options at their disposal, officers may have no choice but to use greater force methods, such as hand-to-hand contact or the use of batons.  Limitations on tactics and equipment inevitably raise safety concerns for officers as well as the public.  The

relief sought in *People* therefore directly affects how officers perform their jobs, keep themselves safe, and ensure they come home at the end of the shift.

The City represents many interests and cannot be the sole spokesman for the SBA interests. There is no general public agreement on what specifically is necessary for police tactics, training, and equipment. The SBA needs to intervene to protect police officer interests on highly controversial subjects where the City's leadership has different or changing views.

### 3. Interest in protecting collective bargaining rights

The SBA has an interest in ensuring the collective bargaining rights of its members are not compromised by the relief ordered in this action. The requested injunctive relief is likely to have a practical impact on the terms and conditions of sergeants' employment by affecting their workload, training, and safety. While a consent decree or similar order might purport to preserve the SBA's ability to bargain about these issues after the fact, "unilateral changes [that] arise from a court order" may nonetheless implicate the SBA's collective bargaining rights. *Floyd*, 770 F.3d at 1062 n.36. The SBA is entitled to intervene to protect these rights.

The Attorney General seeks an order requiring the City to take "affirmative steps" to change police practices by "changing policies, conducting training, and undergoing monitoring, among others." (No. 21-cv-322, Doc. 1, Prayer for Relief ¶ C.) Such an order would implicate the SBA's collective bargaining rights because it would have an immediate "practical impact" on the terms and conditions of employment. *See* N.Y. City Admin. Code § 12-307(b) (stating that the City is required to negotiate with the SBA regarding matters within the scope of collective bargaining under the New York City Collective Bargaining Law, including decisions within the City's discretion that have a "practical impact" on "terms and conditions of employment, including, but not limited to, questions of workload, staffing and employee safety"). In

particular, injunctive relief may increase the workload of sergeants, affect staffing levels for potentially large gatherings and demonstrations, and require sergeants to conduct or participate in additional training, each of which falls within the scope of collective bargaining under New York law.  Officers have a protectable interest in negotiating collectively regarding the practical impact of these reforms.

Courts have permitted intervention by labor unions where, as here, the requested relief implicates collective bargaining rights.  For example, in *City of Los Angeles*, the Ninth Circuit affirmed the district court's conclusion that a police union had an interest in litigation involving a proposed consent decree between the City of Los Angeles and the United States, because the consent decree may have been inconsistent with the terms of the memorandum of understanding between the city and the union governing the terms and conditions of the members' employment. 288 F.3d at 399-400.  The court observed that the union "has state-law rights to negotiate about the terms and conditions of its members' employment as LAPD officers and to rely on the collective bargaining agreement that is a result of those negotiations." *Id.*  The Ninth Circuit reasoned that, to the extent it was disputed whether or not the consent decree conflicted with the memorandum of understanding, the union "has the right to present its views on the subject to the district court and have them fully considered in conjunction with the district court's decision to approve the consent decree." *Id.* at 400; *see also CBS, Inc. v. Snyder*, 798 F. Supp. 1019, 1023 (S.D.N.Y. 1992) (recognizing a union's legally protectable interest in participating in proceedings that may affect interpretation or enforceability of a collective bargaining agreement), *aff'd*, 989 F.2d 89 (2d Cir. 1993); *EEOC v. AT&T*, 506 F.2d 735, 741-42 (3d Cir. 1974) (permitting union to intervene to contest a proposed consent decree between the government and an employer that could have affected the terms of a collective bargaining

agreement); *Vulcan Soc'y of Westchester Cnty., Inc. v. Fire Dep't of White Plains*, 79 F.R.D. 437, 439 (S.D.N.Y. 1978) (recognizing labor unions' interest in employment discrimination action filed by minority firefighters against fire department where action implicated provisions in collective bargaining agreements related to salaries, assignments, and benefits, and modification of these terms was within the scope of possible relief).

The SBA has a direct interest in protecting its members by participating in the merits and remedies stages of this action, not simply bargaining about the effect of the reforms after the fact.

