**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: New York City Policing During Summer 2020 Demonstrations<br>_____<br><br>This filing is related to:  ALL CASES | 20-Cv-8924 (CM)<br>(GWG) |

**MEMORANDUM OF LAW OF THE POLICE BENEVOLENT**
**ASSOCIATION IN SUPPORT OF MOTION TO INTERVENE**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

THE CONSOLIDATED ACTIONS ........................................................................ 3

BACKGROUND ....................................................................................................... 4

ARGUMENT ............................................................................................................. 6

THE PBA'S MOTION TO INTERVENE SHOULD BE GRANTED ..................... 6

A.   The PBA May Intervene As Of Right Under Rule 24(a) ................................ 6

    1.   This Motion Is Timely .......................................................................... 7

    2.   The PBA Has A Direct, Protectable Interest That May Be Impaired By The Disposition Of The Consolidated Actions .................................. 8

    3.   The PBA's Interests Will Not Be Adequately Protected By The Parties To This Action ................................................................................... 12

B.   Alternatively, The PBA Should Be Granted Permissive Intervention ........... 14

C.   The PBA Has Satisfied Rule 24(c) ............................................................... 15

CONCLUSION ....................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases** ................................................................................................ **Page(s)**

*Abramson v. Pennwood Inv. Co*rp.,
    392 F.2d 759 (2d Cir. 1968) ............................................................. 17

*Black Fire Fighters Ass'n* of Dallas *v. City of Dallas, Tex.*,
    19 F.3d 992 (5th Cir. 1994) ................................................................ 9

*Brennan v. N.Y. City Bd. of Educ.*,
    260 F.3d 123 (2d Cir. 2001) ..................................................... 2-3, 9, 10

*Bridgeport Guardians, Inc. v. Delmonte*,
    602 F.3d 469 (2d Cir. 2010) ........................................................... 2, 9

*Briscoe v. City of New Haven*,
    2012 U.S. Dist. LEXIS 203545 (D. Conn. Oct. 5, 2012)................................. 17

*CBS, Inc. v. Snyder*,
    798 F. Supp. 1019 (S.D.N.Y. 1992) ................................................... 11

*Conn. Fine Wine & Spirits, LLC v. Harris*,
    2016 U.S. Dist. LEXIS 194662 (D. Conn. Nov. 8, 2016) ............................... 17

*Dunton v. Suffolk Cnty., State of N.Y.*,
    729 F.2d 903 (2d Cir. 1984), *amended* 748 F.2d 69 (2d Cir. 1984) ........... 13-14

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ............................................................... 7

*E.E.O.C. v. A.T. & T. Co.*,
    506 F.2d 735 (3d Cir. 1974) ............................................................ 11

*Edwards v. City of Houston*,
    78 F.3d 983 (5th Cir. 1996) .............................................................. 7

*Floyd v. City of New York*,
    770 F.3d 1051 (2d Cir. 2014) ................................................... 11, 12, 13

*In re Holocaust Victim Assets Litig.*,
    225 F.3d 191 (2d Cir. 2000) ............................................................. 8

*In re Tribune Co. Fraudulent Conveyance Litig.*,
   291 F.R.D. 38 (S.D.N.Y 2013) ........................................................................ 17

*Klein v. Nu-Way Shoe Co.*,
   136 F.2d 986 (2d Cir. 1943) ............................................................................ 18

*N.Y. Pub. Interest Research Grp. v. Regents*,
   516 F.2d 350 (2d Cir. 1975) ............................................................................ 16

*Natural Res. Def. Council v. Costle*,
   561 F.2d 904 (D.C. Cir. 1977) ........................................................................ 16

*Stallworth v. Monsanto Co.*,
   558 F.2d 257 (5th Cir. 1977) .......................................................................... 11

*Tachiona v. Mugabe*,
   186 F. Supp. 2d 383 (S.D.N.Y. 2002) ............................................................ 17

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) ........................................................................................ 13

