UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In Re: New York City Policing During Summer 2020
Demonstration

-------------------------------------------------------------x

This filing is related to

*People v. City of New York, et al.*

-------------------------------------------------------------x

Civil Action No.:
20-CV-8924
(CM) (GWG)

Civil Action No.:
21-CV-0322
(CM) (GWG)

## MEMORANDUM OF LAW IN SUPPORT OF
## PROPOSED INTERVENOR DETECTIVE ENDOWMENT
## ASSOCIATION'S MOTION FOR INTERVENTION

**PITTA LLP**
**Stephen Mc Quade, Esq.**
**Vincent F. Pitta, Esq.**
*Attorneys for Proposed Intervenor*
*Detective Endowment Association*
**120 Broadway, 28th Floor**
**New York, New York 11554**
**(212) 652-3885**
smcquade@pittalaw.com
vpitta@pittalaw.com

{00682634-2}

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 3

ARGUMENT ....................................................................................................................... 3

    POINT I  INTERVENTION AS OF RIGHT IS WARRANTED IN THE INSTANT
    ACTION ......................................................................................................................... 3

        A.   Intervention is Timely .................................................................................... 4

        B.   The Union's Interests Are Direct, Substantial and Legally Protectable ..... 5

        C.   Only the Union Can Address Impairment ................................................... 14

        D.   The City, as Employer and Prosecutor, Cannot Represent the Union or Its
        Members ....................................................................................................... 16

    POINT II  PERMISSIVE INTERVENTION OF THE ................................................ 18

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Brennan v. New York City Bd. of Educ.,*
    260 F.3d 123 (2d Cir. 2001).................................................................................. 5, 6, 7

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d. Cir. 2001)....................................................................................... 3

*EEOC v. AT&,*
    T, 506 F.2d 735 (3d Cir. 1974) ............................................................................... 14

*Farmland Dairies v. Comm. of New York State Dept. of Agriculture and Markets,*
    847 F.2d 1038 (2d Cir. 1998).................................................................................... 4

*Floyd v. City of New York,*
    302 F.R.D. 69 (S.D.N.Y. 2014) .............................................................................. 14

*H.L. Hayden Co. of New York v. Siemens Medical Sys., Inc.,*
    797 F.2d 85 (2d Cir. 1986)................................................................................ 18, 19

*In re Holocaust Victim Assets Litigation,*
    225 F.3d 191 (2d Cir. 2000)...................................................................................... 4

*L&M Bus Corp. v. Bd. of Educ. of the City Sch. Dist.,*
    2018 WL 1782709 (E.D.N.Y. 2018)......................................................................... 6

*Long Island Trucking, Inc. v. Brooks Pharmacy,*
    219 F.R.D. 53 (E.D.N.Y. 2003)................................................................................ 3

*Madison Stock Transfer, Inc. v. Netco Investments, Inc.,*
    2007 WL 2902960 (E.D.N.Y. September 27, 2007) ............................................... 16

*Northwest Forest Resource Council v. Glickman,*
    82 F.3d 825 (9th Cir. 1996) .................................................................................... 16

*Rios v. Enterprise Association Steamfitters Local Union 638,*
    520 F.2d 352 (2d Cir. 1974).................................................................................... 16

*Spangler v. Pasadena City Bd. of Educ.,*
    552 F.2d 1326 (9th Cir. 1977) ................................................................................ 19

*Trbovich v. United Mine Workers of America,*
    404 U.S. 528 ............................................................................................................ 16

{00682634-2}

*U.S. Postal Serv. v. Brennan,*
    579 F.2d 188 (2d Cir.) ................................................................................... 19

*U.S. v. City of Los Angeles,*
    288 F.3d 391 (9th Cir. 2002) ............................................................... *passim*

*U.S. v. Pitney Bowes,*
    25 F.3d 66 (2d Cir. 1994) ............................................................................... 4

*W.R. Grace & Co. v. Local 759,*
    461 U.S. 757 (1983) ........................................................................................ 5

**State Cases**

*City of New York v. New York State Nurses Assn.,*
    29 N.Y.3d 546 (2017) ................................................................................... 11

*City of New York v. Patrolmen's Benevolent Assn. of the City of,*
    New York, 14 N.Y.3d 46 ................................................................................. 8

*City of Watertown v. State of N.Y. Pub. Empl. Relations Bd.,*
    95 N.Y.2d 73 (2000) ..................................................................................... 10

**Statutes**

42 U.S.C. § 1983 ...................................................................................................... 1

Article I Sections 8 and 12 of the N. Y. Constitution ............................................... 1

N.Y. Civ. Rights Law § 28 ..................................................................................... 13

New York City Administrative Code, Title 12, Chapter 3 .................................. *passim*

**Rules**

FRCP Rule 24(a) ........................................................................................... 3, 18, 20

FRCP Rule 24(b) ....................................................................................... 18, 20, 21

**Other Authorities**

*Assistant Deputy Wardens/Deputy Wardens Association,* 7 OCB2d 26 (BCB 2014) ................. 10

