UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
 -------------------------------------------------- X

People of the State of New York, et. al.,          Case No. 21-cv-322 (CM)(GWG)

                        Plaintiff,                 **Motion for reconsideration to**
                                                   **intervene**

            -against-

The City of New York, et al.,

                        Defendant.
 -------------------------------------------------- X

**PLEASE TAKE NOTICE** that pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 60,

**a)** _Whalen v. County of Fulton_, 126 F.3d 400 (2d Cir. 1997), **b)** _Roman Catholic Diocese of_

_Brooklyn v. Cuomo_, 592 S. Ct. (U.S. 2020), **c)** _Calvary Chapel Dayton Valley v. Sisolak_, 140 S.

Ct. 2603 (U.S. 2020), **d)** _In re Kaiser_, 722 F.2d 1574 (2d Cir. 1983), **e)** _In re Fitch, Inc._, 330 F.3d

104 (2d Cir. 2003), and other applicable law, I, Towaki Komatsu, am submitting this motion to

be granted the following immediate relief in this case:

1.  An order that grants me reconsideration of the order that U.S. District "Judge"

    Colleen McMahon issued on 4/28/21 in this case in which she denied me the

    opportunity to intervene in this case or otherwise appear as an interested party as she

    impermissibly relied on **a)** baseless and erroneous assumptions and irrelevant points

    instead of **b)** strictly pertinent matters of fact and law to reach that determination.

2.  An order that immediately authorizes me to intervene in this case or otherwise appear

    as an interested party.

3.  An order that explicitly states that the only matters that will be dealt with and

    otherwise considered by this Court in this consolidated case will be those that

occurred during the demonstrations that occurred during the Summer of 2020 in New York City that were specifically part of demonstrations and protests that took place then against the NYPD, other law-enforcement entities, and other government entities and personnel about matters that were closely-related to that as this means that this Court will not deal with matters that took place outside of that specific time period and/or were about other matters to apply comparable narrow-mindedness that this Court has applied to my application to intervene in this case to its parties, their counsel, and other intervenors and interested parties in this case in accordance with my First Amendment and Fourteenth Amendment rights.

This motion to intervene is supported by the following:

1. The attached memorandum of law dated May 4, 2021.

2. My 3/31/21 submission in this case.

3. My 2/4/21 motion to intervene that I submitted in this case.

4. The letters motions dated 1/29/21 and 1/30/21 that I submitted via e-mail for acceptance and diligent review in this case by "Judge" McMahon to the Pro Se Intake Unit on 1/29/21 at 9:47 am and 1/30/21 at 6:37 pm in accordance with applicable rules for such e-mail submissions by pro se litigants.

From,                                                                                   **Date**: May 4, 2021

Towaki Komatsu

s_/Towaki Komatsu

802 Fairmount Pl., Apt. 4B
Bronx, NY  10460

Tel: 347-316-6180
E-mail: Towaki_Komatsu@yahoo.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
 ------------------------------------------------------ X

People of the State of New York, et. al.,                    Case No. 21-cv-322 (CM)(GWG)

              Plaintiff,

       -against-

The City of New York, et al.,,

           Defendant.
------------------------------------------------------ X

## **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION TO INTERVENE**

Date: May 4, 2021

                            Towaki Komatsu

                            802 Fairmount Pl., Apt. 4B
                            Bronx, NY 10460
                            Tel: 347-316-6180
                            E-mail: Towaki_Komatsu@yahoo.com

## Preliminary Remarks

I, Towaki Komatsu, submit this memorandum of law pursuant to the First Amendment and Fourteenth Amendment in relation to Federal Rules of Civil Procedure ("FRC") Rule 24, 10(c), 15(d), and 60 in support of being granted reconsideration for the motion to intervene that I submitted in this case on 2/4/21. Pursuant to FRCP Rule 10(c), I incorporate the following by reference in their entirety as though fully set forth herein:

a.  The legal filing that I submitted on 3/31/21 in this case.

b.  The legal filing that I filed on 3/26/21 that corresponds to docket number 529 in the ongoing case of _Komatsu v. City of New York_, No. 18-cv-3698 (LGS)(GWG)(S.D.N.Y.) that is hereinafter referred to as "K1". I'm the plaintiff in K1.

## Background Facts

1.  _Komatsu v. City of New York_, No. 20-cv-10942 (VEC)(RWL) (S.D.N.Y.) that is hereinafter referred to as "K2" is ongoing litigation that I commenced against the NYPD that you lied about in your 1/8/21 order (Dkt. 3) in that case as you illegally then violated my First Amendment right of access to the courts and my Fourteenth Amendment rights in that regard as well while doing so in concert with U.S. District Judge Edgardo Ramos. On 4/23/21, Judge Caproni issued an order (Dkt. 27) in which she fraudulently expressed baseless remarks and half-truths as she did so about material matters of fact and law as she also omitted matters of fact and law while unlawfully continuing to subject me to a denial of access to the courts in flagrant violation of my First Amendment and Fourteenth Amendment rights. While doing so, she has unlawfully decided to prevent me from pursuing entirely valid legal claims that are central and addition to my claims in that case. That prompted me

prepare a very detailed letter response that I submitted in that case yesterday as I continued to

point out that she really needs to recuse herself from that case after she was previously

assigned to _USA v. Komatsu_, No. 18-cr-651(ST)(E.D.N.Y. Oct. 21, 2019) before I legally

whipped federal court security officers ("CSOs"), the U.S. Marshals Service ("USMS"), and

the U.S. Attorney's Office for the Southern District of New York mostly single-handedly by

extensive research that legally exerted sufficient pressure on Assistant U.S. Attorney Sarah

Mortazavi to cause her to beg U.S. Magistrate Judge Steven Tiscione to dismiss that entirely

frivolous, fraudulent, retaliatory, and naked abuse of process and malicious prosecution right

before I was about to testify in that case against CSOs, the USMS, you and other federal

judges. That case always was a total sham in furtherance of an illegal vendetta by CSOs and

members of the USMS that you and other patently vile federal judges unconscionably and

inexcusably condoned before and after federal court security officer ("CSO") Ralph Morales

criminally assaulted me on 8/8/18 on the first floor of the Daniel Patrick Moynihan ("DPM")

federal courthouse near its court clerk's office.

2. _Komatsu v. City of New York_, No. 20-cv-7046 (ER)(GWG) (S.D.N.Y.) that is hereinafter

   referred to as "K3" is ongoing litigation that I commenced against the NYPD and others in

   which Judge Ramos has repeatedly engaged in flagrant acts of judicial misconduct against

   me partly by having issued an order on 1/5/21 (Dkt. 62) in which he illegally caused my

   complaint in K2 to be struck while K2 was then not assigned to any judge that meant that he

   neither had jurisdiction to do so nor immunity for having done so. Judge Caproni blatantly

   lied about this point in her 4/23/21 order in K2.

3. In January of 2017, I commenced _Komatsu v. New York Human Resources Administration_,

   No. 100054/2017 (Sup. Ct., New York Cty.) that is hereinafter referred to as "my HRA

lawsuit" as a complex hybrid proceeding that was comprised of article 78 claims and other claims. The thanks that I got by April of 2017 and thereafter for engaging in protected First Amendment activity by commencing that case and engaging in equally protected whistleblowing about its subject matter partly by testifying in public hearings about that partly from the New York City Human Resources Administration ("HRA") included the following:

a.  An abuse of process as pretextual First Amendment retaliation, viewpoint discrimination.

b.  Criminal obstruction of justice and witness tampering partly by the theft of my 4/12/17 oral arguments hearing in my HRA lawsuit by HRA. That occurred as a result of an illegal ex-parte adjournment request that a sleazy attorney for HRA named Jeffrey Mosczyc faxed to the chambers of New York State Supreme Court Judge Nancy Bannon on 4/5/17 before she illegally granted that adjournment application on 4/11/17 in violation of my constitutional rights to oppose that application and be fully heard about that opposition beforehand. That adjournment application was submitted to illegally prevent me from testifying as scheduled on 4/12/17 in my HRA lawsuit about parallel litigation that I participated in against HRA on 4/11/17 that was legally recorded on audio partly by me. Judge Bannon's adjournment of my 4/12/17 oral arguments hearing caused that hearing to be adjourned until 6/7/17. Hindsight sufficiently confirms that HRA's senior management that partly includes HRA Commissioner Steven Banks ("Mr. Banks") retaliated against me by 4/11/17 for my litigation against HRA and my whistleblowing against him, HRA, and HRA's business partners. I regrettably have to

wait for **a)** the U.S. Court of Appeals for the Second Circuit ("Second Circuit") to

vacate Judge Gorenstein's 1/15/21 confidentiality order in K1 insofar as that

contumaciously prohibits me from publicly discussing information in detail about

discovery material that I received on 2/1/21 from the New York City Law

Department that confirms that Mr. Banks and many other City of New York and State

of New York personnel should be in prison right now with Bill de Blasio ("the

Mayor") and the City of New York's administration fired in accordance with New

York State Public Officers Law §§30(1)(f) and (g) that authorize courts of equity to

effectively fire them for incompetence and/or voter fraud in response to voter fraud

by them and others on their behalf in 2017 or **b)** the New York State Appellate

Division's First Department to grant me similar equitable relief during or after my

upcoming 5/10/21 oral argument hearing for my appeal about my HRA lawsuit to

elaborate about this further.

   c.   Illegal concealment of evidence, voter suppression, voter fraud, and whistleblower

retaliation.