**B.      The SBA's interests are not adequately represented in this action.**

The City and other existing parties have conflicts of interest and cannot by themselves represent SBA interests.  As explained throughout the discussion above in Point I.A, the conflicts include ongoing disciplinary proceedings and investigations and indemnification decisions.  The City Defendants may acquiesce in the Attorney General's descriptions of specific police conduct described in the complaints or unfairly distance themselves and assign blame to the officers.  For example, if Chief of Department Terence Monahan or other NYPD officials testify that the individual officer conduct described in these actions ran contrary to training or commands, the officers will be left with greater exposure in disciplinary proceedings and civil and criminal actions.  No existing party will have incentive to impeach such testimony.  At each step of its defense, the City will be conflicted by multiple interests and unable to adequately protect the interests of the SBA's members.

Conflicts that prevent the City and its lawyers from adequately representing the SBA members are also explained in the attached affirmation of Professor Bruce Green, the Louis Stein Chair at Fordham University School of Law and Director of the Louis Stein Center for Law and Ethics, and a member of the Bar of this Court.  (Affidavit of Prof. Bruce A. Green (annexed as

Exhibit B).)  Professor Green has reviewed the *People* Complaint and concluded that "Although the City's position is that its lawyers can adequately represent the individual and collective interests of individual police sergeants and other police officers, I disagree."  (*Id.* ¶ 13.)  His affirmation explains in detail why the different interests of the City and the SBA prevent the City from representing the SBA members.  (*Id.* ¶¶ 13-22.)

The inadequacy of representation requirement of Rule 24(a) "is satisfied if the applicant shows that representation of his interest *may be* inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added; quotation marks omitted).  The question is whether an existing party has interests that are "*so similar* to those of [the proposed intervenor] that adequacy of representation [is] *assured*." *Brennan*, 260 F.3d at 132-33 (emphasis added).  Intervention is appropriate if an existing party may not advance the same "vigorous" argument as the proposed intervenor would to protect its interests.  *N.Y. Pub. Interest Rsch. Grp. v. Regents*, 516 F.2d 350, 352 (2d Cir. 1975) ("[W]e are satisfied that there is a likelihood that the pharmacists will make a more vigorous presentation of the economic side of the argument than would the [state authority party].");  *see also Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) (reversing district court's denial of intervention where intervenor had an interest that was "more narrow and focus[ed]" than the EPA, which was "concerned primarily with the regulation that affects their industries").  Where the government entity is defending the legality of its actions or the validity of its laws or regulations, courts should examine both (1) whether the government entity has demonstrated the motivation to litigate vigorously and to present all colorable contentions, and (2) the capacity of that entity to defend its own interests and those of the

prospective intervenor.  *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, No. 18 CIV.

11657 (ER), 2020 WL 1432213, at *5 n.5 (S.D.N.Y. Mar. 24, 2020).

As the district court in *Floyd* observed about the *City of Los Angeles* case, "the existing

municipal defendant had every reason to distance itself from the officers' conduct" and "could

not be counted on to adequately represent the officers' interests."  *Floyd v. City of New York*, 302

F.R.D. 69, 107 (S.D.N.Y. 2014).  So too here.  The SBA has a distinct mission and objective:

protection of and advocacy for its members.  (Mullins Decl. ¶ 3.)  The City, by contrast, will

protect and advocate for broader interests, which often conflict with the interests of individual

officers, as explained above.

Courts have recognized that the interests of government employees (and the unions that

represent them) may not be adequately represented by their employers.  For example, in *Brennan

v. New York City Board of Education*, the Second Circuit held that a group of white city

employees was entitled to intervene in a Title VII action brought by the United States against the

New York City Board of Education alleging discriminatory hiring practices against racial

minorities.  260 F.3d at 133.  The court recognized the inherent conflict for the Board, which had

both an interest in defending its hiring practices and "an equally strong or stronger interest in

bringing such litigation to an end by settlements involving the displacement of employees"—like

the intervenors—"who are not parties to the action."  *Id.*  The Second Circuit concluded that the

white employees could intervene because of the risk that the Board would "behave like a

stakeholder rather than an advocate" for their interests.  *Id.*; *see also City of Los Angeles*, 288

F.3d at 402 (stating that the presumption of adequate representation by a governmental body

does not apply when the government acts as an employer); *Vulcan Soc'y*, 79 F.R.D. at 441

(concluding that municipalities would not represent the interests of unions "with the same vigor and advocacy as would the unions themselves").

The SBA more than satisfies the requisite showing to establish that the City Defendants' interests are not "so similar" that adequate representation is "assured."  *Brennan*, 260 F.3d at 132-33.  The SBA should be granted party status to protect its members' interests from being infringed in this case.