*United Fire Officers Association v. DeBlasio*,
   2020 U.S. Dist. LEXIS 154649 (S.D.N.Y. Aug. 25, 2020) ................. 15-16, 18

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ................................................................. *passim*

*United States v. City of Portland*,
   2013 U.S. Dist. LEXIS 188465 (D. Or. Feb. 19, 2013) ............................. 7, 10

*Vulcan Soc. of Westchester Cnty., Inc. v. Fire Dept. of White Plains*,
   79 F.R.D. 437 (S.D.N.Y. 1978) ................................................................. 14-15

*U.S. Postal Serv. v. Brennan*,
   579 F.2d 188 (2d Cir. 1978) ............................................................................ 15

*W.R. Grace & Co. v. Local Union 759*,
   461 U.S. 757 (1983) ........................................................................................ 10

*Windsor v. United States*,
   797 F.Supp.2d 320 (S.D.N.Y. 2011) ............................................................. 17

**Statutes**

Federal Practice and Procedure § 1914 (2020 ed.) .................................................. 18

N.Y.C. Admin. Code § 12-306(4), (5) ..................................................... 6

N.Y.C. Admin. Code § 12-307(b) ........................................................... 5

NY Labor Law § 27-a .......................................................................... 6

NYS Civil Service Law § 75 .............................................................. 2

**Rules**

Fed. R. Civ. P. 12 ............................................................................ 18

Fed. R. Civ. P 23 ............................................................................. 17

Fed. R. Civ. P. 24 .......................................................................... *passim*

Association of the City of New York, Inc. ("PBA"), respectfully submits this memorandum, together with the Declaration of Joseph Alejandro, Second Vice President of the PBA ("Alejandro Decl."), in support of its motion to intervene in the above cases.[1]

## **INTRODUCTION**

These cases all concern the conduct of the PBA's members – Officers of the New York Police Department ("NYPD") – during the protests and violence that began in May 2020 and continued through the summer of 2020 following the death of George Floyd while in police custody in Minneapolis, Minnesota.

The PBA represents more than 23,000 Police Officers, a majority of the NYPD's 34,500 members.   The protests described in the Complaints included many violent acts that targeted those officers.  Plaintiffs do not deny this violence; indeed, they concede it, even while seeking to minimize it, through their frequent reference to "*mostly* peaceful protests."  In fact, over 400 Officers were injured during the protests. Alejandro Decl. ¶¶ 13, 17 (v).

The conduct of the PBA's members in dealing with those protests and the practices and procedures developed by the NYPD leadership, particularly in responding to the sometimes violent protestors, is the central subject of the Complaints.  The Complaints seek unspecified changes in the way future protests

---

[1] While all of the complaints allege illegal conduct by NYPD Officers generally, two of the actions, *Payne* and *Wood*, seek relief only with respect to alleged injuries to a named plaintiff.  As to those actions, the PBA seeks intervention only to the limited extent of responding, as appropriate, to the generalized allegations about NYPD conduct, and not the specific incidents allegedly impacting only those named plaintiffs.

are to be handled in a manner which would undoubtedly threaten the safety of PBA members and increase the risks to which they are subject.  A broad remedial order could also impact the rights of PBA members in future disciplinary proceedings arising out of conduct during demonstrations, including their procedural and substantive rights under such statutes as NYC Admin. Code 14-115 and section 75 of the NYS Civil Service Law.

The Officers should therefore be allowed, through the PBA, to intervene in order to protect their interests in their personal safety, their collective bargaining and other statutory rights, their reputations and other interests that stand to be affected by any findings, orders, remedies or settlements that may result from these actions.