*Correction Officers Benevolent Association,* 49 OCB 40 (BCB 1992) ........................................ 12

*District Council 37,* 4 OCB2d 19 (BCB 2011) ........................................................................... 10

{00682634-2}

*District Council 37*, 5 OCB2d 8 (BCB 2012)...................................................................10

*EMS Superior Officers Association*, 75 OCB 15, at 16 (BCB 2005) ...........................12

*EMS Superior Officers Association*, 79 OCB 7 (BCB 2007) ......................................12

*Local 333, United Marine Division*, 6 OCB2d 25 (BCB 2013) ...................................10

*Sergeants Benevolent Association*, 23 OCB 6 (BCB 1979) .......................................12

*Uniformed Firefighters Association*, 43 OCB 70 (BCB 1989) ....................................12

*Uniformed Firefighters Association*, 49 OCB 39 (BCB 1992) ....................................12

*Uniformed Firefighters Association*, 3 OCB2d 16 (BCB 2010) .............................11, 12

*Uniformed Firefighters Association*, 10 OCB2d 5 (BCB 2017).....................................10

{00682634-2}

## PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of Proposed Intervenor, the Detectives Endowment Association (hereinafter "DEA" or "Union"), in support of its Motion for Intervention in the above-captioned matter.

Plaintiff, the People of the State of New York by the New York State Attorney General, Letitia James (hereinafter "AG James") and her office, the Office of the Attorney General (hereinafter "OAG"), commenced this proceeding alleging violations of the First, Fourth, and Fourteenth Amendments of the U.S. Constitution; 42 U.S.C. § 1983; Article I Sections 8 and 12 of the N. Y. Constitution, and common law tort claims sounding in civil assault, civil battery, false arrest, and negligence (hereinafter "Complaint"). The factual backdrop for this extensive legal action is the demonstrations that occurred during the Summer of 2020 protesting alleged racially-biased and excessive policing efforts purportedly undertaken by police departments in the United States, as well as in the City of New York (hereinafter "Protests").

In the Complaint, Plaintiff delves into specific instances where protesters were allegedly subjected to unconstitutional and tortious behavior at the hands of employees of the New York City Police Department (hereinafter "NYPD"), some of whom may allegedly be members of the DEA. Plaintiff, in the instant matter, seeks an order from this Court: i) vacating the practices and policies of the NYPD that were exercised during the Protests, ii) declaring the actions of the NYPD, as well as its agents which may include DEA members, as unconstitutional, and iii) enjoining the NYPD, as well as its agents which may include DEA members, from further implementing the practices and policies complained of herein.

Proposed Intervenor, the DEA, seeks intervention in the above-captioned action because the Union has direct, substantial, and legally protectable interests in the instant matter. Further, the potential outcome of this litigation will impair these interests, and the existing parties, namely

the NYPD and the City of New York (hereinafter "City" or "Defendants"), cannot adequately protect the interests of the Union and/or its membership. Indeed, Defendants are incapable of protecting the DEA's statutory and contractual rights due to a conflict of interest created by the dichotomy of the NYPD serving as the primary adjudicator of discipline against DEA members, the NYPD's role as "master" over its employees and the inherent dynamic between employer and bargaining representative, which frequently places these two sides in an adversarial stance in collective negotiations.

As stated in the Declaration of Paul DiGiacomo, dated March 3, 2021 hereinafter "DiGiacomo Decl."), who is the President of the DEA, the Union is in the best position to ensure that the statutorily-created collective bargaining rights of the DEA, as well as the terms and conditions contained in its collective bargaining agreement, retain their respective integrity and that the results of the instant matter's resolution, either by the Court or by the parties hereto, do not unnecessarily adversely impact the health and safety of DEA members.

Finally, DEA brings with its members direct insight into the practical challenges of maintaining the requisite balance between peaceful protest and unlawful disorder, not from a distance, but from the streets, under the stress of action. It is all well and good to imagine, but we live it. We are not robots, not widgets. We are partners with our spouses, daughters and sons to our parents, parents to our children, of a part with our communities, but distinguished by our sworn duty to protect all people as we uphold the law. We can help in this action. We belong at this table.

Based upon the instant memorandum of law, as well as the DiGiacomo Affidavit and the exhibits annexed thereto, this Court should grant the DEA's Motion for Intervention.[1]

---

[1] The DEA is aware that similar motions are being made by the Patrolmen's Benevolent Association (hereinafter "PBA") and the Sergeants Benevolent Association (hereinafter "SBA") seeking intervention herein. To the extent

## STATEMENT OF FACTS

The facts relevant to this action are set forth in the DiGiacomo Affidavit, the Declaration of Stephen Mc Quade, dated March 3, 2021 (hereinafter "Mc Quade Declaration"), as well as the exhibits annexed thereto.

## ARGUMENT

### POINT I

### INTERVENTION AS OF RIGHT IS WARRANTED IN THE INSTANT ACTION

According to the Federal Rules of Civil Procedure (hereinafter "FRCP"): "On a timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FRCP Rule 24(a)(2).