4.   The illegal acts by HRA's personnel and other City of New York and State of New York

personnel against me directly and others indirectly constitute far worse and more flagrant and

more pervasive crimes than what recently caused Chaim Deutsch to belatedly be fired from

the New York City Council ("City Council") as a New York City Councilman. That occurred

long after I repeatedly testified to and otherwise talked with that crook, empty seat, fake

leader, and suck-up for the NYPD during public hearings and at other times.

5.   By 5/19/17, my HRA lawsuit evolved into a case in which I was pursuing additional claims

against members of the NYPD for flagrantly violating my constitutional rights on 4/27/17 at

the site of the public town hall meeting that the Mayor conducted as I lawfully engaged in

protest activity against members of the Mayor's NYPD security detail that included NYPD

Inspector Howard Redmond. As I previously informed you, Mr. Redmond is the head of the

Mayor's NYPD security detail and was the primary defendant in the case of *Dietrich v. City*

*of New York*, No. 18-cv-7544(CM)(S.D.N.Y.) to which you were assigned before you

dismissed it in Mr. Redmond's favor when you should have instead ruled in Mr. Dietrich's

favor. The protest activity that I engaged in on 4/27/17 at the site of the public town hall

meeting that the Mayor conducted in Queens was primarily about the fact that Mr. Redmond

and others illegally and pretextually caused me to barred from attending that public forum

after I registered in advance with the New York City Mayor's Office to do so and while I

conducted myself in a lawful manner throughout the entire time that I was at the site of that

town hall meeting on 4/27/17. The following controlling findings from *Minnesota State Bd.*

*for Community Colleges v. Knight*, 465 U.S. 271, 104 S. Ct. 1058, 79 L. Ed. 2d 299 (1984)

confirm that I had a First Amendment and Fourteenth Amendment right to have attended that

town hall meeting:

> "The First Amendment was violated when the meetings were suddenly closed to one
> segment of the public even though they otherwise remained open for participation by the
> public at large."

6. Mr. Redmond and others subjected me to illegal segregation and discrimination on 4/27/17 in

regards to my efforts to lawfully attend that town hall meeting. I was acutely aware that their

illegal acts against me then were in flagrant violation of my First Amendment and Fourteenth

Amendment rights as I promptly and clearly told them so. The following findings from the

U.S. Supreme Court's controlling decision in *Grayned v. City of Rockford*, 408 U.S. 104, 92

S. Ct. 2294, 33 L. Ed. 2d 222 (1972) corresponds to the objections that I clearly and lawfully

expressed to Mr. Redmond and other City of New York personnel on 4/27/17 at the site of

that town hall meeting about that illegal segregation and discrimination against me in regards

to my efforts to lawfully attend that town hall meeting:

> "We held in *Cox v. Louisiana*, 379 U. S. 536, 544-545, that a State could not infringe the right of free speech and free assembly by convicting demonstrators under a "disturbing the peace" ordinance where **all that the students in that case did was to protest segregation and discrimination** against blacks by peaceably assembling and marching to the courthouse where they sang, prayed, and listened to a speech, but where there was no violence, no rioting, no boisterous conduct."

> (boldface formatting added for emphasis)

7. Additional claims that I was pursuing on 5/19/17 in my HRA lawsuit concerned the fact that

NYPD Officer Rafael Beato criminally assaulted me on 4/27/17 as I sought to apprise the

Mayor on that date from a sufficient distance away as I lawfully stood on a nearly empty

public sidewalk as the Mayor left that town hall meeting that I was illegally prevented from

attending it partly by Mr. Redmond after I previously talked with the Mayor on 3/15/17

during the town hall meeting that he conducted. During that earlier town hall meeting, I

engaged in whistleblowing partly against Mr. Banks, judges, and other business partners of

HRA. On 4/27/17, Mr. Beato criminally assaulted me on the public sidewalk on which I

stood that runs alongside the school that hosted the Mayor's 4/27/17 town hall meeting by

shoving me 3 times in my chest. In hindsight, I should have responded to that assault by

engaging in legal self-defense that would likely have caused matters to quickly escalate to

give me legal grounds to have killed Mr. Beato in self-defense. I regret that I didn't exercise

legal self-defense then. I really should have because hindsight confirms that I can't rely on

judges, prosecutors, the NYPD, lawyers, politicians, the press, and others for redress. In the

event that a similar situation again arises, I won't hesitate to engage in legal and decisive

self-defense.

8. Less than 4 days before I was illegally prevented from attending the Mayor's 4/27/17 town

hall meeting, I met with and otherwise had communications with Muhammad Umair Khan

and Jennifer Levy. They currently hold senior jobs with the New York State Attorney

General's Office. When I dealt with them in April of 2017, they held senior jobs as members

of the useless New York City Public Advocate's office while Letitia James was then the

useless New York City Public Advocate who engaged in grandstanding a lot as a publicity

junkie. Ms. Levy's LinkedIn profile on the Internet is available at

https://www.linkedin.com/in/jennifer-levy-647b711a/ and reflects her career and educational

background. Mr. Khan's LinkedIn profile on the Internet is available at

https://www.linkedin.com/in/umair-khan-42a41a/ and also reflects his career and educational

background. What follows shows an e-mail message that I have partly redacted due to

confidential information that it contains and that I received from Ms. Levy on 4/25/17 in

which she referred to matters about litigation that I was then involved in against HRA that I

discussed with Mr. Khan on 4/24/17:

> **From:** Jennifer Levy <jlevy@pubadvocate.nyc.gov>
> **Subject:** Fair hearing at 2:30 today
> **Date:** April 25, 2017 at 8:50:46 AM EDT
> **To:** towaki_komatsu@yahoo.com
> **Cc:** Muhammad Umair Khan <khan@pubadvocate.nyc.gov>
>
> Good morning Mr. Komatsu,
>
> I reviewed the papers that Mr. Khan sent me. It appears you have two pending Fair
> Hearings - one that was adjourned on 4/11/2016 and one that is scheduled for today.

--
**Jennifer Levy**
General Counsel - Litigation
Office of NYC Public Advocate Letitia James
1 Centre Street, 15th Floor North, New York, NY | 10007
Office: (212) 669-2175
Email: JLevy@pubadvocate.nyc.gov
http://www.pubadvocate.nyc.gov/
@NYCPA | @JenniferLevy17

9. Neither Ms. Levy nor Ms. Khan were of any assistance to me when I dealt with them in April of 2017. I recall that when I told Ms. Levy during a telephone call that I had with her on 4/24/17 or 4/25/17 about the fact that Mr. Mosczyc illegally stole my 4/12/17 oral arguments hearing in my HRA lawsuit by using an illegal ex-parte adjournment application to do so, she told me in response that they do that a lot as she was then referring to attorneys for the City of New York engaging in such illegal acts. The proper course of action for her then and beforehand was to have drawn attention to that illegal practice to end it because that practice is patently unconstitutional. In fact, Ms. Levy had a clear legal duty back then pursuant to New York City Charter §2604 to have reported that matter about the theft of my 4/12/17 oral arguments hearing in my HRA lawsuit by Mr. Mosczyc to the New York City Department of Investigations because that matter pertained to corruption and a conflict of interest by HRA personnel. I have no reason to believe that Ms. Levy performed that legal duty and violations of that duty is grounds for termination pursuant to New York City Charter §2604, New York City Charter §1116, and New York State Public Officers Law §§30(1)(f) that a court with equitable powers is authorized to order. This discussion about Ms. Levy and Mr. Khan is relevant now partly because Ms. Levy currently works for the New York State Attorney General's Office as the First Deputy Attorney General and Mr. Khan currently work for the New York State Attorney General's Office as a senior advisor and special counsel. On page 3

of your 4/28/21 order (Dkt. 88) in this case that pertains to me, you stated the following:

"Komatsu does not and cannot explain why his interest as a citizen in obtaining changes to NYPD policing policies is not adequately represented by the highest legal officer in the State, suing in her *parens patriae* capacity."

10. In the same vein, on 6/6/17, 9/1/17, 9/9/17, and 9/13/17, I sent e-mail messages to someone named Lourdes Rosado while she then worked for the New York State Attorney General's Office as the head of its civil rights division after I met her in March of 2017 during a public meeting that a legal organization named the Urban Justice Center conducted. In the e-mails that I sent to her on the dates that I just identified, I clearly apprised her of the fact that members of the NYPD and Mayor's Office committed illegal acts and omissions against me in relation to efforts that I undertook to lawfully attend public town hall meetings, public resource fair meetings, and public hearings that were conducted by members of the public as mostly traditional public forums in a collaborative manner with the Mayor and other government personnel leading up to the 2017 New York City government elections as such public forums were used as badly disguised campaign events. In response to those e-mails, I never received any response from her nor anyone from the New York State Attorney General's Office before you ridiculously suggested on page 3 of your 4/28/21 order that I can have confidence in the New York State Attorney General's Office to obtain appropriate changes to NYPD policing policies. Contrary to your baseless suggestion, I have directly sought assistance from the New York State Attorney General's Office and learned by doing so that the New York State Attorney General's Office is utterly worthless. What is shown next is the e-mail that I sent to Ms. Rosado on 9/9/17 at 9:50 pm about the fact that NYPD Officer Cruz (badge #:751) and one or more unknown people illegally prevented me from attending a public hearing that the Mayor conducted on 9/8/17 in the Blue Room in New

York City Hall that was partly about proposed legislation for reforming how the NYPD

operated. That occurred less than 10 days after NYPD Inspector Howard Redmond illegally

caused me be ejected from the building that hosted the public town hall meeting that the

Mayor conducted on 8/30/17 in Brooklyn. That illegal ejection occurred after Mr. Redmond

illegally and deliberately initiated physical contact with my body while I was lawfully sitting

in a chair and otherwise conducting myself in the room that hosted that town hall meeting.