## II.    The SBA should be granted permissive intervention under Rule 24(b).

In the alternative, the Court should grant the SBA permissive intervention.  Based on the compelling interests explained above, the SBA will ensure this Court is fully informed about the central issues in this case.   Each of those interests is a compelling ground for permissive intervention.  The SBA and its members have direct knowledge based on experience in the key crowd control events at issue and will ensure the Court has evidence other parties have no interest in presenting on safety issues such as the use of pepper spray and batons and crowd control techniques.  Allowing SBA to appear as a party would "provide this Court with a fuller picture to evaluate the fairness, reasonableness, and equities" of proposed reforms.  *United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 419 (S.D.N.Y. 2018).   The Court needs and should welcome a party that can provide evidence on these specific tactics that other parties cannot be counted on to present.  They concern issues of fact common to all the consolidated cases.

"A district court may grant a motion for permissive intervention if the application is timely and if the 'applicant's claim or defense and the main action have a question of law or fact in common.'"  *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000) (quoting Fed. R. Civ. P. 24(b)(2)).   "The court must consider whether granting permissive intervention will unduly delay or prejudice the adjudication of the rights of the existing parties."  *Id.*; *see also*

*U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) (stating that undue delay or prejudice is the "principal consideration").  "Courts in this district have consistently held that Rule 24(b) 'is to be liberally construed,'" *Yang v. Kellner*, No. 20 CIV. 3325 (AT), 2020 WL 2115412, at *1 (S.D.N.Y. May 3, 2020) (citation omitted), and motions under it should be "liberally granted," *Miller v. Silbermann*, 832 F. Supp. 663, 673 (S.D.N.Y. 1993).  "The phrase 'claim or defense' is not to be read technically and only requires 'some interest on the part of the applicant.'"  *Friends of the E. Hampton Airport, Inc. v. Fed. Aviation Admin.*, No. 15-CV-0441(JS)(ARL), 2016 WL 792411, at *8 (E.D.N.Y. Feb. 29, 2016) (citation omitted).  Also, permissive intervention "does not require a finding that party representation be inadequate." *New York v. U.S. Dep't of Health & Human Servs.*, No. 19 CIV. 4676 (PAE), 2019 WL 3531960, at *6 (S.D.N.Y. Aug. 2, 2019).  The court may consider several non-dispositive factors, including whether the putative intervenor will benefit from the application, the nature and extent of its interests, whether its interests are represented by the existing parties, and whether the putative intervenor will contribute to the development of the underlying factual issues.  *Brennan*, 579 F.2d at 191-92.

The SBA's intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties."  *Citizens Against Casino Gambling in Erie Cnty. v. Hogen*, 417 F. App'x 49, 50 (2d Cir. 2011) (quoting *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys.*, 797 F.2d 85, 89 (2d Cir. 1986)).  There can be no "undue" delay for ensuring the Court has evidence other parties have no interest or incentive in presenting.

The SBA is uniquely qualified to "assist the Court in resolving issues before it."  *U.S. Dep't of Health*, 2019 WL 3531960, at *6.  They are directly affected (see Point I.A above) and will present relevant and helpful evidence on the Summer 2020 demonstrations, crowd control

techniques, pepper spray, baton use, and other tactics (Mullins Decl. ¶¶ 8-13). These issues will be central to assessing liability and crafting reasonable and safe reforms.

Permissive intervention should be granted.

## **CONCLUSION**

For all the reasons explained above, the Court should grant the SBA's motion to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, grant permissive intervention under Rule 24(b).

Dated: March 3, 2021
New York, New York

Respectfully Submitted,

/s/ Anthony P. Coles
Anthony P. Coles
**DLA PIPER LLP (US)**
1251 6th Avenue
New York, NY 10020
Telephone: (212) 335-4844
Facsimile: (212) 884-8644
Email: anthony.coles@dlapiper.com

*Attorney for Proposed Intervenor Sergeants Benevolent Association*

*Of Counsel*:
Andrew C. Quinn, Esq.
The Quinn Law Firm
399 Knollwood Road, Suite 220
White Plains, NY 10603
Telephone: (914) 997-0555
Facsimile: (914) 997-0550
Email: aquinn@quinnlawny.com

## **CERTIFICATE OF SERVICE**

I, Anthony P. Coles, hereby certify that, on this 3rd day of March, 2021, I caused the foregoing motion and its attachments to be served on all counsel of record in these cases by filing on the CM/ECF system.

/s/ Anthony P. Coles
Anthony P. Coles