Under Fed. R. Civ. P. 24(a), the PBA is entitled to intervene as of right if it is "so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest", unless "existing parties adequately represent that interest.".  Settled law makes clear that the PBA is "so situated". Where plaintiffs seek "injunctive relief against [a union's] member officers and raise[] factual allegations that its member officers committed unconstitutional acts in the line of duty", the  union may intervene as of right. *United States v. City of Los Angeles*, 288 F.3d 391, 399 (9th Cir. 2002).  *See also  Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 474-75 (2d Cir. 2010); *Brennan v. N.Y. City Bd. of Educ.,* 260 F.3d 123, 129-130 (2d Cir. 2001). The PBA also has a protectable interest in any outcome that would set rules for the day-to-day activities of its members and abridge its "state-law rights to negotiate about the terms and conditions of its members'

employment. In *United States v. City of Los Angeles*, 288 F.3d at 400. And, as we

show below, the existing parties do not adequately represent the PBA's interests.

Alternatively, the PBA should be permitted to intervene in the Court's

discretion, under Fed. R. Civ. P. 24(b), so it that it may provide the Court with

information and a perspective on the events at issue that the named parties are

unlikely to supply. The Court should not be put in the position of deciding this case

on the merits, or entering a consent decree, in a proceeding where no one

represents the interests of the PBA and its members.

## THE CONSOLIDATED ACTIONS

Five actions are before the Court. The Complaints in *Payne*, *Sierra* and *Wood*

were filed in late 2020, beginning with *Payne* on October 26. The Complaint in the

Attorney General's action ("*People*") was filed January 14, 2021. The Complaint in

*Sow* was filed January 21, 2021. By Order entered February 22, 2021, the Court,

among other things: 1) consolidated the five cases for pretrial purposes, 2) directed

that all filings be made be made using a common caption under Docket No. 20 Civ.

8924 (*Payne*), and 3) directed that any motion for leave to intervene be filed by

March 3, 2021. We refer to *People, Payne, Sierra, Wood* and *Sow* collectively as the

"Consolidated Actions".

The Court has required amended pleadings to be filed by March 5; and has set

a schedule for the submission of motions to dismiss, which the City Defendants have

said they intend to file. Thus, the issues to be litigated in the Consolidated Actions

have yet to be fully defined, particularly any that may be raised by defendants'

answers to those cases even though motions to dismiss there have as yet been no

discovery.  In short, the Consolidated Actions are at a very early stage.

Even at this stage, however, there can be no doubt that the Consolidated

Actions all raise issues affecting the working conditions – including the physical

safety –  and reputations of the PBA's members.  The Complaints seek injunctive

and declaratory relief for what they describe as widespread police misconduct during

the response to the Summer 2020 protests.  Their allegations are directed toward

NYPD Officers generally, with specific examples offered to support allegations of

practices that Plaintiffs claim are widespread, including: unprovoked assaults,

excessive force, unnecessary restraints, denial of medical treatment and unjustified

arrests of medics and others, exposing the public to COVID risk by failing to wear

masks, disproportionate targeting of Black and Latinx New Yorkers, Officers

covering their badges to prevent members of the public from identifying them,

association with White Supremacist groups, and processing White protestors faster

than protestors of Color.  Among other things, Plaintiffs object to and seek to

prohibit Officers' use of protective gear in various circumstances.

## BACKGROUND

The PBA is the designated collective bargaining agent for more than

23,000 police Officers employed by the NYPD. The NYPD is a highly diverse

department. Police Officers categorized as non-white make up more than 57% of

all such Officers.  Alejandro Decl., ¶ 6.  PBA members stand at the front line of

police services in the City, enforcing state and New York City laws and thereby

ensuring public safety.  Alejandro Decl., ¶¶ 4-5. This involves field police work,

including patrolling, conducting surveillance, and providing the law enforcement oversight and response for the protests at issue in this action. *Id.* The PBA negotiates on Police Officers' behalf with the City on matters of policy, terms and conditions of employment, and all matters relating to the Officers' general welfare. *Id.* ¶ 6. The PBA's mission is to protect the interests of its members. *Id.* ¶¶ 3, 6-7.