In fleshing out FRCP Rule 24(a)(2), the Courts have held that intervention is proper if: i) the motion is timely; ii) the proposed intervenor has an interest in the existing litigation; iii) the proposed intervenor's interest would be impaired by the outcome of the litigation; and iv) the proposed intervenor's interest will not be adequately represented by the existing parties. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d. Cir. 2001); *see Long Island Trucking, Inc. v. Brooks Pharmacy*, 219 F.R.D. 53, 55 (E.D.N.Y. 2003) (stating that: "The test is flexible and courts generally look at all of the factors rather than focusing narrowly on any one of the criteria").

---

that the arguments presented by the PBA or SBA are consistent with the DEA's arguments, the Union joins in those arguments. However, for the purposes of consistency and ease of reference, the instant memorandum of law will only refer to the application being made by the DEA in connection with the above-captioned matter.

{00682634-2}

Furthermore, this standard has been applied liberally because intervention "serves both efficient resolutions of issues and broadened access to the courts." *U.S. v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (holding that by allowing parties with an interest in the outcome of a specific case to intervene, "we often prevent or simplify future litigation involving related issues; at the same time we allow an additional interested party to express its views before the court").

The DEA's motion to intervene meets each of these elements and, therefore, should be granted.

## A. Intervention is Timely

The timeliness of a motion to intervene is determined by analyzing:

> (1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstances militating in favor of or against intervention.

*In re Holocaust Victim Assets Litigation*, 225 F.3d 191, 198 (2d Cir. 2000). Additionally, in applying these factors, the Courts have "broad discretion in assessing the timeliness of a motion to intervene, which defies precise definition." *U.S. v. Pitney Bowes*, 25 F.3d 66, 70 (2d Cir. 1994); *see Farmland Dairies v. Comm. of New York State Dept. of Agriculture and Markets*, 847 F.2d 1038, 1044 (2d Cir. 1998) (holding that the timeliness of a motion to intervene "must be evaluated against the totality of the circumstances before the court").

In the instant matter, the DEA has undoubtedly satisfied this prong of the intervention as of right standard. The Complaint was filed with the Court on January 14, 2021, (*see* Dkt. 1), which is only 36 days prior to the DEA's submission of notice regarding its possible intention to file a motion to intervene, (*see* Dkt. 34), and just 48 days prior to the submission of the instant motion. Additionally, the Court directed this motion's timeline when incorporating a motion to intervene

4

briefing schedule in its Order, dated February 22, 2021. (*See* Dkt. 40). Given these temporal circumstances, neither Plaintiff nor Defendants may claim delay or prejudice in the DEA filing the instant application. In contrast, the prejudice that the DEA will suffer is immeasurable, as will be discussed below in greater detail since the rights and interests of the Union's members would be dramatically altered as a result of the outcome in the instant matter. Finally, intervention now, at this early stage, wisely maximizes the input the DEA can have in working to a constructive result in this difficult case.

**B.  The Union's Interests Are Direct, Substantial and Legally Protectable**

Motions for intervention are fact sensitive, and do not fit neatly into previous precedential compartments. The facts of this case, as discussed below, overwhelmingly favor DEA's intervention.

**1.  Contractual Interests**

The interests at issue that necessitate intervention must be "direct, substantial, and legally protectable" in order for the Court to permit intervention. *Brennan v. New York City Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001). With specific regard to the DEA's interests that could be adversely affected by the outcome of the instant litigation, the Courts in the past have held that impairment and/or interference with a union's statutory rights to collectively bargain or with a union's contractual rights is sufficient to meet this element of the four-part standard. *See W.R. Grace & Co. v. Local 759*, 461 U.S. 757, 760-761 (1983) (finding that diminishment of provisions contained in a union's collective bargaining agreement addressing strike layoffs, seniority rights, and the grievance arbitration procedure constituted a valid interest upon which intervention can be granted).

5

In *Brennan*, the federal government brought an action against the New York City Board of Education (hereinafter "DOE") alleging violations of, *inter alia*, Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII") for its pattern and practice of discriminatory hiring and recruitment in the civil service title of Custodian and Custodian Engineers. In a settlement agreement reached between these parties, the DOE agreed to confer upon the employees who had been discriminated against in violation of Title VII certain seniority rights. However, employees in those titles that had already achieved certain levels of seniority could then be possibly bumped from their respective spots. The proposed intervenors in that action highlighted that seniority rights are tied to job assignments and steps in the pay scale. In granting the motion to intervene, the Court determined that the reconfiguration of the seniority system in those job titles constituted a protectable interest. *See Brennan*, 260 F.3d at 129.

More recently, in an action between the DOE and private bus company, the union representing the DOE's bus drivers sought intervention because the Request for Bid sent out by the DOE did not require prospective bidders to adhere to certain employee protection provisions of the collective bargaining agreement by and between the DOE and the union. *See L&M Bus Corp. v. Bd. of Educ. of the City Sch. Dist.*, 2018 WL 1782709 (E.D.N.Y. 2018). In holding that the union established the requisite contractual interest, the Court expressly stated that the union, "as the majority union in this field, has a unique interest in protecting the rights of the employees who would be affected by this bidding process." *Id.*, 2018 WL 1782709 at *3. Further, the Court determined that lack of these employee protections established in the collective bargaining agreement "could affect [the union] members' financial and other job-related interests." *Id.*;[2] *see*

---

[2] It must be noted that the Court in *L&M Bus Corp.* denied the union's motion to intervene for failing to demonstrate that the existing parties could not adequately represent the union's interests because the bus companies and the employees "have the same ultimate objective," *Id.*, at *4. The adequacy of representation, which will be discussed below, is not true here.