That illegal ejection occurred shortly before that town hall meeting began and shortly after I

immediately objected to Mr. Redmond about that illegal contact with my body because he is

total trash and that constitutes "assault" under New York State Law before you obnoxiously

surrounded the word "assault" with quotation marks in your 4/28/21 order in this case in

flagrant violation of findings in _In re Snyder_, 472 U.S. 634, 647 (1985) that the Second

Circuit cited yesterday in its order in _In re Todd C. Bank_, No. 20-90010-am (2d Cir. May 3,

2021) that confirm that you're required to be courteous to me instead of pompous, arrogant,

cavalier, and obnoxious.

> **From:** Towaki Komatsu <towaki_komatsu@yahoo.com>
> **Subject:** Re: Flagrantly illegal exclusion from 2 pm public meeting in City Hall yesterday
> **Date:** September 9, 2017 at 9:50:28 PM EDT
> **To:** lourdes.rosado@ag.ny.gov
> **Cc:** "Ruiz, Paola" <PRuiz@cityhall.nyc.gov>, sstribula@cityhall.nyc.gov, "Miller, Harold" <HMiller@cityhall.nyc.gov>, rcornegy@council.nyc.gov
>
> Dear Ms. Rosado,
>
> As per the voicemail message that I left for you yesterday, please ensure that the member of members of the Mayor's office and/or NYPD that illegally prevented me from attending the public meeting at 2 pm that was held in the Blue Room in City Hall yesterday are prosecuted to the fullest extent of all applicable law.
>
> Keeping me out of public meetings has is an ongoing illegal practice being carried out by the NYPD and Mayor's office in violation of viewpoint discrimination, particularly in light of the fact that I have valid misconduct complaints filed against the NYPD -

including the Mayor's head of his security detail.

The following is a link to the video of the meeting I was denied access to yesterday:

https://www.youtube.com/watch?v=UrGcTV3n2Jc

One of the bills that the Mayor signed yesterday was about NYPD misconduct and he made it clear during that meeting that testimony from the audience would have been possible.

Due to this new incident of discrimination, I will file a new Notice of Claim with the New York City Comptroller's office on Monday and a supplemented complaint with the U.S. Attorney's office for the Southern District.

Regards,

Towaki Komatsu

11. As I alluded to in the e-mail that I sent to Ms. Rosado on 9/9/17, I filed a civil rights and criminal complaint prior to 9/9/17 to the U.S. Attorney's Office for the Southern District of New York against members of the NYPD and Mayor's Office. I also filed such complaints to the U.S. Attorney's Office for the Eastern District of New York and New York City Department of Investigations prior to that date. All of those complaints were partly about the fact that members of the NYPD and Mayor's Office committed illegal acts and omissions against me in relation to efforts that I undertook to lawfully attend public town hall meetings, public resource fair meetings, and public hearings that were conducted by members of the public as mostly traditional public forums with the Mayor and other government personnel leading up to the 2017 New York City government elections as such public forums were used as badly disguised campaign events.

12. The office that a government worker holds doesn't necessarily mean that he or she is qualified to hold that office and/or may continue to do so. As I stated earlier, Chaim Deutsch recently proved this point. The vast majority of New Yorkers would likely agree that this is

equally true about Donald Trump. Eric Schneiderman also apparently proved this point

before then by having apparently been hands-on about matters when he certainly shouldn't

have been as that should have cost him his hands. Letitia James has continued that tradition

of incompetence as New York State's Attorney General. On 11/9/19, the New York Post

published an editorial that is entitled "New York AG's Office Totally Disgraced Itself in the

Exxon Trial" that is available on the Internet at https://nypost.com/2019/11/09/new-york-ags-

office-totally-disgraced-itself-in-the-exxon-trial/. The sum and substance of that editorial

confirms that members of the New York State Attorney General's Office conducted

themselves as amateurs and in a deceitful manner in a lawsuit that the New York State

Attorney General's Office pursued against Exxon that was filed with the New York State

Supreme Court in Manhattan. That occurred while Letitia James was the New York State

Attorney General and was responsible for how her office's personnel operated. In stark

contrast to the fact that Ms. James' team was embarrassed by losing that legal fight against

Exxon, an interesting attorney named Steven Donziger seems to have achieved a lot by

prevailing against Chevron in a lawsuit that he pursued against it prior to possibly being

retaliated against for prevailing in that case that may explain why he is presently contending

with what may possibly be a malicious prosecution. Coincidentally, the very same useless

Jennifer Levy who I discussed earlier is among the members of the New York State Attorney

General's Office who is leading an investigation against New York State Governor Andrew

Cuomo about claims that he behaved inappropriately towards women.

13. In a similar vein, you also clearly proved that the office that someone holds doesn't

necessarily mean that she is qualified to hold it while you were the Chief U.S. District

"Judge" for the Southern District of New York. You proved this point as you unconscionably

allowed a mob that is comprised of rogue members of the U.S. Marshals Service ("USMS")

and federal court security officers ("CSOs") to behave like wild dogs as they preyed upon my

constitutional rights and my lawful refusal to back down to their illegal acts against me inside

of DPM and the Thurgood Marshall ("TM") courthouse before I essentially legally mauled

them with respect to the fact that *USA v. Komatsu* was dismissed. As I stated earlier, that case

always was a total sham that was in retaliation for and precipitated by entirely valid and

repeated complaints that I submitted to you and other useless federal judges as well as the

internal affairs divisions of the U.S. Department of Justice and the USMS to no avail in

March of 2018 and thereafter that concerned illegal act and omissions by CSOs and members

of the USMS against me inside of the DPM and TM courthouses since February of 2018.

Such complaints partly concerned the fact that the USMS was illegally destroying video

recording evidence and otherwise illegally withholding it from me in response to timely

Freedom of Information Act ("FOIA") demands that I submitted to it that correspond to

video security cameras that it controls and are installed inside of and on the exteriors of the

DPM and TM courthouses. The discussion that follows addresses this matter further and is

relevant in this case largely because trash that includes federal court security officer Ralph

Morales continue to be CSOs who are assigned to the federal courthouses in Manhattan while

likely armed with guns with no proper oversight about their behavior because the USMS

condones, directs, and illegally covers up their illegal and otherwise abusive behavior while

you and other federal judges condone that long after many of them that include Mr. Morales

were trashy members of the NYPD's criminal mob and had numerous complaints reported

against them to the useless New York City Civilian Complaint Review Board ("CCRB") that

is notorious for covering-up and condoning illegal acts and omissions by members of the

NYPD. The discussion is also relevant because CSO Morales has posted content on Facebook and other areas of the Internet that confirm that he defended the actions of Eric Garner's NYPD murderer and otherwise supports the use of violence against Black people. He posted an extremely graphic photo on his Facebook of a Black male who was tortured. It appears that he posted that on his Facebook after roughly 18 complaints were reported against Mr. Morales to the CCRB while he was a member of the NYPD before he then used an illegal maneuver against me on 8/8/18 in DPM while he was off-duty as a CSO that is very comparable to what is described in one of the complaints against him that was reported to the CCRB that alleged that he choked someone while taking that person to the ground. Mr. Morales similarly and criminally struck me my throat with one of his hands on 8/8/18 in DPM on its first floor as he illegally shoved me to the ground and tackled me that should have caused me to throw him off of my body and kill him with entirely legal self-defense. In short, CSO Morales proves that the USMS recruits trash to fulfill its needs in federal courthouses. The following is entirely true, accurate, and relevant in this case about this matter:

    a.   Judge Gorenstein is also assigned to this case after he baselessly, obnoxiously, inexcuably and prejudicially stated in the last paragraph on page 2 in his 8/6/18 order (Dkt. 28) in K1 that he was confident that CSOs would behave appropriately in their treatment of me and that no additional steps then needed to be taken. He issued that order in response to the useless and vile U.S. District Judge Lorna Schofield having delegated the task of dealing with an entirely valid complaint that I reported to her on 7/20/18 (Dkt. 20) in K1 against CSOs and members of the USMS in regards to illegal and otherwise abusive acts and omissions that they had been engaged in against me

inside of federal courthouses in Manhattan since February of 2018.

b.  CSO Morales was recorded on video on 8/7/18 by a video security camera that is
controlled by the USMS inside of DPM on its first floor while he was then off-duty as
a CSO and in the immediate presence of male CSOs whose last names are Foley and
Lisa as they were on-duty as such and illegally didn't attempt to intervene on my
behalf against Mr. Morales. By not making an attempt to intervene on my behalf then
against him, CSOs Foley and Lisa violated their Fourteenth Amendment affirmative
legal duty as law-enforcement personnel to do so as he criminally threatened,
harassed, and stalked me in DPM in their immediate presence. The next screenshot
from that 8/7/18 video recording clearly shows CSO Foley as that occurred on the
first floor of DPM as Mr. Morales illegally stuck a finger on his right hand in my face
while my hands and arms were lowered. That should have caused me to immediately
break his finger and shove it in his mouth in self-defense to let him taste and eat it.



c.  CSOs jointly prepared an official federal government "Court Facility Incident
Report" for the USMS on 8/7/18 about what I just discussed as they criminally
engaged in an illegal cover-up by fraudulently omitting the material fact in that report
that I was criminally stalked, harassed, and threatened on 8/7/18 in DPM partly by

Mr. Morales. The next screenshot is from that report and confirms this point.