Under the New York City Collective Bargaining Law, the City must negotiate with the PBA regarding all matters within the scope of collective bargaining, such as wages, hours, and working conditions. Alejandro Decl., ¶ 8. While disciplinary and certain other policy matters are City prerogatives, "the practical impact that decisions on [those matters of policy] have on terms and conditions of employment, including, but not limited to… employee safety are within the scope of collective bargaining." N.Y.C. Admin. Code § 12-307(b). The City's Administrative Code makes it an improper practice for a public employer to "refuse to bargain collectively in good faith on matters within the scope of collective bargaining" with certified public employees unions and "to unilaterally make any change as to any mandatory subject of collective bargaining or as to any term and condition of employment established in prior contract." N.Y.C. Admin. Code § 12-306(4), (5). In addition, the PBA frequently addresses issues relating to workplace safety in labor-management discussions, and where necessary, via complaints to the Public Employee Safety and Health ("PESH") Bureau (effectively, public sector OSHA), pursuant to the Public Employee Safety and Health Act (NY Labor Law §27-a). Alejandro Decl., ¶ 9.

**ARGUMENT[2]**

## THE PBA'S MOTION TO INTERVENE SHOULD BE GRANTED

The PBA asks to intervene in order to safeguard the interests of its members that may be affected by resolution of the Consolidated Actions. Changes in training, supervision, monitoring, and/or discipline have been demanded in the Complaints and may be ordered or agreed to. This alone is sufficient to support intervention. The prospect that other interests may be implicated further supports intervention, and in light of the early stage of the Consolidated Actions, intervention cannot prejudice any party.

### A.      The PBA May Intervene As Of Right Under Rule 24(a)

Fed. R. Civ. P. Rule 24(a) provides:

> On timely motion, the court must permit anyone to intervene
> who: . . . (2) claims an interest relating to the property or
> transaction that is the subject of the action, and is so situated
> that disposing of the action may as a practical matter impair or
> impede the movant's ability to protect its interest, unless
> existing parties adequately represent that interest.

To intervene as of right, an applicant must demonstrate that the motion is timely, that the applicant has a legal interest in the subject matter that may be impaired by the outcome of the litigation, and that the applicant's interest may not be adequately represented by the existing parties. *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001).

---

[2] In addition to the arguments below, the PBA joins in the arguments made in support of intervention by other police unions, to the extent those arguments are applicable to the PBA.

police unions to intervene in civil rights litigation that touches upon the interests of their members. *See, e.g.*, *City of Los Angeles*, 288 F.3d at 398 (reversing denial of police union's motion to intervene as of right for all purposes); *Edwards v. City of Houston*, 78 F.3d 983, 989 (5th Cir. 1996) *(en banc)* (reversing denial of police union's motion to intervene for purposes of opposing proposed consent decree and for purposes of appeal, vacating approval of consent decree, and ordering new fairness hearing regarding proposed consent decree); *United States v. City of Portland*, No. 12-cv-02265, 2013 U.S. Dist. LEXIS 188465 (D. Or. Feb. 19, 2013) (granting police union's motion to intervene as of right in the remedy phase of a proceeding regarding a proposed settlement agreement between the United States and the City of Portland).

### 1.  <u>This Motion Is Timely</u>

Under Rule 24, the timeliness of the motion is determined by the totality of the circumstances.  *See In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir. 2000). The Court may consider "(1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention." *Id.* The timeliness requirement is liberally construed. *See, e.g.*, *City of Los Angeles*, 288 F.3d at 398; *Cook v. Bates*, 92 F.R.D. 119, 122 (S.D.N.Y. 1981) ("In the absence of prejudice to the opposing party, even significant tardiness will not foreclose intervention.").

Because the Consolidated Actions are both currently only in their earliest stages, granting the PBA's request to intervene will not prejudice any party. Nor can it be said that the PBA has been guilty of delay. There are no unusual circumstances militating against intervention. Because discovery is to begin shortly, the PBA would be prejudiced by a denial of its motion. The timeliness element is clearly satisfied.