6

*also U.S. v. City of Los Angeles*, 288 F.3d at 398 (finding in favor of intervention due to a union's state law rights "to negotiate the terms and conditions of its members' employment" and "to rely on the collective bargaining agreement that is a result of those negotiations").

Here, the DEA's interests in the instant matter, especially the outcome thereof, are summarized by its desire to protect, *inter alia*, the contractual rights of the Union's membership. The City and DEA are parties to a collective bargaining agreement covering the time period from April 1, 2012 to March 31, 2019, which is currently in *status quo* (hereinafter "CBA" or "Agreement").   (*See* Decl. Ex. 2).   Contained therein are a number of covenants that could be adversely affected by the outcome in this case, whether by this Court or by Plaintiffs and Defendants as part of a settlement agreement.   Article XIII § 4 of the CBA states that DEA members who are suspended for more than 30 days without pay may lose their respective health insurance coverage.   (*See id.*, p. 18).   Article XIV § 1(f) of the CBA provides that the City shall remit periodic payments to the Union's civil legal representation fund based upon the number of active duty Detectives.   (*See id.*, p. 20).

Another provision of the Agreement that is of particular import due to the underlying factual disputes at issue herein is Article XVI § 1 of the CBA, which states that the City shall provide "safety helmet and equipment" for each Detective that "shall conform to Police Department specifications." (*Id.*, p. 21).   The diminishment of these rights will have a "domino effect" that will outlast the instant matter and will disperse amongst all of the Union members. *Brennan*, 260 F.3d at 132.   Similarly, Article XVI § 5 of the CBA provides that the NYPD will disclose certain departmental information to the Union as part of its obligation to administer the Agreement.   (*See id.*, p. 22).

7

With respect to remuneration paid directly to Union members, Article XVI § 11 of the CBA allows for Union members, upon separation from service to receive a lump sum payment for their accrued terminal leave, which is a monetary benefit first codified in the Board of Estimates of the City of New York Resolution Calendar Number 579, dated June 27, 1957, provided he/she did not have disciplinary charges pending at the time of said separation. (*See* id., p. 24). Further, Article XVI § 16 of the CBA provides that DEA members may be entitled to performance compensation, which is based upon outstanding, exceptional actions taken in connection with their jobs. (*See* id., p. 25). With respect to the long-standing commitment to harmonious labor relations, Article XXI § 1 of the CBA defines what a "grievance" is for the purposes of the Agreement and is an integral aspect of all labor-management relations. (*Id.*, p. 28). Article XXVII § 1 of the CBA requires the City and DEA to "jointly maintain and support a labor-management committee." (*Id.*, p. 33).

All of the above-stated contractual provisions could be altered or diminished as a result of the outcome of the matter at bar. In the event that this Court requires the City to promulgate new policies and procedures involving the manner in which the NYPD respond to protests in the future, these new regulations could serve as new predicates for discipline. And although disciplinary actions undertaken by the Police Commissioner are not negotiable under § 434 of the New York City Charter, not all aspects of discipline are beyond the scope of collective bargaining. *See City of New York v. Patrolmen's Benevolent Assn. of the City of New York*, 14 N.Y.3d 46, 59 (stating that not "every step" the Police Commissioner's disciplinary authority is a prohibited subject of bargaining). As such, contractual provisions in the Agreement that could be affected by pending disciplinary charges against a DEA member, such as entitlement to lump sum payments of terminal leave and performance compensation, could be diminished by the outcome of the instant matter.

8

Additionally, the loss of health insurance for a suspension longer than 30 days could certainly occur if a DEA member is subjected to this disciplinary penalty resulting from some new directive issued by the NYPD as a result of this case. Further, the likelihood of increased civil litigation that results from the instant matter would drain the Union's civil legal representation fund, and as such, the Union, in the next round of negotiations would have to divert attention and resources from other needed improvements to the Agreement and to an increase in the periodic payments from the City for this fund. Similarly, the resolution of this case could impose upon the NYPD restrictions on the access to information it collects that then is contractually required to be disclosed to the DEA. Finally, the existence of Article XVI § 1 of the CBA converts the topic of equipment into a mandatory subject of bargaining, and this case may result in outfitting or depriving DEA members of equipment contrary to that contractual provision.

### 2. Statutory Interests

By examining the perspective of the New York City Collective Bargaining Law (New York City Administrative Code, Title 12, Chapter 3) (hereinafter "NYCCBL") and the caselaw interpreting the same by the New York City Board of Collective Bargaining (hereinafter "BCB" or "Board"), it is demonstrable that the resolution of the instant matter could not only infringe upon the contractual rights of the DEA members, as discussed above, but also upon their statutory rights, as well, compound the need for intervention at this time.