Pseudonyms and redactions were used by Ms. Mortazavi to conceal the actual

identities of CSOs in that report. Mr. Morales is "Officer 12" in that report. CSO Lisa

is Officer 29 in it. That report omits the fact that the way that I addressed Mr. Morales

on 8/7/18 was clearly lawful and in response to and reciprocation for how he had

been illegally addressing me as "faggot" in DPM prior to that date with impunity that

I thereafter apprised CSO Lisa about as he implicitly stated in response that how I had

then addressed Mr. Morales was appropriate because of those circumstances. This

same excerpt from that report fraudulently omits the material fact that I had a

Fourteenth Amendment equal protection right to enforce my right to privacy inside of

DPM that CSOs were violating at the direction of the USMS while I was conducting

myself lawfully as I attempted to enforce that constitutional right by deliberately

trying to prevent CSOs from remaining in close proximity to me without an

objectively lawful basis on their part as I got a huge head start with the current

practice of social-distancing from total trash in that regard.



d.  Mr. Morales criminally assaulted me on 8/8/18 inside of DPM on its first floor in the immediate presence of CSO Manwai Lui while Mr. Morales was again then off-duty as a CSO and Mr. Lui was on-duty as a CSO while he and Mr. Morales criminally covered up that assault by lying about it by claiming that I tried to assault Mr. Morales in spite of the fact that I certainly didn't do make any such attempt.

e.  Mr. Morales, in his official capacity as a CSO, lied to someone about me that caused that lie to appear in an official federal government report that the USMS maintains and was issued on 9/26/18 in connection with *USA v. Komatsu*. That lie is shown in the next screenshot from that report. The lie about me in that report pertains to the fact that Mr. Morales lied about me by claiming that it was while I was retrieving my cell phone in DPM on 9/21/18 that he used his Iphone Watch device to record a video of me. That same report also fraudulently neglected to mention that he illegally recorded that video recording of me and others then inside of DPM in violation of his duty pursuant to *In re Snyder*, 472 U.S. 634, 647 (1985) to accord me proper courtesy, 5 U.S.C. §552a(e)(7), my Fourteenth Amendment equal protection rights, and Standing Order number "M10-468" that was issued by U.S. District Judge Loretta Preska on 2/27/14 while she was then the Chief Judge for the federal courthouses in Manhattan. This report also confirms that personnel of the Pro Se Intake Unit illegally violated my Fourteenth Amendment equal protection rights in relation to 5 U.S.C. §552a(e)(7) and and their duty pursuant to *In re Snyder*, 472 U.S. 634, 647 (1985) to accord me proper courtesy by not discriminating against me by disclosing protected First Amendment activity that that I engaged in to the Protective Intelligence Unit.

On the same date, while CSO [Officer 12] was posted at the electronic device retrieval area at the DPM Courthouse, CSO [Officer 12] reported that he used his Iphone Watch to record video of KOMATSU retrieving his cell phone. In the video, KOMATSU says that he doesn't trust CSO [Officer 12] and requested that another CSO assist him.

On September 26, 2018, the S/NY Pro Se Office notified the Protective Intelligence Unit (PIU) that KOMATSU filed a 23 page document to case 18cv5213(WHP), requesting to intervene in the referenced matter.  In the 23 page filing to case USA v. New York City Housing Authority, KOMATSU requests that he be permitted to bring his laptop to the court hearing scheduled for 9/26/18, so that he could show video recordings of conversations he had with New York City officials.  KOMATSU describes these conversations, references encounters with the NYPD where he alleges that they violated his rights, and makes allegations of corruption by

| 8. SIGNATURE (*Name and Title*) | 9. DATE 09/26/2018 5:06 PM EDT | 12. DISTRIBUTION __ DISTRICT __ HEADQUARTERS __ OTHER _____ |
|---|---|---|
| [Officer 26] Criminal Investigator | | |
| 10. APPROVED (*Name and Title*) | 11. DATE 09/27/2018 10:25 AM EDT | |
| [Officer 11] Supervisory Deputy U.S. Marshal | | |

  f.  The following is a link to the video recording on the Internet that Mr. Morales

illegally recorded of me and others on 9/21/18 inside of DPM on its first floor that

included an unknown woman with blonde hair who had absolutely no connection to

me as Mr. Morales used an iPhone Watch device that he wore by his left wrist as that

recording illegally recorded both audio and video:

> https://drive.google.com/file/d/1wb8tH2TWH69kYS_J27vgCUALjZOr6Urg/view?usp=s
> haring

The next screenshot is from that short video recording and shows both **a)** the

unknown female with blonde hair to whom I just referred and **b)** a Black male CSO

as he stood near where Mr. Morales then was while diligent attention to his facial

expression and line of sight strongly suggest that he was then aware that Mr. Morales

was then illegally recording a video recording of that woman.



The next screenshot is from a video recording that was recorded on 9/21/18 by a video security camera that is installed inside of DPM and was installed in very close proximity to and above the area shown in the preceding screenshot.



The preceding screenshot was recorded by a video security camera that is controlled by the USMS. That video recording is available on the Internet at

https://drive.google.com/file/d/1eMENnLdKGPut1YjPO6PqqKAUlU-JsvwA/view

and was recorded during the same period during which Mr. Morales illegally recorded his video recording of me and that unknown female with blonde hair on 9/21/18 inside of DPM. In short, that video that was recorded of me by the USMS' video security camera definitively confirms that I was then dropping off my electronics devices to Mr. Morales right after I completed the security screening process upon entering that courthouse. Mr. Morales' right hand is shown in this screenshot as he reached for my cell phone. The area where I'm standing in this screenshot is where visitors to DPM drop-off their property to CSOs. It's widely known that the area where visitors stand to collect property from CSOs right before leaving DPM is around the corner from where I then stood.

g. On 9/26/18, Judge Caproni conducted a hearing in *USA v. Komatsu* in which I participated while she was assigned to that case. That occurred after a journalist named Spencer Ackerman wrote a very alarming news article about her that is entitled "Ex-FBI Lawyer Linked to Surveillance Abuses Poised for Federal Judge Post". That article was published on 9/6/13 on the Internet at

https://www.theguardian.com/world/2013/sep/06/fbi-lawyer-surveillance-judge-valerie-caproni by a news organization named The Guardian. In short, that article presciently predicted that "Judge" Caproni would continue to be a vile cat's paw for law-enforcement in a manner that would enable law-enforcement personnel and agencies to violate the privacy rights of individuals through illegal surveillance. What

I shown next is a relevant and somewhat long excerpt from the court transcript that was prepared from my 9/26/18 court hearing with "Judge" Caproni in _USA v. Komatsu_ that corresponds to information that appears between line 8 on page 7 and line 2 on page 9 in that transcript that is docket number 22 in _USA v. Komatsu_, No. 18-cr-671 (JLC)(S.D.N.Y.). U.S. Magistrate Judge James Cott was assigned to USA v. Komatsu after "Judge" Caproni and properly transferred that case to Brooklyn to avoid the appearance of partiality in that case between federal judges in this district on one hand and CSOs and members of the USMS on the other. Clay Kaminsky was my primary attorney in _USA v. Komatsu_ and is an awesome and trustworthy attorney. Remarks by him shown in the following table:

| Page | Lines | Speaker | Remark |
|------|-------|---------|--------|
| 7 | 8-9 | Mr. Kaminsky | Your Honor, we deny that Mr. Komatsu has ever made a threat direct or indirect against the CSO. |
| 7 | 10-14 | "Judge" Caproni | OK. Let me make it clear, Mr. Komatsu, stay away from the CSOs. Stay away from family members of the CSOs. Don't make threats about -- to the CSOs, about the CSOs, about the family members of the CSOs, about the CSO's best friend. Understood? |
| 7 | 15 | Me | Yes. |
| 7 | 16-17 | "Judge" Caproni | Seriously. I will remand you if it happens again. |
| 7 | 18 | Me | Yes. |
| 7 | 19-20 | Mr. Kaminsky | Your Honor, I have an application in this regard. |
| 7 | 21 | "Judge" Caproni | OK. |
| 7, 8 | 22 on page 7 thru 2 on page 8 | Mr. Kaminsky | As your Honor may see, there are a number of CSOs in the audience. We were followed from the moment that we came into the courthouse today. Mr. Komatsu is a frequent pro se litigant in this court and I understand he's followed every time he comes. I think that's an issue for a number of reasons. |
| 8 | 3 | "Judge" Caproni | It's not an issue in this criminal case. |
| 8 | 4-5 | Mr. Kaminsky | I think it is an issue in this criminal case, your Honor. |
| 8 | 6 | "Judge" Caproni | Tell me why. |
| 8 | 7-13 | Mr. Kaminsky | To the extent the CSOs who have an interest in this criminal |