> **2.**     **The PBA Has A Direct, Protectable Interest That May Be Impaired By The Disposition Of The Consolidated Actions**

The PBA has a direct interest that is threatened with impairment in the Consolidated Actions. As noted above, a police union has been held entitled to intervene as of right where plaintiffs seek "injunctive relief against its member officers and raise[] factual allegations that [the union's] member officers committed unconstitutional acts in the line of duty." *City of Los Angeles*, 288 F.3d at 399-400, *see also Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d at 474-75 (2d Cir. 2010) (granting intervention as of right to police officers in action alleging past discrimination, where potential remedies could affect their prospects for promotion); *Brennan v. N.Y. City Bd. of Educ.,* 260 F.3d at 129-130 (2d Cir. 2001) (same as to Department of Education employees); *Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex.*, 19 F.3d 992, 994 (5th Cir. 1994) (allowing intervenor fire fighters' association to challenge underlying issue of municipal liability). The PBA likewise has an interest in the contours of any injunction or other prospective relief to the extent it is premised upon any negative or harmful findings that may be made against its members.

8

finding, one of the possible outcomes in this case, could allow the district court to

set employment practices that would otherwise be subject to bargaining under

state law, or to impose changes in the conduct of future disciplinary proceedings.

Thus, it is not only state-law collective bargaining rights that may be endangered

by a possible remedial order, but also PBA members' rights to fair disciplinary

procedures or complaints to the Public Employee Safety and Health Bureau

regarding worker safety, protected by state statutes and by the due process clauses

of the state and federal constitutions. The PBA has "state-law rights to negotiate

about the terms and conditions of [their] members'' employment . . . and to rely on

the [resulting] collective bargaining agreement[s]." *City of Los Angeles*, 288 F.3d

at 399-400; *see also W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 771

(1983). These state law rights may be abridged only "as part of court-ordered

relief after a judicial determination of liability." *City of Los Angeles*, 288 F.3d at

400.

Intervention is appropriate even though it may be uncertain, at this stage,

whether the outcome of the case will impair the PBA's interests. As the Second

Circuit has said, "'except for allegations frivolous on their face, an application to

intervene cannot be resolved by reference to the ultimate merits of the claims which

the intervenor wishes to assert following intervention.'" *Brennan v. N.Y.C. Bd. of

Educ.*, 260 F.3d at 129.

Thus a possibility, not a certainty, of the abridgment of collective

bargaining or other rights is all that is needed to justify intervention as of right. If

a proposed remedial order "contains any mechanism that

contradict the terms" of the collective bargaining agreement, the union members

have "a protectable interest." *United States v. City of Portland*, 2013 U.S. Dist.

LEXIS 188465 at *11-12 (emphasis added). Even when the issue of whether an

order touches upon a bargaining right is disputed, a union has the "right to present

its views on the subject to the district court and have them fully considered in

conjunction with the district court's decision to approve" the ultimate injunction.

*City of Los Angeles*, 288 F.3d at 400-01 (allowing intervention despite the

argument that the decree's effect on collective bargaining was merely

speculative); *see also E.E.O.C. v. A.T. & T. Co.*, 506 F.2d 735, 741-42 (3d Cir.

1974); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 268-69 (5th Cir. 1977); *CBS,*

*Inc. v. Snyder*, 798 F. Supp. 1019, 1023 (S.D.N.Y. 1992), *aff'd*, 989 F.2d 89 (2d

Cir. 1993).

      *Floyd v. City of New York,* 770 F.3d 1051 (2d Cir. 2014), which upheld the

district court's exercise of discretion denying a motion by various police unions to

intervene at the end of the long-running "stop and frisk" litigation, does not support

denial of intervention here.  The *Floyd* Court found that intervention was sought too

late, coming at the remedial stage after years of highly publicized litigation.  While

the Court in *Floyd* also found that the unions lacked a direct, protectable interest in

the case, that conclusion turned on factors entirely absent here.