Under the NYCCBL, the scope of issues subject to collective bargaining is established, *inter alia*, in NYCCBL § 12-307(a), which provides, in pertinent part:

> a. Subject to the provisions of subdivision b of this section and subdivision c of section 12-304 of this chapter, public employers and certified or designated employee organizations shall have the duty to bargain in good faith on wages . . ., hours . . ., [and] working conditions.

9

In addition to these specific categories, the BCB has also held that policies and procedures that are promulgated by the employer that are appurtenant to and/or have an effect upon wages, hours, and working conditions shall be deemed mandatory subjects of bargaining. *See Dist. Council 37*, 5 OCB2d 8, at 13 (BCB 2012). Moreover, "the New York State Court of Appeals has recognized the strong and sweeping public policy in favor of collective bargaining and the presumption that all terms and conditions of employment are subject to mandatory bargaining." *Dist. Council 37*, 5 OCB2d 8, at 13 (*citing City of Watertown v. State of N.Y. Pub. Empl. Relations Bd.*, 95 N.Y.2d 73, 79 (2000)).

When disputes arise regarding whether a subject is mandatory, permissive, or prohibited, § 12-309(a)(2) of the NYCCBL grants the Board the authority "to make a final determination." In the event that the Board determines that a matter is within the purview of mandatory subjects of bargaining, then a public sector employer's subsequent failure to negotiate regarding the same constitutes an improper practice under NYCCBL § 12-306(a)(4). *See Unif. Firefighters Assn.*, 10 OCB2d 5, at 13 (BCB 2017) (*citing Asst. Deputy Wardens/Deputy Wardens Assn.*, 7 OCB2d 26, at 18, (BCB 2014) (holding that "a unilateral change to a mandatory subject of bargaining is an improper practice because it constitutes a refusal to bargain in good faith"). Generally, procedures that affect terms and conditions of employment are mandatorily negotiable. *See Dist. Council 37*, 4 OCB2d 19, at 22 (BCB 2011). Specifically, the addition of a new requirement into an existing process constitutes a procedural change that must be negotiated. *See Local 333, Utd. Marine Div.*, 6 OCB2d 25, at 18 (BCB 2013).

As the certified bargaining representative for all Detectives, the DEA is charged with ensuring that its members are freely allowed to execute their rights pursuant to NYCCBL § 12-305. And when actions are undertaken that restrict, modify, or constrain those rights, the DEA is

10

obligated, pursuant to NYCCBL § 12-306(b)(3), to represent its members.  As such, the Union is obliged to file the instant application because the outcome herein could have an adverse effect on the DEA and its membership.  Resolution in the instant matter will likely impose new processes and procedures upon DEA members, which are subject to negotiations, as dictated by the NYCCBL and the Board's precedents.

In addition to the bargaining obligation that arises when procedural aspects of management decisions are implemented, Article XVI § 5 of the CBA requires the NYPD, as well as the City and OLR, to disclose information and documents to the Union.  The possible outcome of the instant matter is the collection of data from members of the NYPD, but this Court could restrict the manner in which such information is disseminated to the Union.  Such an imposition would violate the NYCCBL's mandate upon employers to disclose relevant information to its unions, as codified in NYCCBL § 12-306(c)(4).  *See City of New York v. New York State Nurses Assn.*, 29 N.Y.3d 546, 554 (2017) (holding information exchange is mandated under NYCCBL § 12-306(c)(4), and failure to do so, violates § 12-306(a)(4) of the NYCCBL).

Furthermore, NYCCBL § 12-307(b) also establishes a claim under the NYCCBL for violations of, *inter alia,* the practical impact on safety.  The BCB has held that: "[Q]uestions concerning the practical impact that decisions on the above matters have on terms and conditions of employment, including, but not limited to, questions of workload, staffing and employee safety, are within the scope of collective bargaining." NYCCBL § 12-307(b).  Coalescing the prohibitions contained in NYCCBL § 12-306(a)(4) along with the mandates contained in the latter portion of NYCCBL § 12-307(b), it is obvious that a public employer may run afoul of its duty to bargain in good faith if the public employer fails to negotiate in good faith concerning a topic that has a practical impact on safety.  *See, e.g., Unif. Firefighters Assn.*, 3 OCB2d 16, at 35-36 (finding that

11

the non-mandatory subject of bargaining dealing with the assignment of Firefighters to asbestos abatement activities at the scene of a steam pipe explosion had a practical impact of the safety of Firefighters, and therefore required bargaining); *Correction Officers Benevolent Assn.*, 49 OCB 40, at 18 (BCB 1992); *Unif. Firefighters Assn.*, 49 OCB 39, at 43 (BCB 1992) (finding that the non-mandatory subject of bargaining addressing the assignment of light duty firefighters, who were inadequately trained, created a practical impact on safety, and therefore mandated bargaining).