| Page | Lines | Speaker | Remark |
|------|-------|---------|--------|
| | | | case are related to the U.S. Marshal Service and agents of the government are following my client, I think it's a Sixth Amendment concern. He's represented by counsel. These are government agents. They're engaging in conversations with him. They're following him around the courthouse. |
| 8 | 14-15 | "Judge" Caproni | Well they're not talking to him about this case. |
| 8 | 16-17 | Mr. Kaminsky | I think they may be talking to him about this case, your Honor. |
| 8 | 18 | "Judge" Caproni | What's your basis for saying that? |
| 8 | 19-20 | Mr. Kaminsky | I understand that there have been conversations about this case. |
| 8, 9 | 21 on page 8 thru 2 on page 9 | "Judge" Caproni | All right. Well I will make sure that the CSOs understand that they should not attempt to engage in conversations with Mr. Komatsu about this case.<br><br>But, look, they have a job to do which is to protect the integrity of the courthouse. So I'm not going to intervene in their doing their job which is to make sure that visitors to the courthouse behave themselves appropriately. |

h. Judge Gorenstein told me on 10/31/19 during the conference that he conducted in K1 that he had no legal authority to issue orders against the USMS. He made such remarks to me then long after I made it sufficiently clear in my 7/20/18 filing in K1 that I sought for Judge Schofield to perform her Fourteenth Amendment affirmative legal duty in her capacity as a law-enforcement official with respect to her job as a federal judge to intervene on my behalf against CSOs and members of the USMS by issuing an order pursuant to the All Writs Act (28 U.S.C. §1651), 28 U.S.C. §566(a), and findings in *US v. Smith*, 426 F.3d 567 (2d Cir. 2005) to properly perform the legal duty that the judiciary has to exercise proper control over all aspects of courthouse operations that partly includes how CSOs and members of the USMS operate and behave themselves inside of federal courthouses.

i. Even after I prevailed in *USA v. Komatsu* by virtue of its dismissal, not one damn federal judge has shown me any courtesy in accordance with their legal duty pursuant to *In re Snyder* by taking appropriate corrective action partly by immediately ordering the immediate termination of the illegal practice of having me stalked by CSOs inside of federal courthouses in Manhattan that has always been in furtherance of a patently illegal vendetta by CSOs and members of the USMS against me that may likely materially prejudice my right to a fair trial and an impartial jury in federal court litigation that I have commenced. This is entirely true and accurate partly because the USMS and CSOs illegally displayed an image of my face on a tablet computer screen located in the security screening area in TM on its first floor that is located directly to the left of its main entrance as that image was displayed in a way that was easily viewable by any visitor to that courthouse. That image was from the case of *People v. Komatsu*, No. 2017BX048917 (Bronx Crim. Ct. Jan. 23, 2020) in which I prevailed on 1/23/20 by virtue of its dismissal and sealing then by Bronx Criminal Court Judge Tara Collins. That case was always another entirely frivolous, fraudulent, retaliatory, and malicious prosecution of me by the Bronx District Attorney's Office in response to members of the NYPD having illegally stopped, assaulted, seized, harassed, stalked, injured arrested, and lied about me on 12/26/17 in a public corridor and on a public sidewalk that are public forums near where I reside as I conducted myself in an entirely lawful manner **a)** just 6 days after I legally recorded Bill de Blasio on 12/20/17 on audio as he tried to illegally intimidate me at the end of his town hall meeting in Brooklyn by ordering me to stop attending public meetings that members of the public conducted with him and others that were public forums and **b)** just 12

days after I testified on 12/14/17 against the NYPD in detail and truthfully to the

useless and deceitful Corey Johnson and Vanessa Gibson of the New York City

Council in the Committee Room inside of New York City Hall at the end of the

public hearing that the New York City Council's Committee on Public Safety

conducted that was recorded on video that is available on the Internet.

14. On page 2 of your 4/28/21 order (Dkt. 88) in this case, you stated the following about me and

my need to commence litigation to pursue claims against law-enforcement personnel for

illegal acts that they committed against me:

> "Those claims would have to be brought in an independent lawsuit, which would not be
> deemed related to the consolidated cases. It goes without saying that nothing that happens
> in the consolidated cases would impact Komatsu's ability to pursue those claims on his
> own."

15. While making the preceding remarks, you fraudulently didn't acknowledge the following

material facts:

a. You issued an order (Dkt. 3) on 2/11/21 in _Komatsu v. City of New York_, No. 21-cv-

204 (CM)(S.D.N.Y.) that is hereinafter referred to as "K4" in which you illegally

dismissed my complaint in that case after you upheld the unlawful order that U.S.

District Judge Edgardo Ramos issued on 12/15/20 in _Komatsu v. City of New York_,

No. 20-cv-7046(ER)(GWG)(S.D.N.Y.) in which he unlawfully required me to obtain

pre-approval from him in K3 to commence further litigation that would be similar to

it and yet would be about different claims instead of allowing me to do so in

accordance with my First Amendment and Fourteenth Amendment rights and have

such litigation randomly assigned to a judge in accordance with applicable processes

and procedures that pertain to random assignment of new litigation. My claims in K4

are mostly about illegal acts that a member of the NYPD committed against me on

1/8/18 as I lawfully attempted to attend and testify in a public hearing that was partly about proposed reforms for how the NYPD operates that was conducted by the Mayor inside of New York City Hall. Judge Ramos has contumaciously refused to allow me to pursue my claims in K4 until after he makes a decision about dismissal motions that were filed in K3. However, no objectively valid reason exists to impede my ability to pursue my claims in K4.

b. Similarly, though I submitted a complaint and IFP application to the Pro Se Intake Unit for the U.S. District Court for the Southern District of New York on 2/26/21 to commence a countersuit partly against CSOs and members of the USMS for illegal acts and omissions that they committed against me that are mostly related to *USA v. Komatsu*, I was informed a few weeks ago by a member of the Pro Se Intake Unit that no determination has been made about my IFP application for that case that is assigned the case number of 1:21-cv-1838. I cannot currently proceed with that case unless that IFP application is granted. The fact that I prevailed in *USA v. Komatsu* confirms that my countersuit about that is meritorious and very straightforward with respect to the fact that I'm entitled to immediate partial summary judgment. When I submitted my paperwork to the Pro Se Intake Unit on 2/26/21, you were then still the U.S. District Judge for the Southern District of New York. This means that it was up to you to decide whether to grant my IFP application for that new case. While I'm entirely aware of the fact that you certainly have other matters to attend to, that doesn't change the fact that no determination about my IFP application for that case has been made for more than 2 months and that is unreasonable largely because I seek immediate injunctive relief against CSOs and members of the USMS through that

new case that will partly cause the immediate and complete restoration and

compliance with my constitutional and privacy rights by court security personnel

whenever I visit federal courthouses in Manhattan while I conduct myself in a lawful

manner.

16. On 5/24/17, I attended a public meeting that was jointly conducted by Eric Schneiderman

while he was then the New York State Attorney General and New York State

Assemblywoman Liz Krueger that was held at the CUNY Graduate Center that is located at

the corner of 34th Street and Fifth Avenue in Manhattan. During that meeting, I was issued a

card on which I could submit written questions for Mr. Schneiderman to answer during it.

Prior to submitting that comment card to a coordinator for that meeting to see if Mr.

Schneiderman would answer the questions on it, I separately recorded the questions that I

wrote on that card. Question number 5 in my list of questions on that card stated the

following:

> "How soon will you have Howard Redmond, Lieutenant Nieves, Officer Gerola, and
> Officer Beato (badge #: 13326) arrested for flagrant civil rights violations and battery
> committed on 4/27/17 & 5/23/17?"

17. Mr. Schneiderman didn't answer a single question that was written on that comment card nor

do anything about what was written on it. The following is a screenshot from a video

recording that I recorded of Mr. Schneiderman and Ms. Krueger during that meeting.



18. On 12/16/19, I attended another public meeting that was conducted partly by Letitia James while she was then the New York State Attorney General that was also held at the CUNY Graduate Center. The following is a screenshot from a photograph that I took of Mr. James while she sat in a chair during that meeting while continuing to be an empty seat as she also demonstrated her affinity and need for a microphone that rivals a dog's need **a)** for a bone and a stick and **b)** to chase after other dogs to sniff their behinds.