      The *Floyd* Court denied intervention on the grounds that the unions'  belated

effort came after a Remedial Order had been proposed, and that the "unions have not

shown in any meaningful way how the reforms set forth in the Remedial Order,

which embodies 'an agreement between the City and plaintiffs, would have any 'practical impact' on 'questions of workload, staffing and employee safety' that are within the scope of the unions' collective bargaining rights." 770 F.3d at 1061. *Floyd* distinguished the Ninth Circuit's decision in *City of Los Angeles*, quoted above, on the ground that, at the time intervention was sought there, "a proposed consent decree had not yet been entered". 770 F.3d at 1061, n.33. It also said that, in *Floyd*, "the unions had submitted no evidence to substantiate their claims of reputational harm. Aside from their own assertions, there was no evidence in the record showing that the union members' careers had been tarnished, that their safety was in jeopardy, or that they had been adversely affected in any tangible way." *Id*.

Here, in contrast to *Floyd*, it can hardly be disputed that the PBA's members' protected interests, in their physical safety and collective bargaining rights as well as their reputations, are in jeopardy. The case involves "mostly peaceful protests" that repeatedly morphed into destructive and violent riots. The NYPD and its Officers became the targets of these protests shortly after they began, and in the course of trying to maintain the peace and protect the rights of all New Yorkers, were subjected to violent assaults. The accompanying declaration provides stark details. *See* Alejandro Decl. ¶¶ 13-21.

This case is also unlike *Floyd* in that the broad demands for injunctive and declaratory relief in the recently commenced Consolidated Actions are as yet undefined. The impact on the PBA's members of any relief plaintiffs may obtain, while not now completely foreseeable, could be very severe.

Thus, *Floyd* provides no basis for denying intervention in this case. Indeed,

*Floyd*'s reasoning – relying on both the timing of the application and the failure to

show a threat to protected interests – supports intervention here.

> **3. The PBA's Interests Will Not Be Adequately Protected By The Parties To This Action**

Where a protected interest of a would-be intervenor is threatened,

intervention as of right is permitted "unless existing parties adequately represent

that interest." Fed. R. Civ. P. 24(a). To justify intervention, the applicant need only

show that representation of his interest " 'may be' inadequate; and the burden of

making that showing should be treated as minimal." *Trbovich v. United Mine*

*Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also City of Los Angeles*, 288

F.3d at 398.

Here, it is practically self-evident that none of the current Defendants – the

City and NYPD management –  adequately represent the PBA's interests or those

of its members. While the City should have an interest in protecting its Officers'

safety and reputations, the City's leaders have many other fish to fry, and they

cannot be expected always to give priority to what is most important to Police

Officers. And as to collective bargaining rights, the City and its senior officials are

almost the worst possible representatives of PBA interests: they sit on the opposite

side of the collective bargaining table. Similar concerns are raised when statutory

rights of police officers are implicated.

The case law recognizes that public employees, and their unions, cannot be

adequately represented by their employers in situations of this kind.  *See, e.g.,*

their employees frequently diverge, especially in the context of municipal

employment, where an employer's interests are often not congruent with the

employee's and the employer may argue that the employee was acting outside the

scope of his employment"), *quoting Dunton v. Suffolk Cnty., State of N.Y.*, 729

F.2d 903, 907 (2d Cir. 1984), *amended*, 748 F.2d 69 (2d Cir. 1984)

("After *Monell* the interests of a municipality and its employee as defendants in

a section 1983 action are in conflict.")).