In establishing such a violation, a union "must substantiate with sufficiently specific details . . . the existence of a threat to safety." *EMS Superior Officers Assn.*, 75 OCB 15, at 16 (BCB 2005). However, this demonstration does not require a showing of an actual injury because "potential impact arising from exposure to a dangerous condition can be a basis for finding a practical impact on safety." *Unif. Firefighters Assn.*, 3 OCB2d 16, at 30; *see also Sergeants Benevolent Assn.*, 23 OCB 6, at 25 (BCB 1979) (stating that "[while it would be difficult to foresee every factor relating to safety, it seems proper to require that the parties discuss potentially unsafe conditions"); *EMS Superior Officers Assn.*, 79 OCB 7, at 31 (BCB 2007) (holding that "the Board does not require a union to show that injuries have actually resulted from management's action in order to demonstrate a practical impact on safety"). Further, "managerial action (or inaction) may be challenged . . . on the ground that it allegedly has had a practical impact on affected employees' safety." *Unif. Firefighters Assn.*, 43 OCB 70, at 3 (BCB 1989).

The outcome of the instant litigation could result in changes to policing practices, as requested by Plaintiff, and those alterations could have a practical impact on the safety of the DEA's membership. As detailed in the DiGiacomo Affidavit, the actions and directions of the NYPD frequently placed DEA members in harm's way, and resolution of the instant matter could

12

mandate what directives are given to DEA members in the field, which undoubtedly will have a practical impact on the safety of its membership. Moreover, the BCB caselaw specifically states that speculative threats to safety can be grounds for finding a violation of § 12-306(a)(4) of the NYCCBL.

In addition, the interests of the Union would be impinged upon because the City will not shield the members of the DEA from potential civil litigation, under the common law concept of agency. As recently as this past Summer, this State passed a law that allows a person a private right of action against a DEA member, if he/she fails to provide medical or psychological aid to an individual in his/her custody. *See* N.Y. Civ. Rights Law § 28. Also, this legislation expressly provides that qualified immunity, as a governmental actor effectuating his/her official duties, is not a defense to said action.

Furthermore, there is pending legislation on the federal and local level that would decimate the argument of agency protecting DEA members from individual civil liability. Int. 2220-2021 before the City Council would allow the public to bring a civil action against a DEA member who is found to have deprived an individual of his/her right constitutional right against unreasonable searches and seizures. Additionally, this new cause of action would require DEA members to retain their own counsel because he/she could not entrust the City or NYPD to effectively represent their interests either during the course of trial or settlement negotiations. Further, the Union, with more than five thousand members, and its civil legal representation fund, is incapable of supporting the tsunami of litigation that will arise in the near future. Therefore, protection by the City is not applicable when the government openly encourages the public to sue dedicated uniformed members of service.

{00682634-2}

Based upon the foregoing, this Court should grant the Motion for Intervention submitted by the DEA.[3]

### C. Only the Union Can Address Impairment

In ascertaining whether a protectable interest will be impaired by the pending litigation for the purposes to deciding a motion to intervene, the protection and enforcement of contractual and statutory rights satisfies the third element of the four-part standard. *See EEOC v. AT&T*, 506 F.2d 735, 741-742 (3d Cir. 1974) (finding that a consent decree that impairs "existing employment practices many of which are embodied in the collective bargaining agreements" meets this prong of the intervention standard because the union has the obligation "to protect and enforce those contract provisions [that] will be impaired or impeded by the consent decree"). Further, when the resolution of pending litigation empowers the court or its agent to unilaterally override collective bargaining rights, then the impairment element has been met. *See U.S. v. City of Los Angeles*, 288 F.3d at 401 (permitting intervention of a union's challenge to a consent decree because said decree, "by its terms purports to give the district court the power, on the City's request, to override the Police League's bargaining rights under California law and require the City to implement disputed provisions of the consent decree").

As demonstrated in Subsection B above, the DEA has demonstrated that the contractual and statutory interests set forth above could be impaired depending on the resolution of the instant matter. The terms of the CBA that could be diminished by the outcome herein alter the rights that

---

[3] The case at bar is distinguishable from *Floyd v. City of New York*, 302 F.R.D. 69 (S.D.N.Y. 2014) (*aff'd.* 770 F.3d 1051 (2d Cir. 2014) because the Court therein was not presented with the full panoply of interests at stake that could restrict the statutory and contractual rights of the DEA's membership. In addition, this case comes with it unprecedented individual member exposure to liability and discipline, as well as inherent conflicts with the City. This Court contemplated that a motion to intervene in broadly similar litigation may result in a different outcome when it stated: "Motions to intervene are highly fact-specific and tend to resist comparison to prior cases." *Floyd*, 302 F.R.D. at 83. As such, based upon the discussion herein, comparison between the instant application and the previous motion to intervene in *Floyd* is inapt.

have been collectively negotiated and impinge upon the bargaining rights of the Union. As such, it is the statutory duty of the DEA to ensure that the integrity of the Agreement, as well as the Union members' rights under NYCCBL § 12-305, are not modified and/or invalidated. Moreover, the Union is the only entity that can protect the CBA and the rights of the Union's membership from impairment.