19. I attended that meeting long after I talked with her on 10/26/17 in Brooklyn at the site of the public town hall meeting that I was being illegally barred from attending in violation of my constitutional rights and other laws that she thereafter attended. I talked with her then at

roughly 8:30 pm and right before she entered that school as she lied to my face by fraudulently telling me that he would look into the matter about my illegal exclusion from that public forum. When I attended the 12/16/19 public meeting at the CUNY Graduate Center, that was also long after I reported an entirely valid complaint to the New York State Attorney General's Office on 3/19/19 by visiting its offices on the 16th floor at 28 Liberty Street in Manhattan as I reported an entirely valid complaint against the Mayor and members of the NYPD for illegal acts and omissions that they committed against me on 3/18/19 inside of New York City Hall in regards to a public hearing that the Mayor conducted as he illegally interfered with my ability and First Amendment right to lawfully testify against him in that hearing before members of the NYPD retaliated against me for my attempt to lawfully do precisely that by assaulting and seizing me without any due process as they caused me to be promptly ejected from the room in which that hearing was conducted, New York City Hall's building, and New York City Hall's grounds before I could lawfully complete my testimony during that public hearing.

20. It's worth mentioning that though Letitia James has proven to me that she has been and continues to be a con artist with respect to the jobs of New York City Public Advocate and New York State Attorney General insofar as that concerns assistance that I sought directly from her and her coworkers, I received an e-mail message on 4/28/21 at 6:05 pm that was sent on her behalf for campaign fundraising purposes. A relevant excerpt from that e-mail is shown next. That e-mail message contains patently false advertising and constitutes wire fraud. This is because it's designed to induce people to donate money to support Letitia James in response to fraudulent claims that are stated in it about her. That e-mail fraudulently claims that Ms. James is a fighter. She is not. It claims that she is a fierce advocate. She isn't

that either. It further claims that she is someone who will go up against anything and anyone to get the job done and that nothing scares her. This is also not true. If Ms. James experienced laryngitis, that would likely scare her partly because it would materially reduce her ability to continue to engage in grandstanding at the same time that such a development would be a blessing for New Yorkers by keeping such BS away from them that is far more offensive than the use of profanity.

> From: "Sophie, Team Tish" <info@tishjames.com>
> Subject: Here's the deal
> Date: April 28, 2021 at 6:05:40 PM EDT
> To: towaki_komatsu@yahoo.com
> Reply-To: info@tishjames.com
>
>
> I'll make this quick, friend.
>
> Our end-of-month deadline is rapidly approaching. But I just took a look at our records, and we're still $16,341 behind our $20,000 goal for the month. I'm reaching out to ask if you'll help us turn this around ASAP.
>
> Here's the deal: Tish is a fighter. If it will make a difference in people's lives, she'll go up against anything and anyone to get the job done. Nothing scares her.
>
> We can't afford to lose Tish as a fierce advocate for everyday people in the attorney general's office – and that's why we need you to help us close this gap right now to fuel her work forward. But according to the supporter record we have on file, you haven't donated yet:
>
> EMAIL: towaki_komatsu@yahoo.com
> END-OF-MONTH DONATION STATUS: PENDING
>
> Please, friend. Can we count on you now? Rush $5 or more right now – any amount you can spare today – to ensure Tish can continue using the full power of the attorney general's office to secure justice, progress, and equality for those who need it most.

21. By 5/19/17, my HRA lawsuit evolved further as a result or an order to show cause application that I then filed in that case in which I asserted additional claims partly against

Mr. Redmond for having been personally involved with other members of the Mayor's

NYPD security detail, New York State court officers, and Rachel Atcheson of the

Community Affairs Unit of the Mayor's Office on 5/23/17 inside of the Bronx Supreme

Court as they jointly and criminally prevented me from attending the public resource fair

meeting that the Mayor, Mr. Banks, and others conducted in the Veterans Memorial Hall

chamber in that courthouse that I registered in advance with the Mayor's Office to attend

while that public forum was conducted during the U.S. Navy' annual "Fleet Week" event in

New York City and while I continued to be a U.S. Navy veteran.

22. Monica Hanna is a trashy attorney who works for the New York State Attorney General's

Office and defended Defendants Anthony Manzi, Matthew Brunner, and Ramon Dominguez

in K1 in regards to their illegal acts and omissions against me on 5/23/17 inside of the Bronx

Supreme Court in relation to the efforts that I lawfully undertook then to attend the public

resource fair meeting that members of the public conducted as a traditional public forum

inside of the Veterans Memorial Hall chamber in that courthouse that I just discussed. That

occurred after I registered in advance with the Mayor's Office to attend that public forum and

received a confirmation e-mail on 5/22/17 at 2:09 pm from the Community Affairs Unit of

the New York City Mayor's Office in regards to my attendance at that public forum. The

following is a relevant excerpt from that e-mail that was sent to me as a blind courtesy copy

("BCC") e-mail recipient:

> **From:** CommunityAffairs <communityaffairs@cityhall.nyc.gov>
> **Subject:** Reminder: Tomorrow is the Bronx Resource Fair!
> **Date:** May 22, 2017 at 2:09:43 PM EDT
>
> A reminder that you are on the RSVP list for tomorrow's Bronx Resource Fair!
> Top city commissioners and senior staff will be at The Bronx County Building Veteran's
> Memorial Hall at 851 Grand Concourse tomorrow from 9 AM to 1 PM.
> We look forward to seeing you there!

23. Although Judge Schofield fraudulently dismissed my claims against Defendants Manzi, Brunner, and Dominguez on 9/30/19 in K1 as she illegally ignored critically significant and admissible evidence and other submissions that I filed in that case before then that included a sworn affidavit from an eyewitness of mine that I filed in that case on 12/18/18, there is no question that the Second Circuit will promptly reverse her dismissal of those claims on appeal while hopefully making certain that she and Judge Gorenstein are no longer assigned to any litigation involving me upon remanding that case. The next screenshot is from a video recording that was recorded on 5/23/17 on the first floor of the Bronx Supreme Court by a video security camera controlled by the New York State Office of Court Administration ("OCA"). OCA provided me that video recording in response to a Freedom of Information Law ("FOIL") demand that I timely submitted to it. This screenshot shows Defendant Manzi as he illegally seized a large white bag that belonged to me that then contained a copy of the very bulky and lengthy order to show cause application that I filed on 5/19/17 in my HRA lawsuit while that case continued to be sealed at my request because of the sealing order that New York State Supreme Court Judge Barry Ostrager granted me on 1/17/17. Defendants Brunner and Dominguez are shown in this screenshot as they stood in close proximity to Mr. Manzi and I as they and other court officers and members of the NYPD illegally didn't make any attempt to intervene on my behalf against Mr. Manzi's patently unconstitutional acts against me in violation of their affirmative Fourteenth Amendment affirmative legal duties as law-enforcement personnel. The time in that screenshot corresponds to 9:49 am on 5/23/17.



24. The following is another screenshot from the preceding screenshot to enlarge what appears in it to make it clearer to you:



25. Jeff Lynch of the New York City Mayor's Community Affairs Unit is shown in the upper-

left corner of the preceding screenshot as NYPD Lieutenant Ralph Nieves faced him. Mr.

Nieves in a defendant in K1 and discovery material that I received on 2/1/21 in K1 from the

New York City Law Department that Judge Gorenstein pretextually and contumaciously

won't let me talk about in detail through his 1/15/21 unenforceable confidentiality order in

K1 that violates my Fourteenth Amendment and First Amendment rights, the vagueness

doctrine, and the overbreadth doctrine confirms that Mr. Lynch was personally involved with

other members of the New York City Mayor's Office and HRA personnel that partly

included HRA Commissioner Steven Banks in an illegal scheme to illegally prevent me from

attending a public resource fair meeting on 4/13/17 in Staten Island that members of the

public conducted in a collaborative manner with the Mayor, Mr. Banks, and others. That

illegal scheme to bar me from public forums was conducted without any due process having

been accorded to me in spite of the fact that I was absolutely required to have been granted

proper due process about that beforehand by those who were involved in that scheme to

possibly allow those efforts to bar me from public forums to be a legal prior restraint on my

First Amendment, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment rights

as well as those pursuant to New York State's Open Meetings Law. Prior to 5/23/17,

Defendant Nieves was personally involved in illegally preventing me from lawfully

exercising my First Amendment rights on 4/27/17 as he and 3 other members of the NYPD

illegally subjected me to the NYPD's illegal practice that is known as "kettling" and

encirclement as they criminally violated 18 U.S.C. §245(b)(5), 18 U.S.C. §241, and other

laws as they illegally and substantially impeded my ability to petition the Mayor for redress

about the fact that Defendant Redmond and others illegally prevented me from attending the

Mayor's 4/27/17 town hall meeting and Defendant Beato criminally me on that same date on

the very same sidewalk where Mr. Nieves, Mr. Beato, NYPD Detective Raymond Gerola, and NYPD Officer Yue Lie surrounded me on 4/27/17 to prevent me from having a face-to-face conversation with the Mayor from a sufficient distance away that would have exceeded 20 feet as the Mayor crossed that sidewalk at the end of that town hall meeting to be driven away from there. In hindsight, I should have forcefully shoved everyone who surrounded me then out of my way and otherwise engaged in decisive self-defense if matters then escalated further as I sought to lawfully talk with the Mayor face-to-face. If such an occasion and circumstance arises again, I won't hesitate to lawfully use sufficient physical force for that purpose if that becomes necessary.