  In the controversy about the events underlying this case, deep differences

between the PBA and the City have already emerged.  A submission made while

the events were still in progress by the PBA to the Attorney General (Alejandro

Decl., Exhibit A) was sharply critical of the manner in which City and senior

NYPD officials responded to the "mostly peaceful protests." And in their public

pronouncements,  the Mayor and other elected leaders of the City have already

shown a distinct lack of enthusiasm for defending the police response.  Alejandro

Decl., Ex. A at 11-12 (PBA submission to Attorney General's Office, collecting

examples of statements by Mayor De Blasio and high-ranking police officials

prematurely placing blame on Officers, including a statement by Mayor that

Officer on video "should have his gun and badge taken away today"; video later

obtained showed that the Officer had drawn and pointed his weapon only after his

supervisor had been struck in the head by a brick thrown at close range just

moments before).  Indeed, in response to the Attorney General's present actions,

the Mayor said that he "couldn't agree more" that changes "must – and will – be

made." us defense by the City in this case.

Courts have also recognized the obvious truth that, when it comes to collective bargaining, the City's interests are not aligned with those of the unions with which it bargains, or their members. *See Vulcan Soc. of Westchester Cnty., Inc. v. Fire Dept. of White Plains*, 79 F.R.D. 437, 441 (S.D.N.Y. 1978) ("Although the municipalities involved have the same interest in seeking qualified and efficient fire personnel, it could hardly be said that all the interests of the union applicants are the same as those of the municipalities.").

In sum, this is a classic case for intervention as of right.

**B.** **Alternatively, The PBA Should Be Granted Permissive Intervention**

In the alternative, the PBA meets the standard for permissive intervention. Fed. R. Civ. P. 24(b). The threshold requirement for permissive intervention is a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention must not "unduly delay or prejudice the adjudication of the original parties'' rights." Fed. R. Civ. P. 24(b)(3). In addition, courts may consider such factors as whether the putative intervenor will benefit from the application, the nature and extent of its interests, whether its interests are represented by the existing parties, and whether the putative intervenor will contribute to the development of the underlying factual issues. *See, e.g.,* U.S. *Postal Serv. v. Brennan,* 579 F.2d 188, 191-92 (2d Cir. 1978). All these factors support intervention here.

(KPF) 2020 U.S. Dist. LEXIS 154649, *4 (S.D.N.Y. Aug. 25, 2020), Judge Failla granted permissive intervention because "the Court concludes that [the non-union intervenor's] participation moving forward would 'significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Citing, H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986). That reason applies here.

The previous section of this brief demonstrates, among other things, that the PBA can furnish the Court with facts and a point of view that the existing parties have little incentive to provide. The PBA, unlike the present Defendants, is uniquely well-equipped to advance its members' views and protect their interest in the Consolidated Actions. *See, e.g., Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) (granting intervention because "the appellants' interest is more narrow and focu[]sed than EPA's, being concerned primarily with the regulation that affects their industries"); *N.Y. Pub. Interest Research Grp. v. Regents*, 516 F.2d 350, 352 (2d Cir. 1975) ("[T]here is a likelihood that the pharmacists will make a more vigorous presentation of the economic side of the argument than would the [state authority party]."). The PBA has a distinct perspective and long experience with the issues raised by the Consolidated Actions, concerning matters affecting the interests of its members and that may be impaired by any resolution. It should be permitted to participate as a party.

**C.    The PBA Has Satisfied Rule 24(c)**

"pleading that sets out the claim or defense."

Rule 24(c) is concerned with ensuring that a party seeking to intervene "set forth sufficient facts and allegations to give all parties notice of its claims" and defenses, and courts take "a lenient approach" to its requirements. *In re Tribune Co. Fraudulent Conveyance Litig.,* 291 F.R.D. 38, 42 & n.3 (S.D.N.Y 2013); *Windsor v. United States*, 797 F.Supp.2d 320, 325-26 (S.D.N.Y. 2011 (waiving attachment of pleading where proposed intervenor's "position on the subject matter of the litigation is clearly articulated in its motion papers"); *see also Conn. Fine Wine & Spirits, LLC v. Harris*, 2016 U.S. Dist. LEXIS 194662, *10 (D. Conn. Nov. 8, 2016) ("the court concludes that the movants' failure to file a 'pleading' with their Motions is not fatal to their efforts to intervene. The movants' Motions put Total Wine sufficiently on notice as to their interests and positions in the case, such that this court will liberally construe Rule 24(c), in accordance with the circuit courts that have more recently[3] addressed this issue"); *Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 393 (S.D.N.Y. 2002) (where "the position of the movant is apparent from other filings and where the opposing party will not be