*Nunez v. City of New York*, Docket No.: 11-CV-5845 (LTS) (JCF) (hereinafter "*Nunez*"), starkly illustrates how a union's contractual and statutory rights are impaired as a result of litigation to which it was not a party. In *Nunez*, a group of inmates filed a civil rights action against the City, as well as the New York City Department of Correction (hereinafter "DOC"). In litigation that spanned five years and which is still subject to the Court's overview as well as a federal monitor, a Consent Judgment was entered which contained an extensive reworking of the use of force policy utilized by the DOC. As set forth in its 65 pages, that Court permanently altered the manner which DOC employees handle uses of force incidents, addressing training, staffing, and recordation. Further, it outlined acceptable and unacceptable use of force tactics, set forth disciplinary penalties for those DOC employees who are found to have violated the DOC's new, *Nunez*-compliant use of force policy, and created new predicates for discipline. *Nunez* also micromanaged the duties of a DOC employee when confronted with a possible or actual use of force incident, so much so that these individuals are told who they should alert to an incident, when to intervene in an incident, and how to do so.

All of the above-described aspects of the Consent Judgment have hampered the respective abilities of DOC employees to confront violent threats from dangerous individuals, and have eviscerated several aspects of the unions' respective collective bargaining agreements. Worse, the unions are locked in a destructive "Catch 22", not having intervened and having no input at the

Court level, the unions are confronted by the City's position that its hands are tied at the bargaining table due to the Consent Judgment.  As such, the three unions representing uniformed DOC employees who are most greatly affected by the Consent Judgment in *Nunez*, the Correction Officers Benevolent Association, the Correction Captains Association, and the Assistant Deputy Wardens/Deputy Wardens Association, filed administrative actions against the DOC for its implementation of the new, *Nunez*-compliant use of force policy, and these administrative actions are still pending. (*See* Mc Quade Decl. ¶¶ 7-14).  Thus, because the relevant unions were not party to the action, *Nunez* signaled only round one in protracted litigation on multiple fronts, rather than a comprehensive, reasoned solution to complex problems.  Inclusion of DEA in the instant action at this stage offers the best opportunity to avoid a *Nunez* quagmire and achieve a just result for all.

### D. The City, as Employer and Prosecutor, Cannot Represent the Union or Its Members

"The determination as to adequacy of representation lies within the discretion of the court." *Madison Stock Transfer, Inc. v. Netco Investments, Inc.*, 2007 WL 2902960, *1 (E.D.N.Y. September 27, 2007); *see Rios v. Enterprise Association Steamfitters Local Union 638*, 520 F.2d 352, 355 (2d Cir. 1974) (holding that a determination of "the adequacy of existing representation necessarily involves an assessment of factors which are within the discretion of the district court"). These factors include whether the interest of an existing party is such that it will make the same arguments of the proposed intervenor; whether and existing party is capable and willing to make such arguments; and whether the proposed intervenor would offer any necessary elements to the litigation that other parties would neglect. *See Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996).  The demonstration of inadequate representation is one that lies with the proposed intervenor, but is a minimal burden that merely requires the showing that representation "may be" inadequate. *See City of Los Angeles*, 288 F.3d at 398; *see Trbovich v.*

16

*United Mine Workers of America*, 404 U.S. 528, 538 n. 10 (1972) ("The requirement of the Rule is satisfied if the applicant show that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal").

Here, the reasons why the existing parties cannot adequately represent the interests of the DEA are legion. Plaintiff herein seeks to demonize the actions that the Union's members took during a tumultuous time and during emotionally-heated protests that often were expressly directed against the uniformed members of the NYPD. Defendants herein cannot adequately represent the above-described interests of the Union because they, in other situations, take positions that are anathema to those interests. Regarding the contractual provisions delineated above, the City, through the New York City Office of Labor Relations (hereinafter "OLR"), seeks to claw back the benefits the DEA has attained through collective bargaining. OLR often takes the bargaining position that concessions are required in order for the hard working members of the DEA to achieve modest economic and operational gains at the negotiation table. (DiGiacomo Decl. ¶¶ 72-74). Therefore, the DEA certainly cannot rely on the City to protect and enforce the integrity of the CBA and the benefits therein, given that its agency, OLR, is dedicated to diminishing those benefits.

Further, the interests of the DEA cannot be adequately represented by Defendants because there is an inherent conflict of interests between the NYPD and DEA. As briefly discussed above, the Police Commissioner is the final adjudicator of discipline against DEA members. As such, he cannot be expected to advance arguments in the instant matter that would protect DEA members who could face discipline as a result of the outcome herein. Similarly, the members of the DEA may face external investigations that are conducted by the New York City Civilian Complaint Review Board (hereinafter "CCRB"), which is a statutorily-created extension of the City, whose

17

sole purpose is to investigate complaints made by members of the public, draft reports and conduct hearings related thereto, and to provide the Police Commissioner with disciplinary recommendations. Once again, the City, through the collaboration between the NYPD and CCRB, serves in the role of "prosecution" while members of the DEA stand as the "accused." Significantly, dozens of DEA members have already been questioned/investigated concerning the events that gave rise to the above-captioned matter. As such, the City is/will be an adverse party to the DEA and its members in these scenarios; and therefore the City and its respective interests certainly would not be aligned with the interests of the Union or its membership. The City will not make the same arguments or offer elements in this litigation which the DEA can and will.