26. In the preceding screenshot, the person who is shown wearing a blue shirt on the right was a woman who was a member of the NYPD and assigned to the Community Affairs Unit. Although she clearly had a direct line of sight to Mr. Manzi's illegal seizure of my bag, she illegally didn't attempt to intervene on my behalf against him. One of the reasons why this is relevant is because the Mayor has opted to use member of the NYPD who are assigned to the Community Affairs Unit to be present during protests and demonstrations in New York City as part of his so-called efforts to reform how the NYPD operates in the wake of the protests in the Summer of 2020 that this case is about. In short, the Community Affairs Unit continues to be useless long after Denny Chin issued the decision in 1999 in *Million Youth March, Inc. v. Safir*, 63 F. Supp. 2d 381 (S.D.N.Y. 1999) before he became a judge who is assigned to the Second Circuit. That case was about illegal acts by the Community Affairs Unit against the First Amendment and Fourteenth Amendment rights of demonstrators that were Black people in New York City. The following is a relevant excerpt from that court decision:

"The right to free speech, however, applies not only to politically correct statements but also to statements that we may disagree with and that, indeed, we may abhor. At least as frightening as the rhetoric of Mr. Muhammad is the possibility of a society where freedom of speech is not respected, and where the right to speak publicly can be denied on the basis of administrative whim, personal dislike, or disapproval of anticipated content.

MYM's motion for a preliminary injunction is granted to the extent ordered by the Second Circuit last year in *Million Youth March, Inc. v. Safir,* 155 F.3d 124, 126 (2d Cir.1998)."

27.  Additionally, the screenshot above confirms that when Defendant Manzi illegally seized my bag, I stood in a public hallway while I was then stood more than 10 feet across from an area where New York State court officers screened people in a magnetometer area as they sought to gain to access to that courthouse after entering it through an entrance nearby. That screenshot also confirms that I wasn't then obstructing the flow of pedestrian traffic in that courthouse. A key question that is naturally raised by these facts is about why Defendant Manzi illegally seized my bag then. The answer is that he certainly didn't have any objectively valid legal justification to have done so before he illegally said "Fuck you" to my face right after I seized my bag from him and promptly confronted him in a lawful manner for having just behaved as an ordinary street thug by illegally seizing my bag.

28.  On 5/24/17, Defendant Manzi prepared an "Unusual Occurrence Report" for OCA that is assigned the report number of 75089. He did so then as Defendants Brunner and Dominguez served as witnesses about the information in that report. That report confirms that it's about their interactions with me at 9:50 am on 5/23/17 inside of the Bronx Supreme Court. The following text appears in the middle of that report's first page in its "Details" section:

"AT ABOVE T/P/O, THE ABOVE UNKNOWN SUBJECT WAS DENIED ENTRY INTO A CITY HALL EVENT BEING HELD IN THE ROTUNDA BY CITY HALL STAFF AND MAYOR DEBLASIO'S NYPD DETAIL. SUBJECT WAS ASKED TO VACATE THE AREA HE WAS STANDING IN BECAUSE HE WAS BLOCKING PEDESTRIAN TRAFFIC TO BOTH THE EVENT IN THE ROTUNDA AND ACCESS

TO THE PUBLIC ELEVATORS. AFTER SOME RESISTANCE TO THIS REQUEST, SUBJECT DID COMPLY BUT MOVED INTO A MAGNETOMETER PROCESSING AREA. SUBJECT WAS ASKED TO MOVE FROM THIS AREA, AND ONCE AGAIN COMPLIED AFTER SOME INITIAL RESISTANCE."

29. Contrary to the preceding excerpt from that report, I was never in any magnetometer area that Mr. Manzi claimed I was in during the period that he claimed I was in such an area. The screenshot above clearly confirms this. He also illegally omitted the critically significant facts in that report about the fact that he illegally seized my bag in that courthouse on 5/23/17, he said "Fuck you" to my face, and that he and Defendants Brunner and Dominguez illegally, substantially, and personally assisted Defendants Nieves, Redmond, Gerola, and Rachel Atcheson with illegally preventing me from attending the Mayor's 5/23/17 public resource fair meeting by illegally directing me to move away from the entrance to the Veterans Memorial Hall chamber as they also illegally prevented me from exercising my constitutional right to lawfully assemble in every area of the public corridors in that courthouse. Through their illegal acts and omissions against me on 5/23/17 inside of the Bronx Supreme Court, Defendants Manzi, Brunner, and Dominguez as well as all other New York State court officers who were then present near me and illegally didn't intervene on my behalf then against Defendants Manzi, Brunner, and Dominguez as well as Defendants Redmond, Gerola, Nieves, NYPD Detective Andrew Berkowitz, and Rachel Atcheson violated *In re Snyder* and provisions of the New York State Court Officers Rules and Procedures Manual that is discussed in both **a)** the ongoing and recently filed case of *In the Matter of the Application of New York State Office of Court Administration v. Dennis Quirk*, Index No. 451050/2021 (Sup. Ct. NY. Cty.) that is against the head of the New York State Court Officers' union and **b)** *Casey v. State*, 148 A.D.3d 1370, 51 N.Y.S.3d 203 (App. Div. 2017) that includes the following relevant excerpt:

"the rules that require an officer to comply promptly with lawful orders do not unequivocally forbid all resistance to every order; they further provide that the officer "shall not obey any order which is inconsistent with the law," must request clarification or confer with a supervisor when in doubt as to whether an order is lawful, and must obey an order that he or she believes to be unlawful only if the supervisor fails to modify the order after being respectfully informed of the subordinate's belief that it is unlawful (Court Officers Rules and Procedures Manual § 1.30 [B], [C])."

30. Returning to my earlier discussion about Monica Hanna, the following is a screenshot from page 2 within docket number 81 that she filed on 1/11/19 in K1 as she lied partly by fraudulently claiming that I didn't have a constitutional right to attend the Mayor's 5/23/17 public resource fair meeting before you stupidly suggested on page 3 in your 4/28/21 order in this case that Letitia James as Ms. Hanna's boss would adequately represent my interests in obtaining changes to the NYPD's policing policies that is analogous to having **a)** bank robbers  guard the Federal Reserve's vaults and **b)** Donald Trump control Twitter that would likely silence Democrats to a large degree:

A. Plaintiff Does Not Adequately Allege the State Defendants' Participation In the Deprivation of Any Constitutional Right ........................................ 10

B. The State Defendants Did Not Illegally Prevent Plaintiff From Engaging in Protected Speech Inside the Courthouse ............................................ 13

C. Plaintiff Had No Constitutionally Protected Right to Attend the Public Resource Fair in the Courthouse ................................................................ 15

D. State Defendant Captain Manzi Did Not Interfere with Plaintiff's Possessory Interest In Any Property ......................................................... 18

31. Ms. Hanna is coincidentally also the attorney for the trashy Defendant George Silver in the ongoing case of _Marquez v. Hoffman_, No. 18-cv-7315 (ALC)(GWG)(S.D.N.Y. April 2, 2021) to which Judge Gorenstein is assigned after Mr. Silver condoned the fact on or about 6/5/17 that Jeffrey Mosczyc of HRA and New York State Supreme Court Judge Nancy

Bannon stole my scheduled 4/12/17 oral arguments hearing in my HRA lawsuit by engaging in illegal ex-parte communications that caused that hearing to be illegally adjourned to 6/7/17. *Marquez v. Hoffman* is partly about how Judge Gorenstein bullied the plaintiff in that case in a variety of ways that included through how he scheduled deadlines in that case instead of paying proper attention to and compliance with her First Amendment and Fourteenth Amendment rights to be heard in a meaningful way at a meaningful time that was tailored to her circumstances and capacity to be heard in that case. The plaintiff in that case previously worked for the New York State Unified Court System and alleged in that case that her boss who is a New York State Supreme Court harassed her and that Defendant Silver retaliated against her when she reported complaints about that. I'm not surprised that Mr. Silver is still a defendant in that case after Ms. Marquez partly prevailed against a dismissal motion that was filed in that case.

32. Prior to being the lousy judge that he is while contumaciously and pretextually defying applicable legal standards in that capacity in violation of my constitutional rights in K1, U.S. Magistrate Judge Gabriel Gorenstein previously worked for HRA as a lousy General Counsel and deputy commissioner in the 1990s. His performance as such was lousy partly as a result of the fact that hindsight confirms that he failed to implement proper safeguards and monitoring in regards to how HRA's personnel operated to minimize the possibility that they would violate applicable laws. His failures in that way is among the factors that enabled the illegal acts and omissions that were committed against me by HRA personnel and it business partners that gave rise to claims that I asserted in my HRA lawsuit. As I alluded to earlier, I'm currently appealing the fraudulent dismissal of my HRA lawsuit on 2/26/20 by New York State Supreme Court Judge Lyle Frank to the Appellate Division's First Department

and have oral arguments on 5/10/21 for that appeal.

33. My claims in K1 are largely about First Amendment retaliation against me at public meetings in response to my having lawfully engaged in peaceful protest and about illegal segregation and discrimination that was imposed upon me without any due process in retaliation for litigation activity that you commented about in *Avent v. Keybank*, No. 21-cv-01466 (CM) (S.D.N.Y. Apr. 1, 2021) and is discussed far better and in detail in *Harrison v. Springdale Water & Sewer Com'n*, 780 F.2d 1422 (8th Cir. 1986) that you cited in *Avent*.