---

[3] *Conn. Fine Wine* and the other cases cited here found *Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759 (2d Cir. 1968), where the Second Circuit affirmed dismissal of a Rule 24 motion for failure to attach a proposed pleading, inapplicable. *See also Briscoe v. City of New Haven,* 2012 U.S. Dist. LEXIS 203545, *12-13 (D. Conn. Oct. 5, 2012)(dispensing with proposed answer from movant for intervention when defendant had not yet answered; collecting cases reflecting multi-circuit lenity under Rule 24(c), and noting that *Abramson* "appears to have been influenced by the special pleading requirements for shareholder derivative actions in Rule 23(b).")

requirements").

Since this case is in the earliest stage of litigation – where the amended complaints will not be filed until after the interventions motions are due, and the named defendants have not answered and instead have stated their intention to move to dismiss – there is no "pleading" that would be appropriate for any intervenor to propose at this stage. An answer would be premature where, as here, the original complaints will soon be displaced by amended pleadings. And when Defendants file their motion to dismiss under Rule 12, their time to answer will be tolled until the Court rules on that motion. In all likelihood, the PBA will also move to dismiss if intervention is granted before the time to make such a motion has expired under the Court's expedited schedule.

The leading treatise on practice in the federal courts confirms that Rule 24(c) must be interpreted practically, rejecting a "needlessly literal reading of the rule." Wright & Miller, Federal Practice and Procedure § 1914 (2020 ed.); *cf. Klein v. Nu-Way Shoe Co.*, 136 F.2d 986, 989 (2d Cir. 1943) (rejecting a Rule 24(c) objection to intervention as "trivial"). No authority requires the submission of a proposed pleading where, as here, it would serve no purpose. In *United Fire Officers Association v. DeBlasio, supra,* Judge Failla granted intervention without the submission of a proposed pleading in a factually similar setting. The point of Rule 24(c) is to create parity between would-be intervenors and existing parties, not to impose alternative pleading schedules inappropriate to the status of the case.

If, however, the Court deems a proposed pleading necessary, the PBA will submit one promptly.

## **CONCLUSION**

For all of the above reasons, the PBA respectfully requests that the Court grant its motion to intervene.

Dated: March 3, 2021
      New York, New York

                                       **LAW OFFICES OF ROBERT S. SMITH**

                                       By**:**   /s/ Robert S. Smith
                                             Robert S. Smith

                                       7 Times Square, 28th floor
                                       New York, N.Y. 10036
                                       Tel.:  (917) 225-4190
                                       Email: robert.smith@rssmithlaw.com

                                            – and -

                                       **SCHLAM STONE & DOLAN LLP**

                                       By: /s/ Richard H. Dolan
                                           Richard H. Dolan
                                           Thomas A. Kissane

                                       26 Broadway, 19th Floor
                                       New York NY 10004
                                       Tel.:  (212) 344-5400
                                       Fax:  (212) 344-7677
                                       Email:      rdolan@schlamstone.com
                                       Email:      tkissane@schlamstone.com

                                       *Attorneys for Proposed Intervenor*
                                       *Police Benevolent Association of the City of*
                                       *New York, Inc.*

MICHAEL T. MURRAY
Office of the General Counsel
Police Benevolent Association of the
City of New York, Inc.
125 Broad Street, 11th Floor
New York, NY 10004

Gaurav I. Shah,
   Associate General Counsel

Tel: (212) 298-9144
E-mail:  mmurray@nycpba.org
              gshah@nycpba.org

*Of Counsel*