Because the Union has met all of the relevant criteria under FRCP Rule 24(a)(2), this Court should grant the Motion for Intervention submitted by the DEA.

## POINT II

### PERMISSIVE INTERVENTION OF THE DEA IS ALSO APPROPRIATE IN THE INSTANT MATTER

In addition to the above "as-of-right" manner in which a party may enter a pending litigation as an intervenor, the FRCP also provides: "On timely motion, the court may permit anyone to intervene who: . . . has a claim or defense that shares with the main action a common question of law or fact." FRCP Rule 24(b)(1)(B). Further: "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FRCP Rule 24(b)(3).

The Courts have indicated that the satisfaction of this rule is not a high burden to meet, and that the prospective intervenor need only establish that he/she/it has a sufficient stake in the outcome of the litigation to satisfy the ordinary requirements for standing. *See H.L. Hayden Co. of New York v. Siemens Medical Sys., Inc.*, 797 F2d 85, 89 (2d Cir. 1986) (holding that district

courts have very broad discretion is granting permissive intervention).   Moreover, when determining the issue of permissive intervention, the main consideration for the Court is whether intervention will unduly delay or prejudice the adjudication of the original action.  *See U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir.)  The Courts will also look to other relevant factors, such as:

> [T]he nature and extent of the intervenors' interest, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*H.L. Hayden Co. of New York*, 797 F.2d at 89 (*quoting Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (internal quotation marks omitted)).

In the instant matter, the DEA should be permitted entry for the multitude of reasons set forth above.  The DEA is the legal, authorized representative of its members whose contractual and statutory rights more than "established" a stake in the outcome of this case.  No delay or prejudice exists in the Unions' early intervention as teed-up by the Court. The interests of the Union and its members are substantial and in imminent danger of impairment.  And no party can reasonably be seen as representing the interests of the Union's members who would be nothing but pawns in the existing parties' contest.   These factors alone would warrant permissive intervention.  But there is more.

Concerning the concept of permissive intervention, the DEA will certainly contribute significantly to the full development of the underlying factual issue and just and equitable adjudication of the instant matter.  The Union's members can provide context and insight into the events raised in the Complaint, as well as the day-to-day implementation of the policies and procedures of the NYPD which Plaintiff wants to change.  Further, permissive intervention is

appropriate herein because the Union's Motion for Intervention satisfies the underlying principles of intervention, which is serving "efficient resolutions of issues and broadened access to the courts." *U.S. v. City of Los Angeles*, 288 F.3d at 398.

As detailed in the submissions of the DEA herein, the granting of the instant application can only benefit this Court in its analysis of the claims raised by Plaintiff and the defenses presented by Defendants.  Furthermore, this Court will undoubtedly benefit from the insight obtained from the Detectives who may have been present during the incidents that gave rise to the above-captioned matter or similar events of crowd control.  The Union and its members will be able to expand upon the compromised safety issues that were suffered by all who were present during these protests, give insight to the manner in which all acted during these incidents, and the directives given by the NYPD related thereto.  Therefore, in order for this Court to equitably adjudicate the above-captioned matter, the DEA should be granted the right to participate herein, so that the Court may provide an appropriate resolution.

Based upon the foregoing reasons, the DEA should be allowed to participate in the above-captioned matter on the ground of permissive intervention because the Union has satisfied the statutory criterion set forth in FRCP Rule 24(b) and the judicial precedent in the above-cited case law.

## CONCLUSION

WHEREFORE, the DEA respectfully requests that the Motion for Intervention, dated March 3, 2021, be granted finding that intervention of the Union as of right is appropriate under FRCP Rule 24(a)(2), or in the alternative, finding that permissive intervention of the Union is

20

appropriate under FRCP Rule 24(b), as well as such other and further relief as this Court finds just and proper.

Dated: New York, New York
    March 3, 2021

                                    PITTA LLP

                                    By: _____
                                        Stephen Mc Quade, Esq.
                                        Vincent F. Pitta, Esq.
                                        Attorneys for Proposed Intervenor
                                        *Detectives Endowment Association*
                                        120 Broadway, 28th Floor
                                        New York, New York 10271
                                        (212) 652-3885
                                        smcquade@pittalaw.com
                                        vpitta@pittalaw.com

TO:   Gregory Morril, Esq.
      Lillian Marie Martinez, Esq.
      Morenike Fajana, Esq.
      Philip Levitz, Esq.
      Travis W. England, Esq.
      Jessica Clarke, Esq.
      New York State Office of the Attorney General
      28 Liberty Street, 14th Floor
      New York, New York 10005
      *Attorneys for Plaintiff*

      Brachah Goykadosh, Esq.
      Dara L. Weiss, Esq.
      New York City Law Department
      100 Church Street
      New York, New York 10007
      *Attorneys for Defendants*

21