## Relief Sought

Through this motion, I seek to be granted the following relief:

1. An order that grants me reconsideration of the order that U.S. District "Judge" Colleen McMahon issued on 4/28/21 in this case in which she denied me the opportunity to intervene in this case or otherwise appear as an interested party as she impermissibly relied on **a)** baseless and erroneous assumptions and irrelevant points instead of **b)** strictly pertinent matters of fact and law to reach that determination.

2. An order that immediately authorizes me to intervene in this case or otherwise appear as an interested party.

3. An order that explicitly states that the only matters that will be dealt with and otherwise considered by this Court in this consolidated case will be those that occurred during the demonstrations that occurred during the Summer of 2020 in New York City that were specifically part of demonstrations and protests that took place then against the NYPD, other law-enforcement entities, and other government entities and personnel about matters that were closely-related to that as this means that this Court will not deal with matters that took

place outside of that specific time period and/or were about other matters to apply comparable narrow-mindedness that this Court has applied to my application to intervene in this case to its parties, their counsel, and other intervenors and interested parties in this case in accordance with my First Amendment and Fourteenth Amendment rights.

### Grounds to Grant Me the Relief I Seek

1. "Judge" McMahon abused her discretion by denying me the ability to intervene in this case or otherwise appear in it as an amicus curiae as an interested party. The following excerpts from and/or facts about _Abkco Music v. Stellar Records_, 96 F.3d 60 (2d Cir. 1996) address abuse of discretion:

   a. In _Abkco Music v. Stellar Records_, the Second Circuit stated that an abuse of discretion "usually involves either the application of an incorrect legal standard or reliance on clearly erroneous findings of fact.

   b. In _Monroe v. Houston Independent School District_, No. 19-20514 (5th Cir. Nov. 25, 2019), the U.S. Court of Appeals for the Fifth Circuit similarly confirmed that "[a]pplication of an incorrect legal standard is, by definition, an abuse of discretion".

2. Among the main reasons why you refused to allow me to intervene in this case or otherwise appear in it as an amicus curiae was because you claimed that I could seek relief that I sought to attain through this case by commencing separate litigation. On page 2 of your 4/28/21 order in this case, you stated the following about my efforts to intervene in this case as an interested party or as an amicus curiae to seek relief:

   > "Those claims would have to be brought in an independent lawsuit, which would not be deemed related to the consolidated cases. It goes without saying that nothing that happens in the consolidated cases would impact Komatsu's ability to pursue those claims on his own."

3. In the preceding remarks, you fraudulently omitted the material fact that my ability to attain

relief for the claims to which you referred that pertain to me hasn't been possible in other litigation that I have commenced partly due to repeated and flagrant acts of judicial misconduct in such litigation partly by Judge Gorenstein who is assigned to this case and Judge Schofield that I previously partly apprised you about to no avail through submissions that I filed outside of this case. That occurred while you were the largely inept U.S. Chief District Judge for the Southern District of New York as you shirked you legal duty to properly supervise courthouse operations and courthouse personnel that partly encompasses subordinate judges and security personnel.

4. On page 3 of your 4/28/21 order in this case, you stated the following while fraudulently concealing material facts partly about you that caused your claim to not be objectively credible:

> "Komatsu has an absolute right to opt out of the class actions and to pursue any claims that he may have arising out of the BLM protests independently"

5. Concerning the preceding remark by you, the simple fact that I never consented to being of any class action to which you referred speaks volumes about your inexcusable failure to pay attention to details with respect to your legal duty to be consistently be a diligent fact-finder.

6. As I alluded to earlier, hindsight confirms that you lied on 1/8/21 in the following remarks that you then stated in the order (Dkt. 3) that you issued in K2:

> "In light of the attached order, issued by Judge Edgardo Ramos in the matter of Komatsu v. City of New York, 1:20-CV-7046, 62 (S.D.N.Y. Jan. 5, 2021), the Court directs the Clerk of Court to administratively close this action. The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith"

7. When you issued the preceding remarks in that case, you fraudulently didn't acknowledge the material fact that Judge Ramos illegally caused my complaint in that case to be struck through his 1/5/21 order in K3 that is an ongoing case. Judge Ramos never had any

jurisdiction over K2 because he was never assigned to it.

8. On 1/28/21, you stated the following in the order (Dkt. 6) that you issued in K2 that proves that you **a)** lied in your 1/8/21 order in that case by fraudulently claiming that an appeal of your 1/8/21 order wouldn't be taken in good faith and **b)** fraudulently didn't explicitly state the material fact that Judge Ramos illegally caused my complaint in K2 to be struck on 1/5/21 and that he also lied then by claiming that an appeal that I would possibly pursue about that wouldn't be taken in good faith:

> "The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket. The Court grants Plaintiff's requests to reopen this action (ECF 4-5) and directs the Clerk of Court to vacate the order administratively closing the action (ECF 3)."

9. Concerning what I just discussed, U.S. District Judge Brian Cogan recently affirmed that judges are to explicitly acknowledge instances in which they err and describe how they err as he did so on 4/27/21 on page 2 of the decision that he issued then in _Leviton Manufacturing Co., Inc. v. Pass & Seymour, Inc._, No. 17-cv-46 (BMC)(E.D.N.Y. April 27, 2021) as he stated the following:

> "I am granting it a new trial because I erred by excluding certain evidence at trial, stemming from a decision on summary judgment."

10. On page 9 in that decision, Judge Cogan further demonstrated integrity that you, Judge Gorenstein, Judge Ramos, and Judge Schofield certainly lack as he stated the following that has earned him my respect for demonstrating proper accountability:

> "The decision to keep this evidence from the factfinder was error on my part. A more careful and thorough review of the relevant case law convinces me that my _in limine_ ruling was unprecedented."

11. The U.S. Supreme Court stated the following partly about the fact that "a prompt final judicial determination must be assured" for those who are subjected to prior restraints of their

First Amendment freedoms in order for such restraints to be permissible at times:

> "The settled rule is that a system of prior restraint "avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system." _Freedman_ v. _Maryland,_ 380 U. S. 51, 58 (1965). See _United States_ v. _Thirtyseven Photographs,_ 402 U. S. 363, 367 (1971); _Blount_ v. _Rizzi,_ 400 U. S. 410, 419-421 (1971); _Teitel Film Corp._ v. _Cusack,_ 390 U. S. 139, 141-142 (1968). See also _Heller_ v. _New York,_ 413 U. S. 483, 489-490 (1973); _Bantam Books, Inc._ v. _Sullivan,_ 372 U. S., at 70-71; _Kingsley Books, Inc._ v. _Brown,_ 354 U. S. 436 (1957). In _Freedman_ the Court struck down a state scheme for the licensing of motion pictures, holding "that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint." 380 U. S., at 58. We held in _Freedman,_ and we reaffirm here, that a system of prior restraint runs afoul of the First Amendment if it lacks certain safeguards: _First,_ the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. _Second,_ any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. _Third,_ a prompt final judicial determination must be assured."

12. K1 was commenced in April of 2018. Both Judge Schofield and Judge Gorenstein have cheated me of "a prompt final judicial determination" for my First Amendment claims in that case in a variety of patently illegal ways that I can exhaustively enumerate in delineated form here, but won't primarily because I'm confident that you'll have a hissy fit if I do so on the grounds that this case isn't the appropriate forum for that. Their illegal acts and omissions in K1 occurred under your watch while you were the U.S. Chief district judge in this district as I periodically apprised you about their deficiencies to no avail. As a chief judge, one of your duties was to provider proper supervision of those below you. You certainly didn't do so and instead shirked your duty to do so. This means that you can't be trusted any more than Judge Schofield and Judge Gorenstein may be. It also means that all of you do not deserve respect because all you opted to throw away the reasons why people should accord you respect by not properly performing your legal duties. Respect and trust are to be earned instead of freely and foolishly given.

13. The simple fact Judge Schofield and Judge Gorenstein have jointly and criminally engaged in

obstruction of justice that includes witness tampering against me in K1 through their illegal

acts and omissions that I can certainly substantiate confirms that they have slammed the door

in my face with respect to my efforts to petition for redress in K1 and be fully accorded my

constitutional rights in response to that endeavor. This means that I need to pursue other

options to get the redress that I'm constitutionally entitled to. The fact that Judge Schofield

stated the following in the memo endorsement that she issued on 4/12/21 in K1 (Dkt. 542)

confirms that she effectively and fully abdicated from her job as a judge in that case in

flagrant violation of my First Amendment and First Amendment rights as she continued to

subject me to a pretextual abuse of process while he still had her tush firmly cemented to a

high horse while she continued to be nothing more than an arrogant and pompous

benchwarmer who has been unwilling to step onto the field to properly do her job:

> "Plaintiff is directed to make no further applications except as they relate to those specific
> matters. Any violation of this or any other Court order may result in sanctions including
> dismissal."

### Conclusion

In the event that you decline to grant my request for reconsideration, that it you choice.

However, you're required to arrive at that decision by using relevant matters of fact and law

instead the nonsense that you spewed out in your 4/28/21 order that caused it to be so

objectionable and baseless.


From,

Towaki Komatsu


s_/Towaki Komatsu

802 Fairmount Pl., Apt. 4B
Bronx, NY  10460

Tel: 347-316-6180
E-mail: Towaki_Komatsu@yahoo.com